BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-5557 / -0805
    Email: Alexander.Farrell@usdoj.gov
          Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STUDENT DOE #3,<br><br>    Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>    Defendants. | No. 8:25-cv-00706-DOC-DFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF STUDENT DOE #3'S MOTION TO PROCEED WITH PSEUDONYM AND FOR PROTECTIVE ORDER AND ORDER NOT TO DETAIN**<br><br>Hearing Date: May 5, 2025[1]<br>Hearing Time: 8:30 a.m.<br>Ctrm: 10A<br><br>Honorable David O. Carter<br>United States District Judge |

---

[1] The May 5, 2025 hearing date noticed in Plaintiff's motion (filed on April 14, 2025) does not comply with Local Rule 6-1 and the Court's Standing Order as it notices a hearing for less than the 28 days required. Under the Local Rules, Defendants' opposition would be due on April 21, and the hearing noticed for May 12, at the earliest.

# TABLE OF CONTENTS

DESCRIPTION   PAGE

TABLE OF AUTHORITIES ................................................................................ ii
I. INTRODUCTION ......................................................................................... 1
II. STATUTORY AND REGULATORY BACKGROUND ............................. 2
III. PLAINTIFF'S ALLEGATIONS .................................................................... 3
IV. PROCEDURAL HISTORY ........................................................................... 5
V. ARGUMENT .................................................................................................. 5
   A. Plaintiff Has Not Satisfied Their Burden to Proceed Anonymously ............ 5
   B. Plaintiff's Request For A Protective Order Should Be Denied .................... 8
   C. Plaintiff's TRO Demand To Stop Plaintiff's Detention Is Based On Unfounded Speculation ................................................................................ 10
      1. No likelihood of success on the merits ............................................. 12
      2. No irreparable injury .......................................................................... 13
      3. Public interest factors ........................................................................ 14
      4. Bond requirement under Rule 65(c) ................................................. 15
VI. CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

| DESCRIPTION | PAGE |
| --- | --- |

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ............................................................................. 13

*Doe v. Kamehameha Sch. /Bernice Pauahi Bishop Est.*
  596 F.3d 1036 (9th Cir. 2010) ........................................................................... 6, 7

*Doe v. Pasadena Unified Sch. Dist.*,
  2018 WL 6137586 (C.D. Cal. Feb. 20, 2018) ...................................................... 6

*Doe v. Snyder*,
  28 F.4th 103 (9th Cir. 2022) ............................................................................... 11

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) .............................................................................. 15

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*,
  959 F.2d 742 (9th Cir. 1992) .............................................................................. 15

*Gannett Co. v. DePasquale*,
  443 U.S. 368 (1979) .............................................................................................. 6

*Garcia v. Google, Inc.*
  786 F.3d 733 (9th Cir. 2015) .............................................................................. 11

*Kamakana v. City of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) .............................................................................. 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 12

*Munaf v. Geren*,
  553 U.S. 674 (2008) ............................................................................................ 11

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................. 11, 13, 14

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) .............................................................................. 12

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................... 11, 13, 14

*XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) .............................................................................. 6

**Statutes**

8 U.S.C. § 214.3 ........................................................................................................ 3

8 U.S.C. § 1101 ............................................................................................... 3, 4, 5

8 U.S.C. § 1101, (m) ................................................................................................. 3

8 U.S.C. § 1184 .................................................................................................. 3

8 U.S.C. § 1227 .................................................................................................. 3

8 U.S.C. § 1229 ................................................................................................ 14

8 U.S.C. § 1252 ................................................................................................ 14

**Regulations and Rules**

8 C.F.R. § 214.2, (m) ......................................................................................... 3

8 C.F.R. § 1003.1 ............................................................................................ 14

Fed. R. Civ. P. 5.2 ....................................................................................... 8, 10

Fed. R. Civ. P. 10 .............................................................................................. 6

Fed. R. Civ. P. 65 ............................................................................................ 15

Local Rule 5.2-1 .......................................................................................... 8, 10

# DEFENDANTS' MEMORANDUM IN OPPOSITION

## I. INTRODUCTION

This action is brought by an unidentified international graduate student who asks to remain anonymous and alleges that they were arrested for unlawful use or possession of a gun.[2] Plaintiff's complaint alleges that their information within a federal government database pertaining to international students at U.S. colleges and universities was arbitrarily terminated by the U.S. Immigration and Customs Enforcement ("ICE").

Through the present motion [Dkt. 11], Plaintiff seeks extraordinary and emergency relief in the form of an order authorizing Plaintiff to proceed under a pseudonym in this action; the Defendants would then be obliged to defend the action without knowing against whom they are defending. Plaintiff also seeks to prohibit the disclosure of any of Plaintiff's identifying information, including their name and the name of Plaintiff's university, to the government and in public filings. Finally, and perhaps most remarkably, Plaintiff seeks to prohibit the Defendants from detaining Plaintiff for the duration of this lawsuit—in effect demanding a preliminary injunction that would bar any immigration detention, on any grounds, for the unidentified Plaintiff. Plaintiff's motion should be denied for numerous reasons.

Plaintiff has not met their burden to proceed in pseudonym because the government's interest and the public's interest both outweigh Plaintiff's desire for total anonymity. As the Defendants facing legal claims, the Plaintiff's request deprives the government of any opportunity to investigate the Plaintiff's allegations and prejudices its defense of this case. The Defendants are essentially required, by Plaintiff's request, to accept the veracity of Plaintiff's allegations about their status and their prior criminal issues. Without knowing who Plaintiff is, the Defendants have no meaningful opportunity to contest whether Plaintiff's allegations are true or not, and what the

---

[2] *See* Dkt. 11-1, Ex. A, ¶ 4. Defendants have not been able to confirm the exact circumstances of the firearm arrest because Plaintiff's counsel has not disclosed the name of Plaintiff.

1

material facts are.

As for Plaintiff's extraordinary request for an order prohibiting any future detention under immigration laws, there is no legitimate basis for exempting Plaintiff from potential future immigration law enforcement. If removal proceedings are initiated and notice to appear in Immigration Court is issued, for example, Plaintiff can defend themself on the merits. If the Immigration Court, in such a speculative future proceeding, determines that Plaintiff is a threat to public safety or a flight risk and therefore should be detained, they would have due process provided in that regard.

As the ostensible basis for seeking an order preemptively exempting Plaintiff from any potential immigration arrest and detention (unlimited by any details of their own actual circumstances, and with the government having no ability to contest it), Plaintiff cites to non-applicable cases in which aliens have been arrested and detained under Section 237(a)(4)(c) of the Immigration and Nationality Act—which authorizes the Secretary of State to determine that an individual is "deportable" if they have "reasonable grounds" to believe the individual would adversely affect U.S. foreign policy. Plaintiff's motion, however, identifies no foreign policy issues here akin to the issues involved in those cases. Plaintiff does not identify themself as publicly advocating political views that would even theoretically fall under this provision. Plaintiff cannot leverage a different set of cases into a preliminary injunction granting them generalized immunity against enforcement of immigration laws, particularly when they insist (in contrast to the non-anonymous cases they cite to) that the government cannot even know their identity prior to being enjoined.

Accordingly, Plaintiff's motion should be denied.

## II. STATUTORY AND REGULATORY BACKGROUND

The United States provides temporary nonimmigrant visas, known as F-1 visas, for noncitizens to study at U.S. educational institutions. The F-1 nonimmigrant student classification allows foreign nationals "having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full

course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" at a qualifying educational institution." 8 U.S.C. § 1101(a)(15)(F)(i).

The provision and considerations relating to an alien's maintenance of F-1 status after admission to the United States are highly regulated, with reporting obligations placed on participating schools and eligibility restrictions for students. *See*, *e.g.*, 8 C.F.R. §§ 214.2, 214.3, 214.4. For example, each school authorized to enroll F-1 students must report student information, including information pertaining to enrollment and withdrawal from programs of study, into the Student Exchange Visitor Information System ("SEVIS"). *Id*. § 214.3(g)(1).

Nonimmigrants who are admitted to the United States under an F-1 visa are subject to the requirements set forth in 8 U.S.C. § 1101(f), (m) and 8 U.S.C. § 1184. *See also* 8 C.F.R. § 214.2(f), (m). A nonimmigrant who does not abide by the terms of his or her nonimmigrant status may be removable under INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i) for having "failed to maintain the nonimmigrant status . . . or to comply with the conditions of such status." Federal law requires the Department of Homeland Security ("DHS") to track and monitor U.S. educational institutions that enroll nonimmigrant students, as well as the students while they reside in the United States. DHS carries out these obligations through the Student Exchange and Visitor Program ("SEVP"), which administers SEVIS.

Ensuring compliance with these requirements is shared by U.S. Department of State (issuing F-1 nonimmigrant student visas), U.S. Customs and Border Protection (admission decisions), and ICE, specifically SEVP. SEVP provides approval and oversight to schools authorized to enroll F-1 nonimmigrant students and gives guidance to both schools and students about the nonimmigrant student regulatory requirements.

### III.   PLAINTIFF'S ALLEGATIONS

Plaintiff is an alleged international student located in the United States on an F-1 visa. *See* Dkt. 11-1, Ex. A, Declaration of Student Doe #3 ("Doe Decl.") ¶ 1. Plaintiff

3

alleges that they have been a graduate student at an unspecified university in Los Angeles since 2017. Doe Decl. ¶ 2. Plaintiff's complaint alleges that they "completed their degree and [were] issued a Form I-20 to engage in OPT, permitting employment after the completion of study." Dkt. 1 (Complaint or "Compl."), ¶ 28. Plaintiff alleges that they are currently a full-time employee engaging in post-graduate Optional Practical Training (OPT). Doe Decl. ¶¶ 3, 5.

OPT is a short-term program that provides up to 12 months of extended stay in the United States—it is essentially a brief extension of the F-1 nonimmigrant program to allow for added technical training.[3] Because Plaintiff alleges no specific facts about themself, including their identity, it is unknown when their status under the OPT program will expire, if it has not already expired. But insofar as Plaintiff alleges that they already graduated and are in OPT, they axiomatically have less than a year remaining of that status.[4]

Plaintiff alleges that an unidentified source notified them on April 4, 2025 that their SEVIS record was terminated. Doe Decl. ¶ 7. Plaintiff alleges that they were not given prior notice or an opportunity to respond to the termination of their SEVIS record. *Id*. Plaintiff does not allege their visa was revoked. Compl. ¶ 6.

Plaintiff alleges that they have a criminal history related to an unspecified "firearm related arrest" at an unspecified time and location. Doe Decl. ¶ 4. Plaintiff states that Plaintiff has "not engaged in any significant political activity." Doe Decl. ¶ 6. Plaintiff does not allege that any political activity has impacted Plaintiff's SEVIS record.

Defendants cannot verify any of these allegations because Plaintiff has refused to provide Plaintiff's identifying information.

---

[3] https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students. The OPT program is also unfortunately often subject to fraud, being used as a means for staying after graduation.

[4] Because most students graduate in May or June, Plaintiff likely graduated in May or June of 2024, and would now be at the end of their 12-month maximum OPT period—i.e., they would have no further right to remain in the United States after that point, independent of their allegations in this case.

4

## IV. PROCEDURAL HISTORY

On April 8, 2025, Plaintiff filed the complaint. *See* Compl. Plaintiff's complaint asserts APA claims for terminating the SEVIS record and a Fifth Amendment procedural due process claim for terminating Plaintiff's SEVIS record. Compl. ¶¶ 30-55. Plaintiff seeks declaratory and injunctive relief declaring that the termination of their SEVIS record was unlawful, vacating ICE's termination of the "SEVIS status," and ordering Defendants to restore the "SEVIS record and status." Compl., *Prayer for Relief*.

Plaintiff's complaint does not seek to enjoin Defendants from taking any enforcement action arising out of Plaintiff's criminal history or SEVIS status, nor does it allege facts that would substantiate such extraordinary relief. *See id*.

On April 14, 2025, Plaintiff filed the instant motion requesting the Court to enter an order: (1) permitting Plaintiff to proceed in this action using the pseudonym Student Doe #3; (2) requiring the Parties to redact or file any information identifying Plaintiff under seal; (3) preventing Defendants from using information disclosed to them about Plaintiff's identity or related personal information to be used for any purpose outside of this action; and (4) enjoining Defendants detaining Plaintiff during the pendency of this action. *See* Mot.

## V. ARGUMENT

### A. Plaintiff Has Not Satisfied Their Burden to Proceed Anonymously

Plaintiff has not satisfied their burden to proceed anonymously, so as to keep the Defendants and the public in the dark about the veracity of their allegations and the facts bearing on their claims. The public's interest in open courts, and the government's need for information to defend itself, greatly outweighs any baseless concerns of retaliation premised on the unrelated and inapposite news articles that Plaintiff cites. Plaintiff has not identified any foreign policy speech at issue that they have undertaken here. The mere fact of filing an immigration lawsuit is not justification for the extraordinary remedy of depriving the Defendants and the public of knowing who the Plaintiff is. Indeed, to issue such extraordinary relief would essentially convert the action into a non-

5

adversarial proceeding, in which the Defendants have no meaningful ability to contest the allegations by an unidentified and hidden complainant.

Fed. R. Civ. P. 10(a) states that "[t]he title of the complaint must name all the parties." Additionally, the Central District's Local Rules require parties to list, on the first page of all documents, the "names of the parties." L.R. 11-3.8(d).

This rule embodies the presumption of openness in judicial proceedings. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). The use of a fictitious name in litigation "runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).

In the Ninth Circuit, "the common law rights of access to the courts and judicial records are not taken lightly." *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). Thus, parties may only use pseudonyms in the "unusual case," when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1067-68. *See Doe v. Pasadena Unified Sch. Dist.*, 2018 WL 6137586, at *2 (C.D. Cal. Feb. 20, 2018) (ordering plaintiffs to show cause in writing why the complaint should not be dismissed for failure to identify the Doe plaintiff) (citing *Doe v. Rostker*, 89 F.R.D. 158, 163 (N.D. Cal. 1981) ("This court has both the duty and the right to ensure compliance with the Federal Rules and to take action necessary to achieve the orderly and expeditious disposition of cases.")).

Where, as here, the use of a pseudonym is sought to ostensibly protect the complainant from retaliation, the district court is to determine the need for anonymity under the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears; (3) the anonymous party's vulnerability to such retaliation; (4) the prejudice to the opposing party, and (5) the public interest. *Id.* at 1068; *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). The Court has discretion to permit anonymity only if "the party's

need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* Thus, the Court should "determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.*

As the basis for contending that they face a risk of unlawful retaliation here which requires the extraordinary remedy of proceeding pseudonymously, Plaintiff largely relies on news articles concerning specialized arrests and detentions based on activist student political activity – but Plaintiff simultaneously alleges that Plaintiff is not actually involved in any similar political activity. Doe Decl. ¶ 6.

Plaintiff also alleges Plaintiff has not been placed in removal proceedings nor has Plaintiff been placed or attempted to be placed in custody. Doe Decl. ¶ 10. Moreover, the news articles on which Plaintiff relies have no reference to SEVIS record termination – the issue giving rise to Plaintiff's complaint. Mot. at 10-13, fn. 3-13. While Plaintiff claims that these news articles have caused Plaintiff to experience fear of retaliation by the government, Plaintiff has shown no connection between the articles and the facts of this case (as they are alleged, since there is no way to know whether those allegations are true or not). *Id*. On this record, Plaintiff has failed to overcome the presumption that court proceedings will be open.

To the contrary, the risk of prejudice to the Defendants in not knowing the particular circumstances over which they are being sued prior to an emergency injunction hearing is extremely serious. To take an obvious example of the problem, Plaintiff claims that their firearms offense was minor. Is that claim actually true? And how severe was their conduct? It is impossible to tell, since Plaintiff has only submitted an anonymous declaration insisting that this was just a minor firearms offense of some unspecified sort. Yet Plaintiff simultaneously insists that the Court should issue extraordinary relief against the Defendants on the basis of such bare and conclusory assertions by an anonymous declarant, including even preliminary injunctive relief barring Defendants from enforcing any immigration detention throughout the pendency

7

of the lawsuit, regardless of the actual facts of Plaintiff's circumstances. Plaintiff has not made anything like the exceptional showing required for such relief.

Defendants cannot investigate Plaintiff's claims against them nor adequately defend against an emergency injunction without disclosure of Plaintiff's identifying information. Requiring the Defendants to defend legal claims against an anonymous and hidden accuser is an extreme measure that is not justified here. Accordingly, the Court should deny Plaintiff's motion.

### B. Plaintiff's Request For A Protective Order Should Be Denied

Next, Plaintiff's request for an unspecified protective order restricting the sharing of information about Plaintiff's identity and "personal information" should be denied.

As an initial matter, Plaintiff's personally identifiable information in this immigration case is already protected from public disclosure by Fed. R. Civ. P. 5.2(c) and C.D. Cal. L.R. 5.2-1. Moreover, public access to the docket in this immigration case is already restricted.

Plaintiff's request that the DOJ limit its sharing of information about this case is highly prejudicial. Plaintiff acknowledges the prejudice, stating, "Plaintiff recognizes the need to eventually provide the government with information about their identity to permit the government to litigate the case …" Mot. at 8:25-26.

Further, Plaintiff claims that Plaintiff's personal information is irrelevant, arguing this case "…will ultimately have little to do with the details of Plaintiff's individual situation." Mot. 10:21-22; *see also* Mot. 17:16-17 ("the individual identity of Plaintiff is not necessary to facilitate the public's understanding of judicial decision-making…"). That is not true. According to Plaintiff's complaint, it was arbitrary and capricious for ICE to terminate Plaintiff's SEVIS record because of Plaintiff's criminal history—that ICE, looking at the criminal history in question, could not have acted reasonably. *See* Compl., ¶ 42. Plaintiff does not apparently argue that *no criminal history* could ever justify SEVIS termination, i.e. that even murder is not enough. Rather Plaintiff insists that their own criminal history is inherently insufficient to warrant SEVIS termination,

8

because it is—according to Plaintiff—so minor. But an APA claim alleging "arbitrary and capricious" action by a federal agency is decided based upon the actual record before the agency. It is akin to appellate review of a District Court decision, ascertaining whether the decision was appropriate relative to the record. It is not based on the Plaintiff's own after-the-fact averments about why their criminal record is putatively not serious. Plaintiff cannot have it both ways, shielding their identity so as to cripple the Defendants' ability to defend against *the merits of Plaintiff's claims*, while revealing their identity only insofar as it may benefit Plaintiff *obtaining their requested relief*.

Moreover, the "sample" protective orders attached to the Tolchin Declaration support Defendants' position, and not the Plaintiff's position. *See* Tolchin Decl. Ex. B-C. The plaintiffs who were seeking relief in both cases were expressly named in the case caption of the complaint that initiated the lawsuit. *Id*. Specifically, *Osny Sort-Vasquez-Kidd* was the named plaintiff in the first case, and *Ernesto Torres* was the named plaintiff in the second case. *Id.* And both protective orders covered the disclosure of sensitive law enforcement information in discovery. *Id*. Plaintiff's motion inexplicably suggests that these protective orders allowed for proceeding with anonymous plaintiffs, but they did not.

In support of the motion, Plaintiff relies heavily on unrelated news articles that are immaterial to the SEVIS allegations forming the basis of the Complaint. Plaintiff alleges that Plaintiff "has not engaged in any significant political activity" and does not allege that any political activity has impacted her SEVIS record. Doe Decl. ¶ 6. But most of the articles Plaintiff's cites cover student political activity, specifically students who were evidently found deportable by the Secretary of State relative to their public activism regarding Palestinian issues. *See* Mot. fn. 4-8, 10, 13.

Other news articles discussed the revocation of student visas by the State Department (footnotes 9, 11), but here, the State Department and its Secretary are not defendants to this lawsuit. And here, the complaint states Plaintiff does not challenge the revocation of Plaintiff's visa in this action. Compl. ¶ 6; Mot. 17:3-4. Based on these

9

citations, which have no relation to Plaintiff's SEVIS allegations, Plaintiff seeks to proceed under a pseudonym because they fear "retaliation by Defendants for asserting their rights through this lawsuit." Mot. 7:22, 8:1; Compl. ¶ 9.

In any event, the government's need for information to defend itself greatly outweighs Plaintiff's alleged speculative fear of retaliation that is derived primarily from inadmissible news articles regarding unrelated decisions by *different* federal agencies that are not defendants in this case, based on foreign policy activity that is not at issue in this case (per Plaintiff's allegations), under a special statutory provision that is not at issue in this case. Because Plaintiff's asserted retaliation concern is supported primarily by citation to such unrelated, inadmissible news articles, the Court should deny Plaintiff's request to enter a Protective Order extending beyond the protection already provided by Fed. R. Civ. P. 5.2(c) and C.D. Cal. L.R. 5.2-1, along with the normal sealing of an immigration case docket.

### C. Plaintiff's TRO Demand To Stop Plaintiff's Detention Is Based On Unfounded Speculation

Although not presented in compliance with the applicable rules, Plaintiff's motion also appears to seek preliminary injunctive relief prohibiting Defendants from detaining Plaintiff during the pendency of this action. Mot. at 10-11. Plaintiff analogizes this request to a TRO that one District Court issued barring the detention of a student at Columbia University on the basis of her political speech. *See* Mot. at 16. There are multiple facial problems with that request. First, a TRO by definition is limited in its duration; it does not enjoin the defendant "during the pendency of this action," which would instead be a type of preliminary injunction. Plaintiff's motion does not purport to be a motion for a preliminary injunction, nor does it present the type of detailed evidentiary showing that would be required to support such a motion. Second, Plaintiff has not identified any political speech they are engaged in that would render them potentially subject to retaliatory action by the Secretary of the State Department; to the contrary, their complaint affirmatively alleges they are not engaged in any such activity.

10

Plaintiff essentially asks the Court to issue a preliminary injunction guaranteeing they will not be subjected to immigration detention throughout a potentially lengthy lawsuit. That request is problematic given that, as discussed above, Plaintiff alleges they have graduated and are currently engaged in short-term OPT, meaning that at maximum their F-1 nonimmigrant status to reside in the United States would likely elapse in May or June of this year, irrespective of what SEVIS might record. Yet they now ask the Court to issue what amounts to a preliminary injunction barring enforcement of immigration law against them. Their moving papers do not come anywhere close to carrying their burden to sustain such drastic relief.

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id*. at 20. These factors are mandatory. As the Supreme Court has made clear, "[a] stay is not a matter of right, even if irreparable injury might otherwise result" but is instead an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).

Because Plaintiff seeks a mandatory injunction, the already high standard for granting a TRO is "doubly demanding." *Garcia v. Google, Inc.* 786 F.3d 733, 740 (9th Cir. 2015). Under *Garcia*, Plaintiff must establish that the law and facts *clearly favor* Plaintiff's position, not simply that Plaintiff is likely to succeed. *Id*. Further, a mandatory preliminary injunction will not issue unless extreme or very serious damage will otherwise result. *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

1. <u>No likelihood of success on the merits</u>

As a preliminary matter, Plaintiff cannot establish that Plaintiff is likely to succeed on a claim of "wrongful detention" during the pendency of this lawsuit. Plaintiff's motion does not even try to make such a showing. Instead, citing no authority and submitting no evidence to substantiate such a request, the motion essentially tries to suggest that the issuance of an order barring the government from potentially detaining Plaintiff during the pendency of the lawsuit is akin to "protection against retaliation." Mot. 14:27-28. It is not.

To establish Article III standing, a plaintiff must show, as "the irreducible constitutional minimum," that: (1) she has suffered an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In actions for injunctive relief, "there is a further requirement that [applicants] show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). "Abstract injury is not enough. The Plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461.

Here, Plaintiff has presented no evidence that Plaintiff will be detained in violation of law. Plaintiff alleges they have not been placed in removal proceedings. Doe Decl. ¶ 10. Plaintiff does not state that a notice to appear ("NTA") in immigration court has been issued or that there have been attempts to serve Plaintiff with an NTA.

Moreover, even if Plaintiff is served with an NTA, they will then have the normal protections attendant to that process. The basis for such a potential NTA is speculative at

this juncture, particularly since the specifics of Plaintiff's situation are still unknown, given their anonymous status to date. But if an NTA is issued because the State Department has revoked Plaintiff's visa, or because that visa expired due to Plaintiff's post-graduation OPT ending (since as discussed above that would likely be the case very soon), or whatever other basis it might be, Plaintiff could then oppose detention on that basis, and could seek bail, just as any other immigrant issued an NTA would. There is no basis for issuing Plaintiff a special exception to immigration law *now*, particularly in a case where the Department of State is not even a defendant.

Further, Plaintiff's reliance on a TRO issued in *Chung v. Trump*, No. 25-cv-2412 (S.D.N.Y. Marc. 25, 2025) is misplaced. In that case, an administrative warrant for plaintiff's arrest had been issued. *See Chung v. Trump*, No. 25-cv-2412 at Dkt. 8 at 7 (plaintiff's memorandum describing arrest warrant). In contrast here, Plaintiff has offered no evidence that Defendants seek to arrest and detain Plaintiff.

Accordingly, Plaintiff's claim that Plaintiff may be detained and placed in immigration proceedings is at best speculative at this time. Furthermore, Plaintiff does not establish that this would be *unlawful* even if it did occur in the future.

### 2. No irreparable injury

Plaintiff also fails to carry their burden on the irreparable harm factor. Indeed, their moving papers do not even attempt such a showing of irreparable harm, which to some degree reflects the fact that their claim is so speculative. To satisfy this factor, Plaintiff must demonstrate "a particularized, irreparable harm beyond mere removal." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring). Notably, a "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Winter*, 555 U.S. at 22 (rejecting the Ninth Circuit's earlier rule that the "possibility" of irreparable harm, as opposed to its likelihood, was sufficient in some circumstances to justify a preliminary injunction).

13

Here, Plaintiff does not establish that they will be detained in the absence of injunctive relief; they do not establish that such detention would be unlawful; and they do not establish that it would inflict irreparable harm. Indeed, Plaintiff acknowledges the risk is unlikely, stating, "[i]t has been weeks since Plaintiff's SEVIS record was terminated and, absent any information that it is Plaintiff who has filed this lawsuit, the government has made no indication that it independently wants to take Plaintiff into custody." Mot. at 11. As a practical matter, Plaintiff's detention is presently impossible because Plaintiff's counsel has refused to disclose Plaintiff's identity to defense counsel.

Plaintiff argues that "Plaintiff has never experienced detention before and the prospect of detention as a response to Plaintiff's participation in this suit is deeply frightening." Mot. at 10. This is argument, rather than evidence, but even if Plaintiff were at some point detained, that is not inherently irreparable harm. If Plaintiff were to be placed into immigration proceedings via a Notice to Appear, that will provide them with a notice of any allegations of deportability against them and provide an opportunity to contest them before an Immigration Judge ("IJ"). 8 U.S.C. §§ 1229(a)(1); 1229a. After that, plaintiff would have an opportunity to administratively appeal the IJ's decision to the Board of Immigration Appeals, *see* 8 C.F.R. § 1003.1(b), and then ultimately get judicial review through a petition for review directly with the Ninth Circuit. 8 U.S.C. § 1252(a)(1).

In sum, Plaintiff's speculative allegations of irreparable harm, without more, fall far short of establishing, with admissible evidence submitted via their moving papers, the required likelihood of irreparable future harm. *See, e.g., Winter*, 555 U.S. at 22.

### 3. Public interest factors

The public interest factor does not weigh in Plaintiff's favor. Even where the government is the opposing party, courts "cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." *Nken*, 556 U.S. at 436 (citation and internal quotation marks omitted). Here, the public interest weighs in favor of denying the motion to enjoin detention. "Control over immigration is a sovereign

prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992). The public interest lies in DHS's ability to enforce U.S. immigration laws, especially in this case, where an anonymous plaintiff seeks to a premature order to stop execution of an arrest warrant that has not issued and the basis of which is speculative.

### 4. Bond requirement under Rule 65(c)

Finally, if the Court decides to grant relief, which it should not for all of the foregoing reasons, it should order a bond. Under Fed. R. Civ. P. 65(c), "[t]he court may issue … a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If the Court issues an injunction here, it should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

## VI. CONCLUSION

For all the above reasons, Defendants respectfully request that Plaintiff's motion be denied in its entirety.

Dated: April 21, 2025            Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

　　　*/s/ Paul (Bart) Green*
ALEXANDER L. FARRELL
PAUL (BART) GREEN
Assistant United States Attorneys

Attorneys for Defendants

15

Certificate of Compliance with L.R. 11-6.2

The undersigned, counsel of record for the Defendants, certifies that this Opposition Brief contains 5,194 words and 15 pages, which complies with the word limit of L.R. 11-6.1 and the page limit of the Court's Standing Order.

Dated: April 21, 2025  /s/ *Paul (Bart) Green*
PAUL (BART) GREEN