Stacy Tolchin (CA SBN #217431)
*Email: Stacy@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT DOE #3, | No. 8:25-cv-00706-DOC-DFM |
| Plaintiff, | **Declaration of Stacy Tolchin in Support of Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction** |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, | |
| Defendants. | |

I, Stacy Tolchin, hereby declare and state the following:

1.  My business address is Law Offices of Stacy Tolchin, 776 E. Green St. Suite 210, Pasadena, CA 91101. I am the attorney representing Plaintiff before this Court.

2.  I have personal knowledge of the events described below.

3.  I contacted Defendants on April 16, 2025 by e-mail and phone via Alec L. Farrell, Assistant United States Attorney to inform Defendants of Plaintiff's intent to file this Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. Counsel conferred on April 17, 2025 with Mr. Farrell and Paul Green, Assistant United States Attorney. The parties agreed that Defendants would have 48 hours to file a response. On April 20, 2025, I followed up with an e-mail informing Defendants that Plaintiff would be filing their application late in the evening on April 21, 2025, and therefore would agree that Defendants file any response by noon on April 24, 2025. I indicated Plaintiff would file a reply the following day, April 25, 2025.

4.  Attached as **Exhibit A** is Plaintiff's declaration, redacted to withhold their name and identity, with Attachment 1 showing an email notifying them their visa has been revoked. I have in my possession the full and unredacted declaration and can submit an unredacted version under seal to the Court upon request.

5.  Attached as **Exhibit B** is the redacted declaration of another student impacted by a SEVIS termination with Attachment 1 reflecting language in SEVIS that is now typical of these terminations, i.e., "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." I have in my possession the full and unredacted declaration and can submit an unredacted version under seal to the Court upon request.

6.  Attached as **Exhibit C** is the redacted declaration of another student impacted by a SEVIS termination with Attachment 1 showing an email from the consulate in November 2024 informing the student that their visa had been

1

revoked, compared to Attachment 2 showing an email from the consulate in April 2025 informing the student that their visa had been revoked. The April 2025 email is typical of emails that students with SEVIS terminations have received and states that students can be subject to removal and that those deported may be sent to countries other than their home country. It also includes information on how students can self-deport. I have in my possession the full and unredacted declaration and can submit an unredacted version under seal to the Court upon request.

7.   Attached as **Exhibit D** are thirteen (13) district court orders, listed below, from the past week and a half granting temporary restraining orders in challenges substantially identical to Plaintiff's challenge in this matter:

a.   *Liu v. Noem et al.*, No. 25-cv-133-SE (D. N.H. Apr. 10, 2025);

b.   *Wu v. Lyons*, No. 1:25-cv-01979-NCM (E.D.N.Y. Apr. 11, 2025);

c.   A*rizona Student DOE #2 v. Donald Trump, et al.*, No. 4:25-cv-00175-AMM (D. Ariz. Apr. 15, 2025);

d.   *Zhou v. Lyons*, No. 2:25-cv-02994-CV-SK (C.D. Cal. Apr. 15, 2025);

e.   *Ratsantiboon v. Noem et al.*, No. 0:25-cv-01315-JMB-JFD (D. Minn. Apr. 15. 2025);

f.   *John Roe et al. v. Noem et al.*, No. CV 25-40-BU-DLC (D. Mont. Apr. 15, 2025);

g.   *Student Doe v. Noem et al.*, No. 2:25-cv-01103-DAD-AC (E.D. Cal. Apr. 17, 2025);

h.   *John Doe v. Noem et al*., No. 4:25-cv-03140-JSW (N.D. Cal. Apr. 17, 2025);

i.   *Ziliang v. Noem et al.*, No. 25-cv-1391-PSM-DLM (D. Minn. Apr. 17, 2025);

j.   *Patel v. Bondi et al.*, No. 1:25-cv-00101-SPB-WSH (W.D. Pa.

2

Apr. 17, 2025);

k. *John Doe v. Noem et al.*, No. 2:25-cv-00633-DGE (D. Wash. April 17, 2025);

l. *John Doe 1 v. Bondi et al.*, No. 1:25-cv-01998-VMC (D. Georgia April 18, 2025); and

m. *Student Doe #1 v. Trump et al.*, No. 2:25-cv-02825-MCA-LDW (D.N.J. Apr. 18, 2025).

8. Attached as **Exhibit E** is a true and correct copy of U.S. Immigration and Customs Enforcement Policy Guidance 1004-04 on Visa Revocations.

9. Attached as **Exhibit F** is a true and correct copy of the Department of States Guidance Directive 2016-03, 9 FAM 403.11-3 on Visa Revocation.

10. Attached as **Exhibit G** is a copy of the declaration of Linus Chan, an attorney representing other students impacted by SEVIS terminations discussing the cases of students who have been detained and placed in removal proceedings in Minnesota.

11. Attached as **Exhibit H** is a copy of the declaration of Matt Green, an attorney representing other students impacted by SEVIS terminations discussing the cases of students who have been detained and placed in removal proceedings in Arizona.

12. Attached as **Exhibit I** is the stipulated protective order as entered by the Court in *Kidd v. Noem*, No. 2:20-cv-03512-ODW-JPR (C. D. Cal. Apr. 16, 2020). It provides that protected material may only be used for prosecuting, defending, or attempting to settle the action and may not be used "for any other purpose or in any other proceeding."

13. Attached as **Exhibit J** is the stipulated protective order submitted by the parties in *Torres v. DHS*, No. EDCV 18-02604-JGB (SHK) (C. D. Cal. Dec. 17, 2018). It provides that protected material may not be used "in any other proceedings, including in removal proceedings and enforcement actions."

3

14. Attached as **Exhibit K** is the Temporary Restraining Order in *Chung v. Trump*, No. 25-cv-2412 (S.D.N.Y. Mar. 25, 2025).

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 21th day of April, 2025 at Pasadena, CA.

Stacy Tolchin
Declarant

4

# Exhibit A

## Declaration of Student Doe #3

<u>DECLARATION OF</u> ███████████

I, ███████████, hereby declare and state:

1.  I am an international student and a citizen of ██████ here in the United States on an F-1 visa.

2.  I have been a student at a university in Los Angeles since September 2017 for a master program and then a Ph.D. program.

3.  I recently defended my Ph.D. thesis. I have since been working under Optional Practical Training (OPT) first part-time, and then full time.

4.  My only criminal history followed an arrest involving firearm-related charge. The charge was eventually dismissed with prejudice and did not result in a conviction. As there was no conviction, this matter does not constitute a conviction for a crime of violence or any removable offense.

5.  I have no other criminal arrests since that one incident and was engaged in a full course of study from 2017 until I defended my thesis and have been working under Optional Practical Training (OPT). My OPT was approved after the incident and had a completion date later this year.

6.  I have not engaged in any significant political activity.

7.  On April 4, 2025, was notified that my SEVIS record was terminated. I was not given any prior notice as to why this happened or given any opportunity to respond. On the same day, I was notified that my visa was revoked. The email said that I could be subject to removal and that persons deported may be sent to countries other than their home country. It also included information on how I could self-deport. The email is enclosed as **Attachment 1**.

8.  After reading in the news about similar things happening to other international students, I feel that the government's actions are aimed at discouraging me from continuing my training and forcing me to leave on my own.

9.  Rather than leaving the country on my own, I opted to file a lawsuit to ensure I can complete my training and education in the United States. I also feel strongly that the termination of my student status was unfair.

10. I have not been placed in removal proceedings and the government has not tried to take me into custody. However, I am very scared that my decision to challenge the government through legal action might provoke retaliation. Recent incidents involving students targeted by immigration enforcement for opposing government policies have made me even more scared. My fear comes from seeing how the Trump administration has handled dissent, leading me to file the lawsuit anonymously.

11. I have learned that some students who participated in political protests have been singled out by immigration authorities and subjected to harassment, including being doxxed. Knowing this, I am deeply concerned that I might also become a target if my status as an international student with a terminated SEVIS record were made public.

12. The statements made by Trump and other political figures regarding international students have left me apprehensive about the long-term consequences of my circumstances. I fear this could hinder my ability to complete my training and education, my ability to obtain employment, and my ability to travel internationally and obtain future visas.

13. Because of this termination, I am facing imminent and irreparable harm. I am at risk of immigration detention and deportation. I am no longer authorized to participate in my

Optional Practical Training (OPT). The termination of my SEVIS record puts me in financial and career jeopardy because the work authorized by OPT is not only my sole source of income, but also a core component of my doctoral training. The abrupt termination of my F-1 student status in the SEVIS system prevents me from engaging in authorized employment and significantly impacts my career development. I was selected in the H-1B cap, and my company was planning to file an H-1B petition on my behalf, and now they currently cannot sponsor me because of the termination of my student status. The termination of my F-1 student status in SEVIS severely affects my chances of reinstating my F-1 status, applying for a STEM OPT extension, and pursuing H-1B status in the future.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge. Executed this 18th day of April 2025 ▮▮▮▮ CA.



**ATTACHMENT 1**

**U.S. Visa -** ███████████

1 message

Reply-To: ████████████████████████

To: ██████████████████████████████

Dear Non-Immigrant Visa Holder,

We are writing about an important and serious matter in reference to your nonimmigrant student (F-1) visa.

On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued.  As a result, your F-1 visa with expiration date ████████████ has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended.

The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings.  They may notify your designated school official about the revocation of your F-1 visa.

Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation.  It may also make you ineligible for a future U.S. visa.  Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States.  Persons being deported may be sent to countries other than their countries of origin.

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome

As soon as you depart the United States, you must personally present your passport to the U.S. embassy or consulate which issued your visa so your visa can be physically cancelled.

You must not attempt to use your visa as it has been revoked.  If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

Regards,

U.S. Consulate General ███████

# Exhibit B

<u>DECLARATION OF</u> ████████████

I, ████████████, hereby declare and state:

1. I am an international student and a citizen of ████████ here in the United States on an F-1 visa.

2. I have been a graduate student at a university in Orange County studying for my PhD since 2023.

3. As part of my graduate program, I serve as a Teaching Assistant (TA). I rely on the income from my TA work to support myself. I have also been approved for one year of Optional Practical Training (OPT).

4. My only criminal history is an arrest for misdemeanor petty theft. I went to court for this case but my charge was eventually dismissed.

5. I have been complying with all the requirements of my F-1 status.

6. I am not engaged in any significant political activity.

7. On April 10, 2025, I was informed by my school that my SEVIS record and I-20 status with the university were terminated by SEVP. I asked for the exact language in SEVIS for my termination and my school told me it said "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." A copy of the email I received is included as **Attachment 1**. I was not given prior notice of this or any opportunity to respond. On April 19, 2025, I received an email from the consulate stating my visa had been revoked. That message indicates that I can be subject to removal and that persons deported may be sent to countries other than their home country. It also provides information on how I can self-deport.

8. After reading in the news about similar things happening to other international students, I feel that the government's actions are aimed at discouraging me from continuing my education and forcing me to leave on my own.

9. Rather than leaving the country on my own, I have opted to file a lawsuit to ensure I can complete my education and training in the United States. I also feel strongly that the termination of my student status was unfair.

10. I have not been placed in removal proceedings and the government has not tried to take me into custody. However, I am very scared that my decision to challenge the government through legal action might provoke retaliation. Recent incidents involving students targeted by immigration enforcement, including arrest and detention, for opposing government policies made me even more scared. My fear comes from seeing how the Trump administration has handled dissent, leading me to file the lawsuit anonymously.

11. I have learned that some students who participated in political protests have been singled out by immigration authorities and subjected to harassment, including being doxxed. Knowing this, I am deeply concerned that I might also become a target if my status as an international student with a terminated SEVIS record were made public.

12. The statements made by Trump and other political figures regarding international students have left me apprehensive about the long-term consequences of my circumstances. I fear this could hinder my ability to complete my education and training, my ability to obtain employment, and my ability to travel internationally and obtain future visas.

13. Because of my SEVIS termination, I have lost the ability to serve as a TA, which is extremely important to me and my professional development. Due to the loss of my

2

ability to serve as a TA, I also have no means to pay for my housing and other living expenses. Since I am in the second year of my program, it would have been time for me to begin applying for fellowships. But with my student status in the United States in jeopardy, I don't know what do to. I have been experiencing a lot of stress and anxiety and I am scared for my future.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge. Executed this 19th day of April 2025 at ████ CA.



## ACTION REQUIRED - Information about your SEVIS Record

6 messages

Thu, Apr 10, 2025 at 10:20 AM

Reply-To:
To:

Dear ▮▮▮▮

I am reaching out regarding your immigration record.  The SEVIS system indicates a change in your SEVIS record and I-20 status that was updated to termination status by the Student and Exchange Visitor Program (SEVP).

Please reach out to me at ▮▮▮▮▮▮ to schedule a meeting to discuss your current F-1 status. We can schedule a phone call, Zoom meeting or in person meeting.

Sincerely,

▮▮▮▮
Director, International Center
▮▮▮▮

Thu, Apr 10, 2025 at 11:48 AM

To:

Dear ▮▮▮▮
Thank you for your email.

Please let me know what will be a good time for the meeting. I am available both for a phone call at ▮▮▮▮ or zoom or in-person meeting at any time. Please let me know as soon as possible.

Sincerely,

▮▮▮▮

**ResearchGate** | **GoogleScholar** | **ORCiD** | **LinkedIn**

[Quoted text hidden]

Mon, Apr 14, 2025 at 10:06 AM

To:

Dear ███████,

I hope this message finds you well.

I have been consulting with attorneys regarding the next steps to address my current situation. Based on their guidance, **I kindly request that the International Center provide me with the exact language that was generated in SEVIS concerning my termination.**

Additionally, I would appreciate any information or guidance you can offer regarding the status of my Teaching Assistantship—specifically, whether I should discontinue my TA responsibilities at this time.

Thank you very much for your support and assistance during this challenging time.
Sincerely,

**ResearchGate** | **GoogleScholar** | **ORCiD** | **LinkedIn**

On Thu, Apr 10, 2025 at 10:20AM ████████████ wrote:
[Quoted te t hidden]

To:                                                                                   Mon, Apr 14, 2025 at 2:45 PM

Dear ███

Thank you for the follow up. Here is the exact wording of your record:

**OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.**

Your employment eligibility ended when the SEVIS record/F-1 status was terminated. Please follow up with your direct supervisor about the status of your Teaching Assistantship.

I hope this is helpful.

Best,

Director
International Center

# Exhibit C

<u>DECLARATION OF</u> ███████████████████████

I, ███████████████████████, hereby declare and state:

1. I am an international student and a citizen of ██████ currently in the United States on an F-1 visa.

2. I am enrolled as a graduate student at a university in Orange County, California.

3. My only criminal history stems from a 2024 car accident. After the accident, I received an email from the consulate in my country informing me that my visa had been revoked. The email said that I would be unable to travel on my visa and that if I wanted to apply for entry into the U.S. in the future I would need to go to the embassy or consulate overseas. However, the email explained that if I was already in the U.S., the revocation did not impact my F-1 status or my ability to stay in the United States. Included as **Attachment 1** is a copy of the email I received.

4. After my revocation, I was able to continue my studies in the U.S. As far as I was aware, my SEVIS record remained active.

5. This month, I was informed by my school that my SEVIS record had suddenly been terminated. Then, on April 15, 2025, I received an email from the consulate in my country stating that my visa had been revoked. This was confusing because my visa had already been revoked. This email was very different than the email from the consulate that I had received at the end of last year. It said that I could be subject to removal and that persons deported may be sent to countries other than their home country. It also included information on how I could self-deport. Included as **Attachment 2** is a copy of the second email I received.

I declare under penalty of perjury that the above information is true and correct to the best of my

knowledge. Executed this 21st day of April 2025 at ███████CA.



**ATTACHMENT 1**

M Gmail

**U.S. Embassy** ▇▇▇ **Notice of Visa Revocation**

3 de noviembre de 2024, ▇

Para: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Dear ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇:

Please be advised that your U.S. visa **(F1)** was revoked by the U.S. Department of State on ▇▇▇▇▇ **2024**. This action is based on the fact that subsequent to visa issuance, information has come to light indicating that you may be ineligible for your visa.

Please note that you will be unable to travel on your current U.S. visa. If you would like to travel to the United States, you must reapply for a new visa. If you decide to apply for a new visa, you should be required to reappear before a U.S. consular officer to establish your eligibility for a visa. ▇▇▇▇▇▇▇▇▇▇▇▇.

Please refer to the below Questions and Answers for further details.

Q: **Why was my visa revoked?**

A: Information has become available subsequent to visa issuance that indicates you may no longer be eligible for your visa.

Q: **What does this mean for my status? Can I stay in the United States?**

A: If you are already in the United States, the revocation of your visa does not control the status granted to you by U.S. Customs and Border Protection ("CBP") at the time of your entry, or your ability to stay in the United States.

Q: **What if I need to travel outside of the United States?**

A: An individual whose visa has been prudentially revoked is required to reapply for a visa and to demonstrate eligibility before applying to reenter the United States.

Q: **I am a student on an F-1 visa. Will this affect my F-1 status?**

A: If you are already in the United States, the revocation of your visa does not control the F-1 status granted to you by U.S. Customs and Border Protection ("CBP") at the time of your entry and your ability to stay in the United States. However, your visa is no longer valid for future travel to the United States. An individual whose visa has been prudentially revoked who departs the United States is required to reapply for a visa and to demonstrate eligibility before applying to reenter the United States.

Q: **May I go to a civil surgeon and obtain a medical examination here in the United States?**

A: No. Your visa has been revoked and cannot be reinstated while you remain in the Unites States. If you wish to reestablish your visa eligibility you must reapply at a U.S. Embassy or consulate overseas. At that time, you will be required to see a panel physician for a medical examination.

**Please, acknowledge the receipt of this message by answering to this email. Also, please send us your passport so we can physically cancel your visa.**

Respectfully,



To report a tip regarding visa fraud, terrorism, human trafficking and crime, please contact the Fraud Prevention Unit at ▇▇▇▇▇▇▇▇▇

Para reportar fraude de visados, terrorismo, trafico de personas o cualquier crimen, por favor contacte con la Unidad de ▇▇▇▇▇▇▇▇▇

SENSITIVE BUT UNCLASSIFIED

**ATTACHMENT 2**

## Google Apps

**U.S. Embassy** ▮ **- Notice of Visa Revocation**

1 message

To: ▮                                                    Tue, Apr 15, 2025 ▮

Dear ▮

We are writing about an important and serious matter in reference to your nonimmigrant student (F-1) visa.

On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that information has been recently assessed which indicates that you are no longer entitled to your U.S. visa. As a result, your F-1 visa with expiration date ▮ has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended.

The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.

Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome.

As soon as you depart the United States, you must personally present your passport to the U.S. embassy or consulate which issued your visa so your visa can be physically cancelled.

You must not attempt to use your visa as it has been revoked. If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

This decision cannot be appealed, and we are unable to provide additional information to you about this revocation via email. If you decide to apply for a new visa, a Consular Officer may discuss the circumstances of the revocation with you at that time.



**Nonimmigrant Visa Unit**
**Consular Section**

::rtr::

SENSITIVE BUT UNCLASSIFIED

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Xiaotian Liu

      v.                                  Case No. 25-cv-133-SE

Kristi Noem et al.

# **O R D E R**

On April 7, 2025, Plaintiff Xiaotian Liu brought suit against Kristi Noem, the Secretary of the Department of Homeland Security, and Todd Lyons, the Acting Director of Immigration and Customs Enforcement, alleging that DHS unlawfully terminated his F-1 student status in the Student and Exchange Visitor ("SEVIS")[1] system. He alleges, among other things, that DHS violated his due process rights under the Fifth Amendment and violated the Administrative Procedure Act when it terminated his status in the system. Liu filed a motion for a temporary restraining order with his complaint, requesting a TRO "(i) enjoining Defendants from terminating Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system and (ii) requiring Defendants to set aside their termination determination." Doc. no. 2 at 1.

The court held a brief video hearing on April 7. Although Liu filed a motion for a TRO, his attorneys communicated with the defendants' attorney, who was able to attend the hearing. The parties agreed that the court should not consider the motion for a TRO at that hearing and that they would confer regarding a potential briefing schedule and provide the court with a status update on or before April 9.

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding: . . . F-1 . . . students studying in the United States[.]" About SEVIS, Department of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 10, 2025).

On the evening of April 8 and the early morning of April 9, Liu filed two addenda to his motion for a TRO. See doc. nos. 7 and 8. In the latter addendum, Liu stated that because of the "potential immigration detention and deportation in light of the F-1 student status termination, on April 7, 2025, Plaintiff's counsel attempted to receive assurance from Defendants' counsel that Defendants would not arrest, detain, or place him in removal proceedings during the pendency of [litigation regarding the] temporary restraining order and preliminary injunction." Doc no. 8 at 3. Liu added that his "counsel could not receive such assurances from Defendants' counsel." Id. He therefore notified the defendants' counsel that he would pursue his motion for a TRO immediately and he requested an emergency hearing. The court held that hearing on April 9, and counsel for both Liu and the defendants appeared.

As explained at the hearing, although the defendants were given notice and an opportunity to be heard, the court does not convert the motion for a TRO into a motion for a preliminary injunction. The defendants' counsel acknowledged at the hearing that he had not had adequate time to investigate certain of Liu's factual allegations or evaluate properly the legal bases on which Liu's motion rests. Therefore, the court construes Liu's motion as a request for the provisional remedy of a TRO with notice, which essentially seeks to avoid irreparable harm until the defendants are able to review the factual record and develop their legal arguments sufficiently to address the request for preliminary relief.

In evaluating a motion for a TRO, the court considers the same four factors that apply to a motion for a preliminary injunction. Karlsen v. Town of Hebron, Civ. No. 18-cv-794-LM, 2018 WL 11273651, at *1 (D.N.H. Sept. 28, 2018). Those four factors include "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and

(iv) the effect of the court's ruling on the public interest." Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009). "The first of these four factors normally weighs heaviest in the decisional scales." Id. When, as here, the defendants are government officials sued in their official capacities, the balance of the hardships and the public interest factors merge. Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021).

After considering Liu's motion for a TRO, the exhibits attached thereto, and the addenda, as well as the parties' oral argument during the April 9 hearing, the court granted Liu's motion for a TRO on the record at the hearing.

Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system. Based on the record before the court, Liu is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706(2)(A). The defendants did not offer any legal or factual argument contradicting Liu's likelihood of success on the merits of Count 2 during the hearing.[2]

Because DHS terminated Liu's F-1 student status in the SEVIS system, he is no longer authorized to work as a research assistant or participate in any research, and he is no longer eligible to receive any stipend from his Ph.D. program at Dartmouth College. There is uncontroverted evidence that due to his inability to participate in research, Dartmouth must require him to disenroll from his current courses so that Dartmouth can remain in compliance

---

[2] Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system.

with federal law. Additionally, it may be too late to forestall this requirement by the time the defendants are prepared to be heard on the preliminary injunction. These circumstances will derail Liu's academic trajectory and ability to complete his Ph.D. program in a timely fashion. This loss of timely academic progress alone is sufficient to establish irreparable harm. Further, the change in Liu's status in the SEVIS system may expose him to a risk of detention or deportation. The defendants' inability to agree that he would not be detained or deported as a result of his status change before the defendants could be prepared to be heard on Liu's request for preliminary relief is an acknowledgement of the existence of this risk. The evidence before the court further establishes that the uncertain link between Liu's SEVIS status and the possibility of detention and deportation is causing him emotional harm. Liu has shown that, without a TRO, he will suffer irreparable harm for which an award of monetary damages would not be sufficient.

The balance of the hardships and whether injunctive relief is in the public interest both weigh in Liu's favor. The only argument that the defendants offered on these factors was a concern that a TRO in this case may interfere with ICE's ability to carry out its duties. Though the defendants did not challenge for the purposes of the April 9 hearing the allegation that Liu's SEVIS status had changed, they could not confirm that his status had changed, or if it had, whether it had been changed intentionally or as the result of an error. Nor could the defendants confirm that ICE had included Liu in any priority. At best, the defendants ask the court to avoid unintentionally interfering with ICE's ability to carry out some unstated duty. For his part, Liu points to the irreparable injury that he contends supports his request for immediate relief, as well as Congress's expressed intent to allow foreign students to pursue educational opportunities in

the United States without interference. The court finds that these two factors weigh in Liu's favor.

A TRO is necessary to avoid irreparable harm in this case. It is made more appropriate given its anticipated short duration, which is only long enough to afford the defendants the time they have requested to prepare their factual and legal responses to Liu's requests for preliminary relief.

After considering the relevant factors, the court exercises its discretion to waive the bond requirement embedded in Rule 65(c) of the Federal Rules of Civil Procedure. See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 1001 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984).

Conclusion

For the foregoing reasons, the plaintiff's motion for a temporary restraining order (doc. no. 2) is granted. The parties shall meet and confer regarding an appropriate briefing and argument schedule for the preliminary injunction hearing, with the hearing scheduled no later than April 23, 2025.

All defendants are (i) enjoined from terminating Mr. Liu's F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) required to set aside their termination determination. This order shall remain in effect until further order of the court.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

April 10, 2025
cc: Counsel of Record.

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

XINYUAN WU, *et al.*,

> *Plaintiffs*,

– against –

TODD M. LYONS,

> *Defendant*.

---

**TEMPORARY RESTRAINING ORDER**
25-cv-01979 (NCM)

**NATASHA C. MERLE**, United States District Judge:

**WHEREAS**, upon review of plaintiffs' motion for a temporary restraining order, the accompanying declarations and the exhibits attached thereto, the memorandum of law submitted in support, as well as the parties' arguments raised during the April 11, 2025, hearing on plaintiffs' motion, and for good cause shown; and

**WHEREAS**, for the reasons set forth on the record, the Court finds that plaintiffs have shown by a preponderance of the evidence a likelihood of success on the merits of their claim pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.*, that plaintiffs will likely suffer irreparable harm which cannot be remedied by money damages, and that the balance of hardships and public interest weigh in favor of temporary injunctive relief; it is hereby

**ORDERED** that, pending further order of this Court, defendant is enjoined from terminating plaintiff Wu's Student and Exchange Visitor Information System ("SEVIS") record and F-1 visa status; and it is further

Dockets.Justia.com

ORDERED that, pending further order of this Court, defendant must set aside its decision to terminate plaintiffs' visa statuses and plaintiff Wu's SEVIS record; and it is further

ORDERED that this temporary restraining order shall be in effect for a period of fourteen (14) days from the entry hereof, after which it shall expire absent further order of the Court; and it is further

ORDERED that the bond requirement of Rule 65(c) is waived; and it is finally

ORDERED that by April 16, 2025, the parties shall meet and confer and submit an appropriate briefing schedule for plaintiffs' motion for a preliminary injunction, which must conclude no later than April 22, 2025, so that the Court may hold a hearing by April 24, 2025, if necessary.

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Issued:      April 11, 2025
             Brooklyn, New York

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student DOE #2, | No. CV-25-00175-TUC-AMM |
| Plaintiff, | **ORDER** |
| v. | |
| Donald J Trump, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order (TRO). (Doc. 2.)

Although "very few circumstances justify[] the issuance of an ex parte TRO," *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006), the Court has reviewed the pertinent briefs, record, and authority (*see* Docs. 1 through 6) and finds that Plaintiff has met all the requirements for a TRO. *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (Plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *All. for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met.").[1]

In light of the exigent circumstances, the Court issues this necessarily brief Order. Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order is **granted** to preserve the status quo until the Court can receive further briefing and hold a hearing on **April 29, 2025 at 10:00 a.m.**[2] The Government shall file a response to Plaintiff's Emergency Motion for a Temporary Restraining Order by no later than **April 21, 2025**, and Plaintiff shall file a reply by no later than **April 24, 2025**.

**IT IS FURTHER ORDERED** as follows:

(a) Defendants are temporarily enjoined for fourteen days from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings;

(b) Defendants' actions in terminating Plaintiff's SEVIS record shall have no legal effect and shall not obstruct Plaintiff in continuing to pursue their academic and employment pursuits that Plaintiff is authorized to pursue as an international student in F-1 status.

(c) Plaintiff is not required to give security, *see* Fed. R. Civ. P. 65(c), as this Order

---

[1] Based on the limited information currently before the Court, the record reflects: (a) Plaintiff is a graduate student in lawful F-1 status; (b) Plaintiff is in full compliance with all requirements to lawfully remain in the United States pursuant to their F-1 status; (c) the Government has unlawfully terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record and revoked Plaintiff's F-1 visa in order to arrest, detain, or transfer Plaintiff far from Plaintiff's home, school, employer, and community without any hearing. Accordingly, in light of this record, Plaintiff has satisfied the requirements for a TRO at this very early stage of the litigation.

[2] The Court notes that United States District Judge Martinez is temporary unavailable. As such, United States District Judge Soto has temporarily stepped into this case to handle the pending emergency motion. However, this case remains with Judge Martinez, and Judge Martinez will be presiding over this case going forward (including the hearing set for April 29, 2025).

should not result in any financial damage to Defendants.

(d) Plaintiff shall serve Defendants with this Order forthwith.[3]

Dated this 15th day of April, 2025.

Honorable James A. Soto
United States District Judge

_____

[3] This Order was filed at approximately 3:12 p.m. on April 15, 2025.

- 3 -

1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **CENTRAL DISTRICT OF CALIFORNIA**
10
11   Chengkai Zhou a/k/a Edward Zhou,          ) Case No. 2:25-cv-02994-CV(SKx)
                                               )
12                        Plaintiff,           ) **ORDER GRANTING PLAINTIFF'S**
                                               ) **APPLICATION FOR TEMPORARY**
13              v.                             ) **RESTRAINING ORDER**
     Todd M. Lyons, Acting Director, U.S.      )
14   Immigration and Customs Enforcement,      )
                                               )
15                                             )
                          Defendant.           )
16   _____ )
17

18       On April 7, 2025, Plaintiff Chengkai Zhou, a/k/a Edward Zhou ("Plaintiff") filed a
19   complaint (Doc. # 1, "Compl.") and an Application for Temporary Restraining Order or
20   in the Alternative Preliminary Injunction ("Application") (Doc. #11, "App.") against
21   Defendant Todd M. Lyons, the acting director of the U.S. Immigration and Customs
22   Enforcement ("ICE") (the "Government"). On April 10, 2025, Plaintiff filed a
23   Supplement to its Application ("Supplement"). (Doc # 15, "Suppl."). On April 11, 2025,
24   the Government filed its opposition brief to Plaintiff's Application ("Opposition"). (Doc
25   # 17, "Opp'n).
26       The Application was heard on April 15, 2025. Having considered the briefing and
27   the parties' oral arguments, and for the reasons discussed below, the Court GRANTS the
28   Application.

## INTRODUCTION

Plaintiff alleges that ICE terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record and F-1 student status, and that the termination violated the Administrative Procedure Act and Plaintiff's due process rights under the Fifth Amendment. Compl. ¶ 47–50. Plaintiff asks the Court to "enjoin the effects of [ICE's] termination of Plaintiff's SEVIS record and F-1 status." App. at 15.

## FACTUAL BACKGROUND

The present dispute arises from the Government's termination of Plaintiff's F-1 status in SEVIS, an online database that stores information regarding international students. Compl. at p. 1–2. Such information includes the student's start date, academic progress, and graduation date, which schools must enter into SEVIS. *Id.* ¶ 18. The Student Exchange Visitor Program ("SEVP"), which ICE operates, monitors SEVIS to determine whether students are maintaining their student status. *Id.* ¶¶ 16, 19. If a student does not maintain their status, ICE (through SEVP) can terminate the student's SEVIS record and, along with it, the student's F-1 status. Consequently, the student would be barred from continued studies in the United States. *See Id.* ¶¶ 21–27.[1] According to the Complaint, ICE considers students who have their SEVIS records terminated as nonimmigrants without status, and such students are expected to leave the United States. *Id.* ¶ 22. Moreover, a student's F-1 status in the SEVIS system is distinguishable from an F-1 visa—F-1 status allows a student to seek education in the United States, *see* 8 C.F.R. § 214.2(f)(5)(i) (permitting students to seek a full course of study during the time period the student is "maintaining status"), while an F-1 visa permits a student to enter the United States based on having F-1 status. *See* 8 U.S.C. § 1101(a)(15)(F). A student

---

[1] At the hearing, the Government argued that a termination of a student's SEVIS record does not constitute a termination of the student's F-1 status. However, the Government did not make this argument in the Opposition and there is currently no such evidence in the record. Accordingly, the Court declines to consider this argument at this time.

cannot have an F-1 visa without having F-1 status; accordingly, if a student's F-1 status is terminated in the SEVIS system, so is the student's F-1 visa. *See* Compl. ¶ 38.

Plaintiff, a citizen and national of the People's Republic of China, has been a student at the University of California, Los Angeles ("UCLA") since 2021. Doc. #1–2 ¶¶ 3–4, "Zhou Decl." On June 25, 2021, after accepting an offer to attend UCLA, Plaintiff received an F-1 student visa. *Id.* ¶ 5. On September 17, 2021, Plaintiff was admitted through the port of entry at the Los Angeles International Airport as an F-1 student. *Id.* ¶ 6. Plaintiff has since been attending classes at UCLA and expects to graduate in a few months. *Id.* ¶ 7. Plaintiff has been paying an annual tuition of $15,154 plus an annual "nonresident supplemental tuition" of $34,200. *Id.* ¶ 10. Plaintiff approximates his annual cost to attend UCLA, including room and board, at $75,000. *Id.* As a result of losing his F-1 status, Plaintiff cannot attend classes and finish his degree. *Id.* ¶ 24.

On April 3, 2025, Plaintiff received an email from UCLA's international student office explaining that his SEVIS record had been terminated. *Id.* ¶ 15, Ex. B. The email cited to a notation made by the Department of Homeland Security ("DHS") in SEVIS, which stated in relevant part: "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* ¶ 16, Ex. B. Plaintiff was not provided with any notice or opportunity to respond. *Id.* Ex. 17. Since Plaintiff's F-1 visa was revoked two days later on April 5, 2025, Plaintiff presumes that his SEVIS record was terminated due to a prior brush with the law, but he does not know for certain since ICE never provided an explanation. *Id.* ¶¶ 11-15. Plaintiff was never charged with a crime and has no criminal record. *Id.* ¶¶ 12-14, Ex. A.

## LEGAL STANDARD

Courts analyze motions for TROs and motions for preliminary injunctions in substantially the same manner. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO or a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a TRO or preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. 7, 20. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

### I. Jurisdiction

As a preliminary matter, the Government challenges the Court's jurisdiction to review this matter on the basis that ICE's termination of Plaintiff's SEVIS record is not "final." The Government argues that the termination is not final because (1) Plaintiff has not exhausted administrative processes identified on the DHS website, and (2) Plaintiff is subject to removal proceedings, during which Plaintiff can challenge the termination in an immigration court. Opp'n at 4–5. The Court disagrees. With regards to the Government's first point, "the exhaustion of administrative remedies [is] 'a prerequisite to judicial review only when [1] expressly required by statute or [2] when an administrative rule requires appeal before review and the administrative action is made inoperative pending that review.'" *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 181 (3d Cir. 2019) (quoting *Darby v. Cisneros*, 509 U.S. 137, 154, (1993)). The Government has not pointed to any statute or administrative rule requiring Plaintiff to pursue the administrative processes described in the Opposition. With regards to the Government's second point, "the finality of an order cannot be conditioned on something that may never happen." *Fang*, 935 F.3d at 184. Here, there is no guarantee that the government will initiate removal proceedings against Plaintiff, and the mere possibility of removal proceedings does not negate the finality of the termination.

Accordingly, for purposes of the Application, the Court finds that it has jurisdiction to review this case. However, the Court acknowledges that any party may, at any time, challenge a court's subject-matter jurisdiction.

## II.    Application for TRO

After considering the Application, the exhibits attached thereto, the Opposition, and the parties' oral argument during the April 15 hearing, the Court finds that Plaintiff has met each of the elements required for a TRO.[2]

*First*, Plaintiff has shown a likelihood of success on the merits of his claim that the Government violated the APA when it terminated Plaintiff's SEVIS record and, in effect, his F-1 status. Based on the record before the Court, Plaintiff is likely to show that ICE exceeded its legal authority in terminating Plaintiff's SEVIS record by failing to comply with 8 C.F.R. § 214.1(d), and that the termination was arbitrary, capricious, an abuse of discretion, or otherwise unlawful.[3] *See* 5 U.S.C. § 706(2)(A). The Government did not address Plaintiff's arguments that ICE exceeded its authority, nor did the Government provide any information to the contrary at the hearing.

*Second*, Plaintiff established that he would suffer irreparable harm absent a TRO. The record shows that Plaintiff lost his F-1 status and, in turn, his ability to attend classes, effectively denying Plaintiff the ability to complete his degree. "The loss of timely academic progress alone is sufficient to establish irreparable harm." *Liu v. Noem*, 1:25-cv-00133-SE-TSM, slip op. at 4. The record also shows that, without F-1 status, Plaintiff is subject to arrest, deportation, and accruing unlawful presence. Finally, the evidence indicates that the possibility of deportation and not being able to complete his education is causing Plaintiff emotional harm. Monetary damages alone would not be sufficient to compensate Plaintiff for these harms.

---

[2] The Government was given notice and an opportunity to be heard, however, Government's counsel asked the Court to treat the Application as a request for a TRO and not a preliminary injunction given the condensed briefing schedule. The Court agrees and will limit its consideration to the issue of a temporary restraining order at this time. *See Midkiff v. US Bancorp*, No. CV 12-3262-VBF (Ex), 2012 WL 12882431, at *2 (C.D. Cal. May 14, 2012) ("[I]nformal notice and hearing does not [automatically] convert the temporary restraining order into a preliminary injunction of unlimited duration," which would require "a meaningful opportunity to prepare for the hearing[.]")

[3] Since Plaintiff has established a likelihood of success on the merits on these grounds, the Court declines to address Plaintiff's due process arguments at this time.

*Third*, Plaintiff has established that both the balance of hardships and the public interest weigh in favor of injunctive relief. The Government's only argument on these factors was that "[t]he public interest lies in the Executive's ability to enforce U.S. immigration laws" and that "control over immigration is a sovereign prerogative." Opp'n at 9. But the record suggests that the Government's termination of Plaintiff's SEVIS record exceeded the Government's legal authority. And the Government has made no showing that the requested relief of temporarily restoring Plaintiff's F-1 status while the Court considers whether the termination was proper would interfere with the Government's ability to lawfully enforce immigration laws. On the other hand, Plaintiff has shown that he will suffer irreparable harm from a potentially unlawful agency action. Accordingly, the Court finds that these two factors weigh in Plaintiff's favor.

Finally, the Court denies the Government's request that Plaintiff provide security pursuant to Fed. R. Civ. P. 65(c). The Court exercises its discretion to waive the bond requirement. *See Diaz v. Brewer,* 656 F.3d 1008, 1015 (9th Cir. 2011).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's application for a TRO is GRANTED. The parties shall meet and confer regarding an appropriate briefing and argument schedule for a preliminary injunction hearing.

The Government's decision to terminate Plaintiff's F-1 student status in SEVIS is hereby set aside pending further order from the Court. The Government is enjoined from terminating Plaintiff's F-1 status in SEVIS pending further order from the Court.


IT IS SO ORDERED


DATED: 4/15/25

Cynthia Valenzuela

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Rattanand Ratsantiboon,                              File No. 25-CV-01315 (JMB/JFD)

       Plaintiff,

v.

       **ORDER**

Kristi Noem, *Secretary of Department of Homeland Security, in her official capacity*; Todd Lyons, *Acting Director Immigration & Customs Enforcement, in his official capacity*; and U.S. Immigration & Customs Enforcement,

       Defendants.

---

This matter is before the Court on Plaintiff Rattanand Ratsantiboon's motion for a temporary restraining order (TRO) against Defendants Kristi Noem, Todd Lyons, and U.S. Immigration & Customs Enforcement (ICE) (together, Defendants). (Doc. No. 12.) Ratsantiboon asks the Court to enter a TRO ordering the following: (1) enjoining Defendants from terminating Ratsantiboon's F-1 student status in the Student and Exchange Visitor (SEVIS) system; and (2) requiring Defendants to set aside their termination decision as to Ratsantiboon. For the reasons stated below, the Court grants Ratsantiboon's motion.

## BACKGROUND

Ratsantiboon is a citizen of Thailand who has resided in the United States since September 1, 2014, when he was lawfully admitted into the United States under an F-1 visa. (Doc. No. 13 ¶ 2; Doc. No. 12 at 2.) Ratsantiboon is currently enrolled as a full-time

nursing student at Metropolitan State University.  (Doc. No. 13 ¶ 1.)  Ratsantiboon has two

prior criminal convictions: a careless driving offense on May 8, 2018, and a third-degree

Driving While Impaired offense on August 2, 2018.  (*Id.* ¶¶ 6–7.)  He has never been

subjected to any academic disciplinary action related to these offenses.  (*Id.* ¶ 8.)

On March 28, 2025, ICE marked Ratsantiboon's student status as "terminated"

within the SEVIS system.  (*Id.* ¶ 8.)  ICE entered the reason for termination as "Otherwise

Failing to Maintain Status – Student identified in criminal records check.  Terminated

pursuant to INA 237(a)(1)(C)(i) / 8 USC 1227(a)(1)(C)(i)."  (*Id.* ¶ 5.)  ICE did not inform

Ratsantiboon that his status had been terminated; he learned of his altered status only

through a school official.  (*Id.* ¶ 9.)  On April 8, 2025, Metropolitan State University

attempted to issue a new I-20 document for Ratsantiboon.  However, ICE blocked the

effort, this time providing the reason for termination as "OTHER- Individual identified in

criminal records check and/or has had their VISA revoked. SEVIS record has been

terminated."  (*Id.* ¶ 10.)  This entry was backdated to March 28, 2025.  (*Id.*)

On April 8, 2025, Ratsantiboon filed this action.  (Doc. No. 1.)  In his four-count

Complaint, Ratsantiboon seeks declaratory and injunctive relief on grounds that

Defendants violated the Administrative Procedure Act (APA) when they terminated his

SEVIS record on improper grounds, without prior notice, without an articulated basis for

their decision, and without providing Ratsantiboon an opportunity to respond.

Ratsantiboon contends that Defendants acted in an arbitrary and capricious manner,

inconsistent with the intent and plain language of the Immigration & Nationality Act and

in violation of the Due Process Clause of the Fifth Amendment.

2

## DISCUSSION

Ratsantiboon now moves for a TRO to temporarily enjoin Defendants from terminating his student status in the SEVIS system and to require Defendants to set aside their termination decision.  Based on the record presented to the Court at this stage, the Court concludes that the applicable factors favor immediate temporary relief.

When considering a motion for a TRO, courts consider the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction.").  No one factor is determinative, and courts "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted).  The moving party bears the burden to establish these factors.  *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Based on the record presented to the Court at this time, the Court concludes that the first factor favors granting the requested TRO: Ratsantiboon faces irreparable harm in the absence of temporary relief.  Ratsantiboon is currently engaged in the middle of his spring semester, for which he has already paid tuition in full.  (Doc. No. 13 ¶¶ 1, 13.)  The termination of Ratsantiboon's F-1 student status in the SEVIS system renders him

3

immediately ineligible to attend classes and sit for his final examinations. Ratsantiboon thus faces the imminent prospect of losing credit for the coursework he has thus far performed. (Doc. No. 8 at 3.) In addition, the termination of Ratsantiboon's SEVIS record forces him to live in uncertain legal status while he pursues this matter (Doc. No. 13 ¶ 14), which can constitute a separate irreparable harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (concluding that plaintiffs' reasonable fear of being subject to unlawful detention absent a preliminary injunction may constitute irreparable harm).

This harm plainly outweighs the risk of injury to Defendants. Ratsantiboon stands to lose his lawful status in his present country of residence, a semester's worth of course credits, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. *See Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) (concluding that "the equities strongly favor an injunction considering the irreversible impact [the challenged agency] action would have as compared to the lack of harm an injunction would presently impose").

The third *Dataphase* factor, probability of success on the merits, also favors granting the requested relief at this time. Ratsantiboon alleges that Defendants violated the APA when they marked his student status as terminated in violation of their own regulations. *See* 8 C.F.R. § 214.1(d) (stating that nonimmigrant status may be terminated under the following three circumstances: (1) the revocation of a waiver authorized on the individual's behalf; (2) the introduction of a private bill to confer permanent resident status; or (3) pursuant to notification in the Federal Register on the basis of national security, diplomatic, or public safety reasons). None of those three circumstances appear to be

4

present in this case, as the record before the Court indicates that no waiver has been revoked, no private bill has been introduced, and no notification in the Federal Register has been published.  An agency's unexplained refusal to follow its own regulations effecting individuals' procedural benefits poses a high probability that the agency is not acting in accordance with the APA.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *see also Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988) (noting that "the Agency's failure to follow its *own regulations* can be challenged under the APA" (emphasis in original)); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (observing the "the long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency" (citing *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942))).

Lastly, the Court concludes that there is substantial public interest in ensuring that governmental agencies abide by federal laws, *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022), and there is no identifiable public interest in permitting federal officials to act outside of the law.  *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025).

Therefore, the balance of the *Dataphase* factors favors granting the requested interim relief at this time.  Further, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time.

*See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016).

A motion hearing will be held on April 28, 2025, at 11:00 a.m., to address whether to extend the interim relief ordered, and if so, for how long. This Order shall remain in effect at least until the hearing on April 28, 2025, and absent objection by the moving party, the Court may consider construing Ratsantiboon's motion as a request for a preliminary injunction to remain in place during the pendency of this case. Defendants are ordered to respond to Ratsantiboon's motion for injunctive relief (Doc. No. 12) on or before April 22, 2025. Ratsantiboon may reply on or before April 25, 2025.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Plaintiff Rattanand Ratsantiboon's motion for an emergency temporary restraining order (Doc. No. 12) is GRANTED.

2.  Defendants are required to temporarily set aside their determination to mark Ratsantiboon's F-1 student status as terminated. Defendants shall reinstate Ratsantiboon's student status and SEVIS authorization, retroactive to March 28, 2025.

3.  Defendants are also temporarily enjoined from taking any further action to terminate Ratsantiboon's student status or revoke his visa.

4.  This Order takes effect immediately and shall continue until its expiration in fourteen days.

Dated: April 15, 2025                    /s/ *Jeffrey M. Bryan*
                                         Judge Jeffrey M. Bryan
                                         United States District Court

4/17/25, 1:58 PM    John Roe and Jane Doe, Plaintiffs, v. Kristi Noem, in her official capacity as Secretary of Homeland..., Slip... DEPARTMENT OF H...

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 47 of 183    Page ID #:222

THOMSON REUTERS
WESTLAW PRECISION

PINTO    History    Folders    My links    Community    Notifications    ✦ CoCounsel                      Sign out

All content    | Enter terms, citations, databases, questions, anything … |    3rd Circuit    Parallel Search
                                                                                        Advanced

**JOHN ROE and JANE DOE, Plaintiffs, v. KRISTI NOEM, in her offi…**
United States District Court, D. Montana, BUTTE DIVISION.  •  April 15, 2025  •  Slip Copy  •  2025 WL 1114694    (Approx. 5 pages)

Document    Filings (0)    Negative Treatment (0)    History (0)    Citing References (    Cited With (0)    Table of Authorities                     | Fullscreen |

☐ 7 of 23 results ☐    | Search term |                                              ☐ ☐ Go    ☐ ☐ ☐ ☐ ☐ ☐

2025 WL 1114694

Only the Westlaw citation is currently available.

United States District Court, D. Montana,

BUTTE DIVISION.

## JOHN ROE and JANE DOE, Plaintiffs,

### v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, Defendants.

CV 25-40-BU-DLC

Filed 04/15/2025

### ORDER

Dana L. Christensen, District Judge United States District Court

*1  Before the Court is Plaintiffs John Roe and Jane Doe's [1]  ("Plaintiffs") Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) For the reasons herein, the Court issues a temporary restraining order and sets a hearing on the Motion for April 29, 2025.

#### BACKGROUND

Plaintiffs are full-time international students currently enrolled at Montana State University, Bozeman ("MSU") (Doc. 1 ¶ 2.) Roe, a citizen of Iran, received an F-1 visa to study in the United States on July 26, 2016, and Doe, a citizen of Turkey, first arrived in the United States on an F-1 visa in 2014. (Doc. 1 ¶¶ 20, 27.) Roe has been pursuing a Ph.D. in electrical engineering since 2019, and Doe a master's degree in microbiology since 2021. (*Id.* ¶ 3.) Neither student has been convicted of committing any crime or violating any immigration law in the United States, and neither student has been active in on-campus protests regarding any political issue. (*Id.*)

On April 10, 2025, Plaintiffs received an email from MSU informing them that their Student and Exchange Visitor Information System ("SEVIS") record was terminated. (Docs. 4 ¶ 17; 5 ¶ 16.) According to the email, Plaintiffs' SEVIS record indicated the following: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Docs. 6-2 at 2; 6-3 at 2.) The email also provided that "[w]hen a student's record is terminated, that student is expected to depart the United States immediately. Unlawful presence in the United States could result in arrest, detention or deportation by federal authorities." (*Id.*)

On April 14, 2025, Plaintiffs filed this lawsuit against Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), DHS, and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE") (collectively, Defendants), alleging that DHS unlawfully terminated their F-1 student status in the SEVIS system. (Docs. 1 ¶ 15; 3 at 19.) Plaintiffs challenge DHS's termination of their F-1 student status in the SEVIS system. (Doc. 3 at 19.) Plaintiffs do not challenge the revocation of their F-1 visa. (*Id.*)

Count I alleges that Defendants violated the Due Process Clause of the Fifth Amendment to the United States Constitution by terminating Plaintiffs' SEVIS record based on improper grounds, without prior notice, and without providing Plaintiffs an opportunity to respond. (Doc. 1 ¶¶ 51–53.) Count II alleges that Defendants violated the Administrated Procedure Act ("APA") by terminating Plaintiffs' SEVIS record without statutory or regulatory authority. (*Id.* ¶¶ 54–57.) Count III alleges that Defendants violated the APA's procedural due process provision, 5 U.S.C. § 706(2)(B), by terminating …

✦ CoCounsel                                                           ☐ ⋮

improper grounds, without prior notice, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 58–60.) And Count IV alleges that because Defendants failed to articulate the facts forming the basis for their decision to terminate Plaintiffs' SEVIS status, Defendants actions were "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law." (*Id.* ¶¶ 61–63.)

\*2  Also on April 14, 2025, Plaintiffs filed an emergency motion for a temporary restraining order and preliminary injunction, seeking an order from this Court:

(1) requiring Defendants to restore Plaintiffs' F-1 student status in SEVIS;

(2) requiring Defendants Noem and Lyons to set aside the F-1 student status termination decisions as to Plaintiffs;

(3) prohibiting Defendants Noem and Lyons from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they would be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;

(4) prohibiting all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiff's counsel as well as time to contest any such action; and

(5) prohibiting all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.

(Doc. 2 at 2–3.) Plaintiffs further request a waiver of the requirement for bond or security as provided for by Federal Rule of Civil Procedure 65(c). (*Id.* at 3.)

Counsel for Defendants have not yet appeared. On April 15, 2025, this Court issued an order requiring Plaintiffs to provide further information regarding efforts to notify Defendants of this matter. (Doc. 9.) Plaintiffs subsequently filed a Notice explaining that they are actively engaged in email correspondence with the United States Attorney's Office for the District of Montana. (Docs. 10; 10-1.) As of the date of this Order, Defendants have not responded to Plaintiffs' Motion.

## LEGAL STANDARD

Temporary restraining orders "serv[e] the [ ] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). To obtain emergency injunctive relief—whether that be a temporary restraining order or preliminary injunction—a plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the equities balance in the plaintiff's favor; and (4) that preliminary injunctive relief would serve the public interest. *See Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 20 (2008).

## DISCUSSION

Although Defendants have yet to appear in this case, Plaintiffs have provided the Court with copies of email correspondence between the United States Attorney's Office for the District of Montana regarding this case. (*See* Docs. 10; 10-1.) The Court finds this email exchange sufficient to demonstrate notice for purposes of issuing a temporary restraining order, and thus will continue with a discussion of the merits. *See Document Operations, L.L.C. v. AOS Legal Techs., Inc.*, 2021 WL 3729333, at \*2 (5th Cir. 2021).

### I. Likelihood of Success on the Merits

\*3  Plaintiffs argue they are likely to succeed on the merits of their Complaint for two reasons: first, the termination of Plaintiffs' F-1 status under the SEVIS system violates the APA and second, the termination violates the Due Process Clause of the United States Constitution. (Doc. 3 at 19.)

Plaintiffs direct this Court to a recent decision out of the United States District Court for the District of New Hampshire, a case presenting facts much like those at issue here. *See Liu v. Noem*, 25-cv-133-SE (D. NH April 10, 2025). There, a university student sued Noem and Lyons alleging that DHS unlawfully terminated his F-1 student status in the SEVIS system. *Id.* The plaintiff alleged DHS violated his due process rights under the Fifth Amendment to the United States Constitution and violated the APA when it terminated his status in the SEVIS system. *Id.* After oral argument, the court found the plaintiff was "likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (citing 5 U.S.C. § 706(2)(A)).

The District of New Hampshire's conclusion is persuasive. 8 C.F.R. § 214.1(d) provides that "the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursu…

Register, on the basis of national security, diplomatic, or public safety reasons." None of these mechanisms have been employed in this case. 8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. *See Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). Moreover, Plaintiffs' academic record and lack of criminal history fails to support an alternative basis for termination of their F-1 status; at any rate, DHS's decision does not purport to rely upon such a reason.

Therefore, the Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). Because Plaintiffs are likely to succeed on their APA cause of action, the issue of due process need not be addressed at this time.

### II. Likelihood of Irreparable Harm

Plaintiff Doe has been pursuing her master's degree in biology at MSU for the past three and a half years. (Doc. 5 ¶ 9.) As part of her program, she has been employed as a teaching and research assistant. (*Id.* ¶¶ 9–11.) Doe is scheduled to complete her master's degree program and graduate with distinction on May 8, 2025. (*Id.* ¶ 12–15.) Plaintiff Roe has been pursuing his Ph.D. in electrical engineering/physics at MSU for the past six years. (Doc. 4 ¶ 7.) As part of his program, Roe has been employed by MSU as a research assistant and works approximately 60 to 65 hours per week. (*Id.* ¶ 8.) Losing F-1 status places Plaintiffs' education, research, financial stability, and career trajectories at imminent risk of irreparable harm. (Docs. 4 ¶ 22; 5 ¶ 21.) Plaintiffs also face the risk of immediate detention or removal from the United States.

*4  In consideration of the above, Plaintiffs have successfully shown that, absent the relief provided for by a TRO, they will suffer irreparable harm for which an award of monetary damages would be insufficient.

### III. Balance of Hardships and Public Interests

With respect to public interest, "when the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The relief requested restores Plaintiffs ability to remain in the United States to complete their degrees, and granting temporary relief in this instance will maintain the status quo. Although Defendants have yet to respond, the Court finds it compelling that Plaintiffs have not been convicted of any crime while in the United States. On balance, the equities tip in Plaintiffs' favor at this stage of the proceedings. A TRO will preserve the status quo for the short duration until a hearing can be held in this matter.

Finally, it is unlikely any harm will come to Defendants as a result of this temporary restraining order. Therefore, the Court exercises its discretion to waive the bond requirement provided for by Rule 65(c). *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

### CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Motion (Doc. 2) is GRANTED. Defendants Kristi Noam, the Department of Homeland Security, and Todd Lyons are temporarily enjoined for a period of fourteen days from the date of this Order as follows:

(1) Defendants shall restore Plaintiffs' F-1 student status in the Student and Exchange Visitor Information System;

(2) Defendants shall set aside the F-1 student status termination determination as to Plaintiffs;

(3) Defendants shall not terminate either Plaintiff's student status under the Student and Exchange Visitor Information System absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff;

(4) Defendants are prohibited from arresting, detaining, or transferring either Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention or transfer of either Plaintiff out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as appropriate time to contest any such action; and

(5) Defendants are prohibited from initiating removal proceedings against or deporting either Plaintiff on the basis of the termination of their F-1 student status.

IT IS FURTHER ORDERED that the security required by Federal Rule of Civil Procedure 65(c) is waived.

IT IS FURTHER ORDERED that Plaintiffs shall file, under seal, identifying information including full name, address, and date of birth, and any other information necessary for Defendants to reinstate their F-1 student status in the Student and Exchange Visitor Information System.

IT IS FURTHER ORDERED that Defendants shall file their response to Plaintiffs' Motion (Do[...] Plaintiffs shall file their reply brief on or before April 25, 2025.



Case 8:25-cv-00706-DOC-DFM   Document 17-2   Filed 04/21/25   Page 50 of 183   Page
ID #:225

IT IS FURTHER ORDERED that a hearing on Plaintiffs' Motion (Doc. 2) shall be held on **April 29, 2025, at 9:00 a.m.** at the Russell Smith Federal Courthouse in Missoula, Montana.

**\*5** IT IS FURTHER ORDERED that the parties shall file respective notices by 5:00 p.m. on April 22, 2025, of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

DATED this 15th day of April, 2025 at 4:45 p.m.

## All Citations

Slip Copy, 2025 WL 1114694

---

### Footnotes

1   Plaintiffs are proceeding under pseudonym to protect themselves against retaliation, doxing, and/or harassment. (Doc. 2 at 3.)

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Contact us  •  Live chat  •  Training and support  •  Improve Westlaw Precision/Report an error  •  Transfer My Data  •  Pricing guide  •  Search Tips  •  Sign out
1-800-REF-ATTY (1-800-733-2889)

Westlaw Precision. © 2025 Thomson Reuters    Accessibility  •  Privacy  •  Supplier terms                    *Thomson Reuters is not providing professional advice*





Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 51 of 183    Page
ID #:226
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 1 of 17

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STUDENT DOE,                              No.  2:25-cv-01103-DAD-AC

12                   Plaintiff,

13           v.                                 ORDER GRANTING PLAINTIFF'S
                                                MOTIONS TO PROCEED UNDER
14    KRISTI NOEM, et al.,                      PSEUDONYM, FOR A PROTECTIVE
                                                ORDER AND FOR TEMPORARY
15                   Defendants.                RESTRAINING ORDER

16                                              (Doc. No. 5)

17

18
             This matter came before the court on April 17, 2025 for hearing on plaintiff's motion to
19
      proceed under pseudonym and for protective order and plaintiff's motion for temporary
20
      restraining order.  (Doc. Nos. 2, 5.)  Attorney Joye Wiley appeared in person on behalf of
21
      plaintiff.  Assistant United States Attorney Shelley D. Weger appeared in person on behalf of
22
      defendants.  For the reasons explained below, plaintiff's motions to proceed under pseudonym,
23
      for a protective order and for a temporary restraining order will be granted.
24
                                           BACKGROUND
25
             On April 14, 2025, plaintiff Student Doe filed his complaint against defendants Kristi
26
      Noem, Todd Lyons, and Department of Homeland Security ("DHS") for terminating plaintiff's
27
      Student and Exchange Visitor Information System ("SEVIS") record, which had the effect of
28

                                                 1

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 52 of 183    Page
ID #:227
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 2 of 17

1    terminating plaintiff's F-1 visa status.  (Doc. No. 1.)  In support of the pending motions, plaintiff

2    presents evidence of the following.

3        Plaintiff, an international student with an F-1 visa, received an email on April 8, 2025

4    from his university notifying plaintiff that "SEVIS has terminated your record" and that the

5    "[e]xplanation" provided by the government was that plaintiff had been "[i]dentified in" a

6    "criminal records check and/or had their VISA revoked."  (Doc. Nos. 2-2 at 2; 5-6 at 2.)  The

7    email also stated that ICE "agents may investigate to confirm the departure of the student[,]"

8    "[n]o grace period is allowed[,]" and "[r]emaining in the United States on a terminated status may

9    have serious consequences."  (Doc. Nos. 2-2 at 3–4; 5-6 at 3–4.)  There has been a recent surge in

10    hate crimes, and the White House and DHS have communicated anti-immigrant sentiment.  (Doc.

11    No. 2 at 4–5.)

12        Plaintiff has "never been convicted of any crime[,]" and has "never had criminal charges

13    filed against" him.  (Doc. No. 5-5 at 2.)  He "was detained two times by law enforcement in 2024,

14    but no charges were filed and [he] received correspondence from law enforcement that no charges

15    would be filed for lack of evidence."  (*Id.*)

16        Based upon the allegations of his complaint, plaintiff asserts the following claims against

17    defendants:  (1) unauthorized SEVIS termination in violation of the Administrative Procedure Act

18    ("APA"); (2) deprivation of procedural due process rights in violation of the Fifth Amendment;

19    (3) unlawful detention in violation of the Fifth Amendment; (4) deprivation of procedural due

20    process in violation of the APA; and (5) arbitrary and capricious SEVIS termination in violation

21    of the APA.  (Doc. No. 1 at ¶¶ 37–55.)

22        On April 14, 2025, plaintiff filed a motion to proceed under pseudonym and for protective

23    order.  (Doc. No. 2.)  On April 15, 2025, plaintiff filed a motion for temporary restraining order.

24    (Doc. No. 5.)  That same day, the court required plaintiff to serve defendants with a copy of the

25    complaint, the motion to proceed under pseudonym, the emergency motion for temporary

26    restraining order, and accompanying papers.  (Doc. No. 6.)  The court also set the deadline for

27    defendants to file any opposition to the pending motions on April 16, 2025 at 4:00 p.m., and set a

28    hearing on the motions for April 17, 2025 at 10:00 a.m.  (*Id.*.)  The court further ordered that

2

Case 8:25-cv-00706-DOC-DFM   Document 17-2   Filed 04/21/25   Page 53 of 183   Page
ID #:228
Case 2:25-cv-01103-DAD-AC   Document 13   Filed 04/17/25   Page 3 of 17

1    defendants not take any action to remove plaintiff from the United States or out of this District

2    pending the scheduled hearing and unless and until the court ordered otherwise.  (*Id.*)  Also on

3    April 15, 2025, defendants filed designation of counsel for service.  (Doc. No. 7.)  On April 16,

4    2025, plaintiff filed proof of service of the required documents.  (Doc. Nos. 8, 9.)

5                                   **LEGAL STANDARD**

6           The standard governing the issuing of a temporary restraining order is "substantially

7    identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v.

8    John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for

9    preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the

10   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

11   balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans,

12   Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,

13   Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th

14   Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just

15   possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los

16   Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must

17   make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

18   1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is

19   appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

20   raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation

21   omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.

22   City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.

23   v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than

24   merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

25   immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an

26   injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

27   plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

28   /////

3

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 54 of 183    Page
ID #:2291
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 4 of 17

1    The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

2    *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of

3    demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that

4    "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

5                                        **ANALYSIS**

6    **A.    Motion to Proceed Under Pseudonym and for Protective Order**

7             Plaintiff moves to proceed under pseudonym with respect to the public and for a

8    protective order that would:  (1) require the parties to redact or file any information identifying

9    plaintiff under seal; (2) limit sharing by defendants' counsel of any information about plaintiff's

10   identity or related personal information beyond what is reasonably necessary for this litigation

11   and to comply with this court's orders; (3) prohibit the use of the information for any purpose

12   outside of this litigation; and (4) prohibit disclosing the identity of plaintiff for purposes of

13   detention or removal during the pendency of this litigation or until further order of the court.

14   (Doc. No. 2 at 7–8.)  Defendants filed no opposition to plaintiff's motion to proceed under

15   pseudonym but stated at the hearing that they opposed the motion on the grounds that it was

16   unnecessary.

17            "The normal presumption in litigation is that parties must use their real names." *Doe v.*

18   *Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010).  However,

19   the court may "conceal[] parties' identities in order to protect them from retaliation by third

20   parties and also to protect nonparties from reprisals." *Does I thru XXIII v. Advanced Textile*, 214

21   F.3d 1058, 1067 (9th Cir. 2000).  "[A] party may preserve his or her anonymity in judicial

22   proceedings in special circumstances when the party's need for anonymity outweighs prejudice to

23   the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068.  Where

24   "pseudonyms are used to shield the anonymous party from retaliation, the district court should

25   determine need for anonymity by evaluating the following factors:  (1) the severity of the

26   threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous

27   party's vulnerability to such retaliation." *Id.* (citations omitted).

28   /////

                                              4

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 55 of 183   Page
D #:230
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 5 of 17

1      Here, plaintiff presents evidence that the threatened harm includes "public shame,

2   potential vigilante justice by community members with anti-immigrant sentiment, reputational

3   harm, and possible detention and removal." (Doc. No. 2 at 3–6.) Plaintiff has provided evidence

4   regarding surging hate crimes, anti-immigrant messaging from the White House and DHS, and

5   the email plaintiff received warning that ICE "agents may investigate to confirm the departure of

6   the student[,]" "[n]o grace period is allowed[,]" and "[r]emaining in the United States on a

7   terminated status may have serious consequences." (Doc. Nos. 2 at 4–5; 2-2 at 3.) This evidence

8   is sufficient to show that the threatened harm is severe, plaintiff's fears are reasonable, and

9   plaintiff is vulnerable to retaliation. *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025

10   WL 691664, at *7 (E.D. Cal. Mar. 3, 2025) ("Given Petitioner is still at risk of removal should his

11   asylum application be denied, he is also acutely vulnerable to retaliation."). Because defendants'

12   counsel will have access to plaintiff's identity and be permitted to share that information as

13   necessary for purposes of this litigation, the court identifies no prejudice to defendants, and the

14   public's interest in knowing plaintiff's identity is minimal. *Doe*, 2025 WL 691664, at *7 ("There

15   is no prejudice to Respondents here — Petitioner's identity is fully known to the Court and

16   Respondents — and the public interest in knowing Petitioner's identity is minimal and

17   outweighed by Petitioner's need for anonymity.").

18      Federal Rule of Civil Procedure 5.2(e) provides that a court may require redaction of

19   private information from court filings "for good cause." To show "good cause," the party seeking

20   redaction must show that "specific harm or prejudice will result" if the protective order is not

21   granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).

22   For the same reasons discussed previously, the court concludes plaintiff has shown good cause for

23   requiring redaction of information identifying plaintiff. *Beilarus1 v. Mayorkas*, No. 2:24-cv-

24   01925-MJP, 2025 WL 104387, at *2 (W.D. Wash. Jan. 15, 2025) (finding good cause to redact

25   information regarding immigration status).

26      "[O]rdinarily a party must show 'compelling reasons' to keep a court document under

27   seal." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1095 (9th Cir. 2016). For the

28   reasons discussed above, the court finds compelling reasons to require filing under seal of any

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 56 of 183    Page
ID #:231
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 6 of 17

1    information identifying plaintiff.  *Doe*, 2025 WL 691664, at *7 ("While there is a strong

2    presumption in favor of access to public records, for the same reasons stated above [regarding

3    risk of removal], Petitioner has articulated compelling reasons that outweigh the general history

4    of access and the public policies favoring disclosure.").  Accordingly, plaintiff's motion to

5    proceed under pseudonym with respect to the public and for a protective order will be granted.

6    **B.    Motion for Temporary Restraining Order**

7         Plaintiff moves for a temporary restraining order stating that defendants are:  (1) enjoined

8    from terminating plaintiff's SEVIS record; (2) required to set aside their termination

9    determination; (3) prohibited from detaining, initiating removal proceedings, or removing

10    plaintiff based on the SEVIS termination; and (4) enjoined from directly or indirectly enforcing,

11    implementing, or otherwise taking any action or imposing any legal consequences as a result of

12    the termination of his SEVIS record.  (Doc. No. 5 at 17–18.)  As noted, defendants oppose

13    plaintiff's motion.  (Doc. No. 11.)

14         1.    Likelihood of Success on the Merits

15         Plaintiff brings two types of claims in his complaint—claims brought under the APA and

16    claims alleging violations of the Fifth Amendment.  The court first addresses plaintiff's first and

17    fifth claims for unauthorized SEVIS termination in violation of the APA and arbitrary and

18    capricious SEVIS termination in violation of the APA, respectively.  (Doc. No. 1 at ¶¶ 37–40,

19    52–55.)

20         a.    *Status Quo Ante Litem*

21         Defendants first argue plaintiff's requested injunction seeks to alter the status quo by

22    issuing an expedited order that would grant him the ultimate relief he seeks.  (Doc. No. 11 at 5.)

23    The court is not persuaded by this argument.  Instead, plaintiff properly seeks to restore the status

24    quo *ante litem*.  "The status quo ante litem refers not simply to any situation before the filing of a

25    lawsuit, but instead to the last uncontested status which preceded the pending controversy[.]"

26    *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted).  The

27    last uncontested status existed before defendants terminated plaintiff's SEVIS record, placing

28    plaintiff at risk of detention and removal on that basis.  *See id.* ("In this case, the status quo ante

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 57 of 183    Page
ID #:232
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 7 of 17

1   litem existed before Disney began using its allegedly infringing logo.  The interpretation of this

2   concept that Disney advocates would lead to absurd situations, in which plaintiffs could never

3   bring suit once infringing conduct had begun.").

4                                b.    *APA Legal Framework*

5          "The APA sets forth the procedures by which federal agencies are accountable to the

6   public and their actions subject to review by the courts."  *Dep't of Homeland Sec. v. Regents of*

7   *Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted).  Only "final

8   agency actions are reviewable under the APA."  5 U.S.C. § 704; *see also* 5 U.S.C. § 701 (for

9   purposes of the APA's judicial review provisions, "agency action" has "the meaning[] given" by

10  5 U.S.C. § 551).  An "'agency action' includes the whole or a part of an agency rule, order,

11  license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

12  Under § 706 of the APA, the court is "to assess only whether the decision was based on a

13  consideration of the relevant factors and whether there has been a clear error of judg[]ment."

14  *Regents*, 591 U.S. at 16 (internal quotation marks and citation omitted); *see also Transp. Div. of*

15  *the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170,

16  1178 (9th Cir. 2021).

17         The APA "requires agencies to engage in reasoned decisionmaking, and directs that

18  agency actions be set aside if they are arbitrary or capricious."  *Regents*, 591 U.S. at 16. (internal

19  citations and quotation marks omitted).  The district court's role "is simply to ensure that the

20  [agency] made no 'clear error of judgment' that would render its action 'arbitrary and

21  capricious.'"  *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or.*

22  *Nat. Res. Council*, 490 U.S. 360, 378 (1989)).  "Factual determinations must be supported by

23  substantial evidence," and "[t]he arbitrary and capricious standard requires 'a rational connection

24  between facts found and conclusions made.'"  *League of Wilderness Defs./Blue Mountains*

25  *Biodiversity Project v. Connaughton*, 752 F.3d 755, 759–60 (9th Cir. 2014) (internal citations

26  omitted).  This requires the court to ensure that the agency has not, for instance:

27                  relied on factors which Congress has not intended it to consider,
                    entirely failed to consider an important aspect of the problem, offered
28                  an explanation for its decision that runs counter to the evidence

                                                7

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 58 of 183    Page
ID #:233
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 8 of 17

1
2

> before the agency, or [an explanation that] is so implausible that it
> could not be ascribed to a difference in view or the product of agency
> expertise.

3    *McNair*, 537 F.3d at 993 (quoting *Motor Vehicle Mfrs. Assn., Inc. v. State Farm Mut. Auto. Ins.*

4    *Co.*, 463 U.S. 29, 43 (1983)); *see also All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 492 (9th

5    Cir. 2023) (articulating the same arbitrary or capricious standard).

6          c.    *Whether Privacy Act Bars Plaintiff from Seeking Relief Under APA*

7          In their opposition, defendants note that plaintiff "frames several of his claims as arising

8    under the APA," and they argue that "though the APA generally waives the government's

9    immunity," such waiver is not applicable here.  (Doc. No. 11 at 6.)

10         The APA waives sovereign immunity for actions in federal district court by "person[s]

11   suffering legal wrong because of agency action."  5 U.S.C. § 702.  That waiver, however, is

12   subject to three limitations:  (1) the plaintiff must "seek[ ] relief other than money damages";

13   (2) the plaintiff must have "no other adequate remedy"; and (3) the plaintiff's action must not be

14   "expressly or impliedly forbid[den]" by "any other statute."  *United Aeronautical Corp. v. United*

15   *States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704).  Here,

16   defendants argue that plaintiff's claims are subject to the second limitation, namely that "[t]he

17   Privacy Act provides an alternative, adequate remedy to the APA."  (Doc. No. 11 at 7.)

18         To be adequate, however, an alternative remedy must at a minimum provide the plaintiff

19   "specific procedures" by which the agency action can receive judicial review or some equivalent.

20   *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  The adequacy of the relief available need not

21   provide review identical to that which the APA would provide, so long as the alternative remedy

22   offers the "same genre" of relief.  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of*

23   *Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017).  Nonetheless, an alternative remedy will not be

24   adequate "if the remedy offers only 'doubtful and limited relief.'"  *Garcia v. Vilsack*, 563 F.3d

25   519, 522 (D.C. Cir. 2009) (quoting *Bowen*, 487 U.S. at 901).

26         The court concludes that the Privacy Act clearly does not provide plaintiff another

27   adequate remedy, as plaintiff's ability to seek relief under the Privacy Act is not even "doubtful,"

28   but nonexistent.  As defendants concede, the Privacy Act provides that an "individual" is "a

Case 8:25-cv-00706-DOC-DFM   Document 17-2   Filed 04/21/25   Page 59 of 183   Page
ID #:234
Case 2:25-cv-01103-DAD-AC   Document 13   Filed 04/17/25   Page 9 of 17

1   citizen of the United States or an alien lawfully admitted for permanent residence," (Doc. No. 11

2   at 7) (citing 5 U.S.C.A. § 552a(a)(2)), but plaintiff "is a national of an undisclosed African

3   country," (Doc. No. 11 at 7).  Accordingly, as defendants also concede, "the Privacy Act

4   precludes judicial review of Plaintiff's claims."  (*Id.* at 8.)  Because plaintiff would not qualify for

5   relief under the Privacy Act, the court concludes that he clearly does not have an alternative,

6   adequate remedy that limits the APA's waiver of the government's immunity.  *See Stenson*

7   *Tamaddon, LLC v. United States Internal Revenue Serv.*, 742 F. Supp. 3d 966, 988 (D. Ariz.

8   2024) (rejecting the IRS's argument that the plaintiff tax advisory firm is precluded from APA

9   review because the "plaintiff's clients can file a refund suit," noting that "it is immaterial whether

10  Plaintiff's clients possess an alternative remedy, as Plaintiff does not"); *Wagafe v. Biden*, No. 17-

11  cv-00094-LK, 2024 WL 2274349, at *5, 7 (W.D. Wash. May 20, 2024) (rejecting the defendants'

12  argument that "the INA provides an adequate alternative remedy for the [plaintiffs'] APA claims"

13  where "precluding district court jurisdiction could foreclose meaningful judicial review of the

14  [plaintiffs'] claims"); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 681 (N.D. Cal. 2020) (finding that

15  the "plaintiffs have no adequate alternative remedy to the APA," noting that courts have rejected

16  alternative remedy arguments where the process to seek alternative relief would be "arduous,

17  expensive, and long"); *see also Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1142 (D. Ariz. 2008)

18  ("District courts have consistently found that there is no adequate alternative remedy available to

19  aliens seeking adjudication of adjustment of status applications. . . .  This Court cannot discern a

20  reasonable alternative and, thus, concludes that Plaintiff has no adequate alternative remedy.").

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

9

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 60 of 183    Page
ID #:235
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 10 of 17

1          d.    *Application of APA*

2          Plaintiff has provided the court with evidence that defendants terminated plaintiff's

3   SEVIS record, effectively terminating plaintiff's F-1 status.[1]  (Doc. No. 5-6 at 2–4.)  This action

4   constitutes a final decision reviewable under the APA.  *See Jie Fang v. Dir. United States*

5   *Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these

6   students' F-1 visas marked the consummation of the agency's decisionmaking process, and is

7   therefore a final order[.]"); *Yerrapareddypeddireddy v. Albence*, No. 20-cv-01476-PHX-DWL,

8   2021 WL 5324894, at *7 n.10 (D. Ariz. Nov. 16, 2021) ("Defendants contend this Court lacks

9   jurisdiction because Yerrapareddypeddireddy has applied for reinstatement and is facing removal

10  proceedings, both of which render the SEVIS termination non-final.  However, the Third Circuit

11  rejected similar arguments in *Fang v. Director U.S. Immigration & Customs Enforcement*, 935

12  F.3d 172 (3d Cir. 2019).") (citation omitted), *aff'd,* No. 21-17070, 2022 WL 17484323 (9th Cir.

13  Dec. 7, 2022).

14         Therefore, pursuant to the APA, the court shall "hold unlawful and set aside" this "agency

15  action" if it is "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

16  accordance with law[.]"  5 U.S.C. § 706(2)(A).  Here, plaintiff has presented evidence regarding

17  the official explanation for the termination of plaintiff's SEVIS record.  (Doc. No. 5-6.)

18  According to this official explanation, plaintiff was "[i]dentified in" a "criminal records check

19  and/or has had their VISA revoked."  (*Id.* at 2.)

20         "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence

21  for which a sentence of more than one year imprisonment may be imposed (regardless of whether

22  such sentence is in fact imposed) constitutes a failure to maintain status."  8 C.F.R. § 214.1(g).

23  _____

24  [1]  Defendants argue termination of the SEVIS record does not equate to termination of plaintiff's
    F-1 visa status and in fact has no legal consequences.  (Doc. No. 11 at 9.)  However, defendants
25  cite no authority for this proposition, and district courts addressing terminated SEVIS records
    have found that such an action necessarily involves terminating the plaintiff's F-1 status.  *See,*
26  *e.g.*, *John Roe, et al.*, 2025 WL 1114694, at *3 (finding that regulations limiting the
    circumstances in which F-1 student status may be terminated apply to "termination of Plaintiffs'
27  F-1 student status under the SEVIS").  Furthermore, the notification plaintiff received warned that
    "[r]emaining in the United States on a terminated status may have serious consequences."  (Doc.
28  No. 5-6 at 4) (emphasis added).

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 61 of 183    Page
ID #:236
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 11 of 17

1   However, plaintiff's declaration states that plaintiff has "never been convicted of any crime[,]"

2   and indeed has "never had criminal charges filed against" him.  (Doc. No. 5-5 at 2.)  He "was

3   detained two times by law enforcement in 2024, but no charges were filed and [he] received

4   correspondence from law enforcement that no charges would be filed for lack of evidence."  (*Id.*)

5   According to this evidence, plaintiff is likely to establish that he did not fail to maintain status

6   because he has not been convicted of a crime, much less a crime of violence for which a sentence

7   of more than one year imprisonment may be imposed.  8 C.F.R. § 214.1(g).  Furthermore, no

8   other ground for failure to maintain status is at issue here.  *See* 8 C.F.R. §§ 214.1(e)–(g).

9        "[T]he Code of Federal Regulations permits termination of a student's F-1 visa status in

10   three ways:  1) by revoking a waiver that the Attorney General had previously authorized under

11   § 212(d)(3) or (4) of the Immigration and Nationality Act; 2) 'by the introduction of a private bill

12   to confer permanent resident status,' or 3) 'pursuant to notification in the Federal Register, on the

13   basis of national security, diplomatic, or public safety reasons.'"  *Jie Fang*, 935 F.3d at 176

14   (quoting 8 C.F.R. § 214.1(d)).  Revocation of plaintiff's F-1 visa is not among the permitted

15   reasons for terminating his F-1 visa status in the SEVIS system.  *John Roe, et al. v. Noem, et al.*,

16   No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. §

17   214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in

18   SEVIS based upon revocation of a visa.").

19        Because plaintiff offers evidence supporting the conclusion that neither reason given for

20   termination is permitted by the applicable regulations, plaintiff will also likely show that

21   defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was

22   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in

23   violation of the APA.[2]  *See Liu v. Noem et al.*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at 3

24   (D.N.H., Apr. 10, 2025) ("Based on the record before the court, Liu is likely to show that DHS's

---

25   [2]  Because plaintiff is likely to succeed on the merits of at least one of his claims brought under
26   the APA, the court need not address plaintiff's remaining claims.  *Liu v. Noem et al.*, No. 1:25-cv-
     00133-SE-TSM, Doc. No. 13 at 3 n.2 (Dist. N.H., Apr. 10, 2025) ("Because the court finds that
27   Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not
     address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth
28   Amendment when it terminated his F-1 status in the SEVIS system.").

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 62 of 183    Page
ID #:237
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 12 of 17

1    termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was

2    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.");

3    *Isserdasani, et al. v. Noem, et al.*, No. 25-cv-00283-WMC, 2025 WL 1118626, at *5 (W.D. Wis.

4    Apr. 15, 2025) ("Specifically, based on the record currently before the court, Isserdasani is likely

5    to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. §

6    214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

7    law under 5 U.S.C. § 706(2)(A)."); *John Roe, et al.*, 2025 WL 1114694, at *3 ("Therefore, the

8    Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of

9    Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion,

10   contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction."); *cf.*

11   *Orlando Language Sch., Inc. v. Holder*, No. 6:13-cv-00703-ORL-37-GJK, 2013 WL 12141400,

12   at *3 (M.D. Fla. May 24, 2013) (finding termination of the plaintiff's SEVIS access was contrary

13   to law under the APA because the applicable statute did not provide for this option as a response

14   to the school's failure to apply for accreditation within one year).

15         e.    *The Court's Authority to Prohibit Removal and Detention*

16         One of the forms of relief plaintiff requests is a temporary stay preventing defendants

17   from removing plaintiff on the basis of his terminated SEVIS record or consequently terminated

18   F-1 visa status.  (Doc. No. 5 at 17–18.)  Defendants argue that 8 U.S.C. § 1252(g) prohibits

19   district courts from hearing challenges to decisions and actions about whether, when, and where

20   to commence removal proceedings, and that § 1226(e) bars relief that would impact where and

21   when to detain a noncitizen.  (Doc. No. 11 at 9–10.)

22         Title 8 U.S.C. § 1252(g) states as follows:

23              Except as provided in this section and notwithstanding any other
                provision of law (statutory or nonstatutory), including section 2241
24              of Title 28, or any other habeas corpus provision, and sections 1361
                and 1651 of such title, no court shall have jurisdiction to hear any
25              cause or claim by or on behalf of any alien arising from the decision
                or action by the Attorney General to commence proceedings,
26              adjudicate cases, or execute removal orders against any alien under
                this chapter.
27

28   /////

                                                12

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 63 of 183   Page
ID #:293
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 13 of 17

1    Title 8 U.S.C. § 1226(e) states as follows:

2    > The Attorney General's discretionary judgment regarding the
3    > application of this section shall not be subject to review.  No court
     > may set aside any action or decision by the Attorney General under
     > this section regarding the detention of any alien or the revocation or
4    > denial of bond or parole.

5    "The Ninth Circuit has held consistently that Section 1252(g) should be interpreted

6    narrowly." *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2,

7    2018) (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)).  "The

8    focus of Section 1252(g) is to limit 'judicial constraints upon prosecutorial discretion.'"  *Id.*  "By

9    contrast, Section 1252(g) does not divest courts of jurisdiction over cases that do not address

10   prosecutorial discretion and address 'a purely legal question, which does not challenge the

11   Attorney General's discretionary authority[.]'"  *Id.*  The Supreme Court has "indicated that the

12   reference to 'execut[ing] removal orders' appearing in that provision should be interpreted

13   narrowly, and not as referring to the underlying merits of the removal decision."  *Maharaj v.*

14   *Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002) (citing *Reno v. Am.-Arab Anti-Discrimination*

15   *Comm.*, 525 U.S. 471, 482–87 (1999)).  "The district court may consider a purely legal question

16   that does not challenge the Attorney General's discretionary authority, even if the answer to that

17   legal question—a description of the relevant law—forms the backdrop against which the Attorney

18   General later will exercise discretionary authority."  *Hovsepian*, 359 F.3d at 1155.

19   "District courts have reached different conclusions regarding the scope of § 1252(g) when

20   a party requests a stay of removal."  *Fatty v. Nielsen*, No. 17-cv-1535-MJP-BAT, 2018 WL

21   2244713, at *5 (W.D. Wash. Apr. 5, 2018) (collecting cases).  This court is persuaded that

22   § 1252(g) addresses challenges predicated on purported improper use of discretionary authority to

23   commence removal proceedings, which is not at issue here.  8 U.S.C. § 1252(g).  Instead, here,

24   plaintiff seeks a temporary stay preventing removal, which is permitted under 8 U.S.C. § 1252(g)

25   where the basis for the stay is distinct from how the government's prosecutorial discretion was

26   deployed.  *See Dhillon v. Mayorkas*, No. 10-cv-00723-EMC, 2010 WL 1338132, at *9 (N.D. Cal.

27   Apr. 5, 2010) ("[T]he Court rejects the government's position that § 1252(g) is a jurisdictional bar

28   to the relief requested by the Dhillons-*i.e.,* a stay of removal.  As those authorities indicate, the

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 64 of 183    Page
ID #:389
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 14 of 17

1   stay sought on the removal order is not based on the Attorney General's decision to commence,

2   adjudicate, or execute a remand order within the meaning of § 1252(g). Indeed, the Dhillons'

3   claim challenging the I-130 petition denial is fully collateral to the removal proceedings[.]");

4   *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1159 (C.D. Cal. 2018) ("Contrary to the Government's

5   assertion, the Court has jurisdiction to hear Petitioners' claims regarding due process violations

6   and to order adequate injunctive relief."); *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168, 1174 (D. Ariz.

7   2012) ("Respondents also argue that under 8 U.S.C. § 1252(g), as amended by the REAL ID Act,

8   the Court lacks jurisdiction to stay Petitioners' removal from the United States. . . . Petitioners

9   are not challenging the Attorney General's discretionary decision to remove them. Rather they

10  claim that it would be unlawful to remove them before they have had the opportunity to exercise

11  their legal right to challenge CIS's basis for revoking the I–140 Petition. Because this is a legal

12  claim, not a challenge to the Attorney General's exercise of prosecutorial discretion, § 1252(g)

13  does not deprive the Court of jurisdiction."); *see also Arce v. United States*, 899 F.3d 796, 801

14  (9th Cir. 2018) ("[W]e are guided here, as elsewhere, by the general rule to resolve any

15  ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation, and by the

16  strong presumption in favor of judicial review[.]") (citations omitted). Here the basis for the

17  requested stay preventing removal is the arbitrary and capricious or unlawful termination of

18  plaintiff's SEVIS record, which is distinct from any potential decision to initiate proceedings.[3]

19  *Id.* The same reasoning applies to § 1226(e) regarding detention. *See Jennings v. Rodriguez*, 583

20  U.S. 281, 295 (2018) ("As we have previously explained, § 1226(e) precludes an alien from

21  'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the

22  Attorney General has made regarding his detention or release.' But § 1226(e) does not preclude

23  'challenges [to] the statutory framework that permits [the alien's] detention without bail.'").

24          Therefore, plaintiff's request to temporarily stay detention and removal on the basis of the

25  SEVIS termination is proper. *John Roe, et al.*, 2025 WL 1114694, at *3 ("Defendants are

26  _____

27  [3] Another provision does specifically regulate whether and when injunctions preventing removal
    are allowed, but that provision, 8 U.S.C. § 1252(f), limits "only permanent injunctions, not stays
    for temporary relief." *Singh v. United States Citizenship & Immigr. Servs.*, No. 17-cv-01538-

28  JVS-JCG, 2018 WL 6265006, at *2 (C.D. Cal. Mar. 8, 2018) (citing *Maharaj*, 295 F.3d at 965).

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 65 of 183   Page
ID #:249
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 15 of 17

1    prohibited from initiating removal proceedings against or deporting either Plaintiff on the basis of

2    the termination of their F-1 student status."); *Zheng v. Lyons*, No. 25-cv-10893-FDS, Doc. No. 8

3    at 1 (D. Mass. April 11, 2025) ("Defendant Todd Lyons, Acting Director, United States

4    Immigration and Customs Enforcement, and any agents acting under his authority or control, are

5    temporarily restrained . . . from arresting or detaining plaintiff Huadan Zheng, a/k/a Carrie Zheng,

6    under 8 U.S.C. § 1226(a), or otherwise for being unlawfully present in the United States without

7    legal permission or authority, based on the termination or revocation of her F-1 student visa.");

8    *Arizona Student Doe #2 v. Trump, et al.*, No. 4:25-cv-00175-AMM, Doc No. 7 at 2 (D. Ariz.

9    April 15, 2025) ("Defendants are temporarily enjoined for fourteen days from arresting and

10    detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of

11    this District pending these proceedings, or removing Plaintiff from the United States pending

12    these proceedings").

13        2.      Likelihood of Irreparable Harm, Balance of Equities & the Public Interest

14        Here, plaintiff received an email from his school stating that as a result of the termination

15    of his SEVIS record, ICE agents may investigate to confirm his departure, no grace period is

16    allowed, and "remaining in the United States on a terminated status may have serious

17    consequences." (Doc. No. 5-6 at 3–4.) In the absence of a temporary restraining order, plaintiff

18    may experience detention and deportation, including to a third country, and this risk has left

19    plaintiff "very distressed[.]" (Doc. No. 5-5 at 2–3.) These current and threatened consequences

20    constitute risk of irreparable harm for which an award of monetary damages would not be

21    sufficient. *Liu*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at 4. They also outweigh any minimal

22    hardship defendants may experience. *Id.*

23        Plaintiff argues the public interest is served by granting the temporary restraining order

24    because it "avoids undermining the missions of U.S. universities, preserves the substantial

25    benefits of international research and collaboration, and prevents potential chilling of

26    international student enrollment." (Doc. No. 5 at 16.) Additionally, based upon the evidence

27    now before the court, public safety is not jeopardized because plaintiff has no criminal

28    convictions and has never even been charged with a crime. (*Id.*) Defendants argue control over

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 66 of 183    Page
ID #:241
Case 2:25-cv-01103-DAD-AC    Document 13    Filed 04/17/25    Page 16 of 17

1    immigration is a sovereign prerogative.  (Doc. No. 11 at 11.)  The court is persuaded that the

2    public interest favors plaintiff in this case.  *See Liu*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at

3    4 ("The balance of the hardships and whether injunctive relief is in the public interest both weigh

4    in Liu's favor.  The only argument that the defendants offered on these factors was a concern that

5    a TRO in this case may interfere with ICE's ability to carry out its duties.").

6                                    **CONCLUSION**

7          For the reasons explained above,

8    1.      Plaintiff's motion to proceed under pseudonym and for protective order is

9            GRANTED;

10   2.      The court orders that:

11           a.   Plaintiff has permission to proceed pseudonymously with respect to the public;

12           b.   The parties are required to redact or file any information identifying plaintiff

13                under seal;

14           c.   Defendants' counsel may not share any information about plaintiff's identity

15                beyond what is reasonably necessary for the litigation and to comply with this

16                court's orders;

17           d.   The parties are prohibited from using the protected information for any

18                purpose outside of this litigation; and

19           e.   The parties are prohibited from disclosing the identity of plaintiff for purposes

20                of detention or removal for the pendency of this litigation or until further order

21                of the court;

22   3.      Plaintiff's motion for a temporary restraining order (Doc. No. 5) is GRANTED;

23   4.      The court orders that, pending the hearing and determination of the motion for

24           preliminary injunction, defendants are:

25           a.   Enjoined from terminating plaintiff's SEVIS record;

26           b.   Required to set aside their SEVIS record termination determination;

27           c.   Prohibited from detaining or removing plaintiff based on the SEVIS

28                termination; and

Case 8:25-cv-00706-DOC-DFM    Document 17-2    Filed 04/21/25    Page 67 of 183   Page
Case 2:25-cv-01103-DAD-AC      Document 13     Filed 04/17/25    Page 17 of 17
ID #:242

1          d.  Enjoined from directly or indirectly enforcing, implementing, or otherwise

2              taking any action or imposing any legal consequences as a result of the

3              termination of his SEVIS record; and

4     5.    The court sets the following schedule with respect to plaintiff's motion for

5           preliminary injunction:

6          a.  Plaintiff shall file his motion for preliminary injunction by June 2, 2025;

7          b.  Defendant shall file its opposition to the motion by June 16, 2025;

8          c.  Plaintiff shall file any reply to the opposition by June 23, 2025;

9          d.  The motion for preliminary injunction will be heard by the court on July 7,

10             2025 at 1:30 PM in Courtroom 4;

11    6.    No bond shall be required to be posted by plaintiff pursuant to Rule 65(c) of the

12          Federal Rules of Civil Procedure.

13    IT IS SO ORDERED.

14    Dated:   **April 17, 2025**                      _Dale A. Drozd_

15                                              DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8

9    JOHN DOE,                              Case No. 25-cv-03140-JSW

10                   Plaintiff,             **ORDER GRANTING MOTION FOR
                                            TEMPORARY RESTRAINING ORDER**
11            v.                            **AND SETTING BRIEFING SCHEDULE
                                            AND HEARING**
12   KRISTI NOEM, TODD M. LYONS,
     MOISES BECERRA, and DONALD J.          Re: Dkt. No. 9
13   TRUMP,

14                   Defendants.

15

16          Now before the Court is Plaintiff's motion pursuant to Federal Rule of Civil Procedure

17   65(b) for a temporary restraining order.  Defendants are Kristi Noem, in her official capacity as the

18   Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official

19   capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises

20   Becerra, in his official capacity as the Acting Field Office Director of the San Francisco ICE

21   Office of Detention and Removal, and Donald J. Trump, in his official capacity as President of the

22   United States (collectively, "the Government").

23          Plaintiff asks the Court to temporarily enjoin Defendants from taking any enforcement

24   action against him arising directly or indirectly from the termination of Plaintiff's Student and

25   Exchange Visitor Information Systems ("SEVIS") records and possible revocation of his F-1 visa.

26   The limited record before the Court indicates that Plaintiff is a former international student

27   currently working pursuant to post-graduate employment authorization in this District.  (Compl., ¶

28

15.)[1]  He has been present in the United States on an F-1 visa and is married to a United States citizen.  (*Id.* ¶ 40.)  Plaintiff argues he "set to change status" on June 28, 2025.  (Mot. at 4.)  On March 28, 2025, Plaintiff received a notice from his graduate school that his SEVIS status was terminated.  The reason cited was failure to maintain status based on a criminal records check.  (*Id.* ¶¶ 34-35.)  Plaintiff acknowledges a minor misdemeanor conviction but alleges it was not for a crime of violence and did not carry a potential sentence of more than one year.  (*Id.* ¶ 38.)[2]

Plaintiff's counsel indicates that has been corresponding with the Office of the United States Attorney about this matter and the pending motion.  Counsel requested that the Government agree not to arrest Plaintiff pending resolution of this litigation.  The Government did not agree. (Mot. at 6.)

Although "very few circumstances" justify the issuance of an *ex parte* temporary restraining order ("TRO"), based on the Court's review of Plaintiff's motion, allegations in the complaint, and relevant authorities, it finds that Plaintiff has met the requirement for an emergency *ex parte* TRO at this time.  *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party is (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.")

A plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (holding that, in the Ninth Circuit, "serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the W*inter* test are also met").  Where, as here, the

---

[1]     Plaintiff separately seeks to proceed under a pseudonym.  (Dkt. No. 2.)

[2]     Pursuant to 8 C.F.R. section 214.1(g), only a crime of violence and for which a sentence of more than one year imprisonment may be imposed constitutes a failure to maintain status.

1    Government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d

2    1073, 1092 (9th Cir. 2014).

3        The Court is satisfied that Plaintiff has shown a likelihood of success and at the very least

4    has shown serious questions going to the merits of his claim under the Administrative Procedure

5    Act.  Plaintiff alleges that "ICE takes the position that the termination of a SEVIS record

6    effectively ends F-1 student status."  (Compl. ¶ 4.)  Plaintiff argues the termination is a final

7    agency action for purposes of the APA.  *See, e.g., Fang v. Director U.S. Immigration & Customs*

8    *Enforcement,* 935 F.3d 172, 185 (3rd Cir. 2019) (holding that order terminating F-1 visa status

9    was final agency action for jurisdictional purposes).  Plaintiff alleges that he had advised ICE of

10   the conviction.  Based on the current record, none of the grounds on which Defendants relied to

11   terminate his SEVIS status comport with 8 C.F.R. § 814.1(d).  *See, e.g., Roe v. Noem*, No. CV 25-

12   40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. April 15, 2025) (granting TRO on APA claim

13   on similar facts: student alleged DHS unlawfully terminated F1-status in SEVIS system and cited

14   reasons did not comport with statutory or regulatory requirements); *Isserdasani v. Noem*, No. 25-

15   cv-283-WMC, 2025 WL 1118626 (W.D. Wis. April 15, 2025) (same).

16       The  Court also concludes Plaintiff has shown the likelihood of irreparable harm absent

17   relief.  Plaintiff alleges that his spouse "struggles with serious mental health issues and … is the

18   primary caretaker for a family member suffering from serious illness."  (Compl., ¶ 40.)  He argues

19   that if he was "arrested and incarcerated in an immigration jail as a result of ICE's [] termination

20   of their SEVIS record, Plaintiff and their U.S. citizen spouse would suffer even further

21   excruciating mental, emotional, and financial harm."  (*Id.*)  The Court's conclusion on this factor

22   is further supported by the Government's refusal not to arrest Plaintiff in the interim.

23       Given the limited scope of this TRO, the serious consequences that could befall Plaintiff,

24   and because "the public interest is served by compliance with the APA,"[3] the Court concludes the

25   final two *Winter* factors weigh in favor of granting the TRO.  Finally, under the circumstances of

26   this case and because the TRO should not result in any financial damage to Defendants, the Court

27

28   [3]    *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) (cleaned up).

United States District Court
Northern District of California

3

waives the requirement that Plaintiff give an amount of security.

Accordingly, the Court GRANTS Plaintiff's motion for a TRO to preserve the status quo pending further briefing and a fulsome hearing on this matter. The Court shall hold an in-person hearing on Friday, April 25, 2025, at 9:00 a.m. Defendants shall file a response to Plaintiff's motion by no later than April 21, 2025, at 11:00 a.m. Plaintiff shall file a reply by no later than April 23, 2025, at 11:00 a.m.

IT IS FURTHER ORDERED as follows:

(1) Defendants are enjoined for 14 days from arresting and incarcerating Plaintiff pending resolution of these proceedings. 5 U.S.C. § 705; and

(2) Defendants are enjoined for 14 days from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

(3) The parties are ordered to redact or file any information identifying Plaintiff under seal; and

(4) Defendants' counsel are prohibited from sharing any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation; and

(5) Plaintiff shall serve Defendants with this Order forthwith and provide proof of service on the docket by no later than April 17, 2025, by 1:00 p.m.

**IT IS SO ORDERED.**

Dated: April 17, 2025 at 9:27 a.m.

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

4

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ZILIANG J.,                                    Case No. 25-CV-1391 (PJS/DLM)

          Plaintiff,

v.                                                              ORDER

KRISTI NOEM, Secretary of Department of
Homeland Security, in her official capacity;
TODD LYONS, Acting Director of
Immigration and Customs Enforcement, in
his official capacity; and U.S.
IMMIGRATION & CUSTOMS
ENFORCEMENT,

          Defendants.

---

      Cameron Lane Youngs Giebink, David L. Wilson, Gabriela Sophia
      Anderson, and Katherine Lourdes Santamaria Mendez, WILSON LAW
      GROUP, for plaintiff.

      This matter is before the Court on plaintiff's emergency motion for a temporary

restraining order ("TRO") against defendants Kristi Noem, Todd Lyons, and U.S.

Immigration & Customs Enforcement ("ICE") (together "defendants").  For the reasons

that follow, the Court grants the motion.

## I.  BACKGROUND

      Plaintiff is a citizen of the People's Republic of China who has lawfully resided in

the United States since August 25, 2019, when he was admitted pursuant to an F-1 visa.

ECF Nos. 1 ¶ 8, 7 ¶ 2.  Plaintiff is currently enrolled as a full-time student in a master's

degree program in geographic information science and cartography at the University of Minnesota's Twin Cities campus. ECF No. 7 ¶ 2.

ICE is responsible for administering the student visa program and tracking information on students in F-1 status through the Student and Exchange Visitor Program. ECF No. 1 ¶ 13. Under 8 U.S.C. § 1372, such students are tracked in an electronic record system known as the Student Exchange Visitor Information System ("SEVIS"). Plaintiff alleges that ICE takes the position that termination of a student's SEVIS account requires the student to immediately depart the United States. ECF No. 1 ¶ 87.

During his time in the United States, plaintiff has twice received parking tickets and once been cited for speeding. ECF No. 7 ¶¶ 6–7. He has also been cited for driving with a suspended license, but that case was dismissed. *Id.* ¶ 6. Plaintiff paid all of the fines that were imposed as a result of these offenses, and he has never been subject to academic discipline. *Id.* ¶¶ 7–8.

On April 8, 2025, ICE terminated plaintiff's student status in the SEVIS system. ECF No. 8-4. ICE identified the reason for the termination of his status as follows: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* ICE did not inform plaintiff that his status had been terminated. ECF No. 7 ¶ 9. Instead, he learned about the termination of his SEVIS

status when the University of Minnesota sent him an email on April 8, 2025, notifying him of the change.  *Id.* ¶ 9.

Plaintiff filed this action on April 14, 2025.[1]  ECF No. 1.  He brings three claims under the Administrative Procedure Act ("APA") and a claim for a declaratory judgment, contending that terminating his SEVIS status was contrary to the Immigration and Nationality Act and its implementing regulations, violated the Due Process Clause of the Fifth Amendment, and was arbitrary and capricious.  Plaintiff seeks injunctive as well as declaratory relief.

Plaintiff now moves for a TRO to temporarily enjoin defendants from terminating his status in the SEVIS system and to require defendants to set aside their termination decision.

## II. ANALYSIS

In considering a motion for a TRO, courts consider four factors:  "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27

---

[1]The Court notes that, just as this order was about to be docketed, plaintiff filed an amended complaint.  The allegations underlying the Court's conclusions, however, remain the same.

F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction."). No one factor is determinative, and the court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (internal quotation marks omitted). The moving party bears the burden to establish that these factors weigh in favor of granting temporary relief. *See, e.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, based on the record now before the Court, the Court concludes that all four factors weigh in favor of granting plaintiff's requested TRO.

As to the first factor, the Court finds that plaintiff plainly faces irreparable harm. plaintiff is in the middle of the semester, for which he has already paid $17,739.23 in tuition. ECF No. 7 ¶¶ 1, 18; ECF No. 8-2. He is at imminent risk of being forced to drop his courses for this semester, and he is at risk of being prevented from registering for classes for next semester, as the University cannot allow him to proceed with his studies without an active student status on the SEVIS system. ECF No. 7 ¶¶ 16–17. More broadly, plaintiff faces the loss of the many years and many thousands of dollars he has invested in pursuing his degree. *Id.* ¶ 14. Because both the United States and the

-4-

University of Minnesota enjoy sovereign immunity, plaintiff may be unable to recover his financial losses.

In addition, plaintiff is now present in the United States with his legal status uncertain. This confusion about his legal status threatens imminent harm in at least two ways. First, it may subject him to immediate detention and deportation. *Id.* ¶ 10. Second, it causes him to accumulate unlawful presence in the United States, which is likely to impede or prevent him from becoming a permanent resident in the future. *Id.* ¶¶ 12, 13.

As to the second factor, the only apparent basis for defendants' action is plaintiff's history of minor traffic violations, the most recent of which took place in December 2023. ECF No. 7 ¶ 7. Enabling plaintiff to remain in status and continue his studies while the Court sorts through the legal issues in this case poses no plausible risk of injury to defendants.

As to the third factor, the Court finds on the basis of the current record that plaintiff is likely to succeed on the merits. Government agencies are generally required to follow their own regulations. *See, e.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). Plaintiff alleges that, when defendants terminated his status in the SEVIS system, they violated their own regulations and thereby violated the APA. *See* 8 C.F.R.

§ 214.1(d) (providing that termination of a non-citizen's nonimmigrant status may be accomplished by (1) revoking a waiver authorized on the non-citizen's behalf, (2) the introduction of a private bill to confer permanent-resident status on the non-citizen, or (3) a notification in the Federal Register on the basis of national security, diplomatic, or public-safety reasons).  Defendants do not appear to have terminated plaintiff's status pursuant to any of these three courses of action.  The record does not indicate that there was any relevant waiver to revoke.  Nor does the record reflect that a private bill for permanent residence has been introduced, or that any notification in the Federal Register has been published.

Finally, as to the fourth factor, the Court finds that there is a substantial public interest in ensuring that government agencies comply with federal law.  Indeed, the Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce.

For these reasons, the Court grants plaintiff's request for temporary relief and, in its discretion, the Court waives the bond requirement under Fed. R. Civ. P. 65(c).  The Court also finds good cause to issue this order without notice, as defendants took the challenged action without notice, giving rise to a real risk that plaintiff might be detained or deported without notice and before he can serve defendants.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's motion for a temporary restraining order [ECF No. 4] is

        GRANTED.

        a.    Defendants are ORDERED to temporarily set aside their

                determination to classify plaintiff's F-1 student status as

                terminated.

        b.    Defendants are ORDERED to reinstate plaintiff's student status in

                the SEVIS system, backdated to April 8, 2025.

        c.    Defendants are temporarily ENJOINED from taking any further

                action to terminate plaintiff's student status.

        d.    Defendants are ENJOINED from directly or indirectly enforcing,

                implementing, or otherwise taking any action or imposing any

                legal consequences as the result of the decision to terminate

                plaintiff's SEVIS records, including revoking plaintiff's visa,

                detaining him, or deporting him.

2.    Plaintiff is ORDERED to serve defendants with the summons, complaint,

        motion papers, and a copy of this order as soon as possible.

-7-

3.      The Court will hold a hearing on Thursday, April 24, 2025, at 2:30 pm to

consider whether to convert the TRO into a preliminary injunction.

Defendants' brief in response to plaintiff's motion is due no later than

Monday, April 21, 2025.  Plaintiff may file a reply no later than

Wednesday, April 23, 2025.

4.      Pursuant to Fed. R. Civ. P. 65(b)(2), this order will expire 14 days from the

date of entry unless the Court extends it for good cause shown or

defendants consent to an extension.


Dated:  April 17, 2025, at 9:15 a.m.          s/Patrick J. Schiltz

                                              Patrick J. Schiltz, Chief Judge
                                              United States District Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ZEEL M. PATEL,                                    )
                                                  )
        Plaintiff,                             )
                                                  )
     v.                                       )     Civil Action No. 1:25-CV-00101
                                                  )
PAM BONDI, *Attorney General of the*              )
*United States*; KRISTI NOEM, *Secretary of*      )
*Homeland Security*; and TODD LYONS,              )
*Acting Director of U.S. Immigration and*         )
*Customs Enforcement*;                            )
                                                  )
        Defendants.                            )

## MEMORANDUM AND ORDER OF COURT

Presently pending before the Court is Plaintiff Zeel Patel's ("Patel") Motion for Temporary Restraining Order ("TRO") (Docket No. 2). Patel asks the Court to grant her motion and to issue an order (i) enjoining Defendants from terminating her F-1 student status under the Student and Exchange Visitor ("SEVIS") system and (ii) requiring Defendants to set aside their termination determination. The Court has reviewed Patel's motion, as well as her supporting brief (Docket No. 3), Proposed Order (Docket No. 5), Supplement (Docket No. 12), and Proposed Findings of Fact and Conclusions of Law (Docket No. 13). The Court has also considered the parties' arguments on the motion, which the Court heard today, April 17, 2025, at a hearing on the motion. (Docket No. 6). Having carefully considered the record and the parties' arguments, the Court will grant the motion for TRO for the reasons stated on the record and herein.

## I. STANDARD OF REVIEW

Patel must establish the following for a TRO: "(1) a likelihood of success on the merits, (2) that denial of injunctive relief will result in irreparable harm, (3) that granting the temporary restraining order will not result in irreparable harm to the defendants, and (4) that granting the

TRO is in the public interest." *Zubik v. City of Pittsburgh*, No. 20:CV-1809, 2020 WL 7053304, at \*1 (W.D. Pa. Nov. 24, 2020) (citing *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1997)). That is, she must establish the same elements as for a preliminary injunction. *Id.* (citing *Saluck v. Rosner*, C.A. No. 98-5718, 2003 WL 559395, at \*2 (E.D. Pa. Feb. 25, 2003)). Where, as here, the government is a party, "the last two factors in the [TRO] analysis … merge." *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). The primary purpose of a TRO is "preserv[ation of] the status quo until a decision can be made on the merits." *Id.* (citing *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d Cir. 2020)); *N. Am. Dental Mgmt., LLC v. Phillips*, No. CV 23-1202, 2023 WL 4551980, at \*2 (W.D. Pa. July 14, 2023).

## II. DISCUSSION

Patel is an international student pursuing her master's degree in Management Sciences and Quantitative Methods at Gannon University in Erie, Pennsylvania. (Docket No. 1, ¶ 25). She entered the United States on September 23, 2023, on an F-1 student visa. (Docket No. 12-2, ¶ 2). Patel indicates in her filings that she has maintained her status and has not done anything to compromise her status in the United States while she pursues her education at Gannon. It therefore came as a surprise to her when, on April 8, 2025, she was "notified by email by [her] school that [her] SEVIS status had been terminated" (*id.* ¶ 4) and informing her that this "indicat[ed] that the U.S. government believes [she] ha[d] violated [her] status." (Docket No. 1-3 at 4). Patel speculates the SEVIS termination could be related to a summary disorderly conduct offense, 18 Pa. S. C. § 5503(A)(4), but she explains through her attorneys that such offense would not explain her SEVIS termination. (Docket No. 3 at 2-3). Patel has not received any explanation from Defendants concerning the abrupt SEVIS termination. Based on these events, Patel sued

Defendants for violating the Administrative Procedure Act ("APA") (Counts I and II), and deprivising her of procedural due process in violation of the Fifth Amendment and the APA (Counts III and IV).

In applying the TRO standard to Patel's motion, the Court first assesses Patel's likelihood of success on the merits of her claims.[1] At least with respect to Patel's claims that Defendants' termination of her SEVIS status violated the APA because it was (1) arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, including 8 C.F.R. § 214.1(d), and (2) arbitrary and capricious because no rational connection between any facts and such decision was made or conveyed, the Court finds that Patel has established more than a reasonable probability of success on the merits. To establish a reasonable probability of success on the merits, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). Patel has met that burden here.

The SEVIS termination is a final agency decision susceptible to judicial review. *Jie Fang v. Dir. U.S. ICE*, 935 F.3d 172, 182 (3d Cir. 2019). SEVIS termination may occur when a student fails to maintain status or when Department of Homeland Security ("DHS") terminates status. *See* 8 C.F.R. §§ 214.2(f); 214.1(d). With respect to maintenance of status, Patel represents under penalty of perjury that she has maintained her status by full-time study at Gannon, by avoiding any unlawful or unauthorized employment, and by avoiding being convicted of a crime of violence. With respect to DHS terminations, it does not appear that DHS terminated Patel's SEVIS

---

[1] If the Court finds a likelihood of success on some of Patel's claims, the Court need not go on to assesses likelihood of success on all claims. *CIBA-GEIGY Corp. v. Bolar Pharm. Co.*, 719 F.2d 56, 57 (3d Cir. 1983) (affirming the district court's "thoughtful and detailed" decision granting a preliminary injunction where the plaintiff had demonstrated a "likelihood of ultimate success as to at least one of the [counts—either the Lanham-Act count or the State unfair-competition counts]").

registration or terminated her F-1 visa pursuant to its limited authority to do so. *Jie Fang*, 935 F.3d at 185 n. 100 (explaining the bases for termination of an F-1 visa as set forth in 8 C.F.R. § 214.1(d)). Patel's evidence and argument at this juncture establishes that her SEVIS registration was terminated without explanation and there is no evidence in the record to discern termination for a reason set forth in 8 C.F.R. § 214.2(f) or 214.1(d). At argument, the Government could not provide an explanation. The Court is therefore satisfied that Patel is likely to succeed on the merits of her claims, at least with respect to the claims in Counts I and II of the Complaint wherein Patel has sought this Court's review of whether Defendants' final decision on her SEVIS registration was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of 5 U.S.C. § 706(2)(A).[2]

That brings the Court to the second TRO factor: whether a TRO is necessary to prevent immediate and irreparable harm to Patel. Patel represents, *inter alia*, that Defendants' termination of her SEVIS registration puts her at risk of removal, disrupts and frustrates her academic studies and her ability to graduate in May 2026, and will result in financial hardship where Patel has already spent at least $30,000 toward her degree. Patel also believes she presently lacks lawful status because of Defendants' actions, and she therefore may be accruing out-of-status time that will affect her ability to reinstate F-1 student status in the future. As the Court expressed on the record at the hearing today, the disruption of education and potential accrual of time out of lawful

---

[2] The Court would reach the same conclusion even if the heighted standard applicable to injunctions seeking to alter the status quo applied here. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994).

status that could not be regained constitute an immediate and irreparable harm to Plaintiff warranting a TRO.[3]

Because the two "gateway" factors for a TRO weigh in Patel's favor, the Court next considers whether granting the TRO will result in greater harm to Defendants and whether the public interest is served by the TRO. *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024). Regarding harm to Defendants, no specific harm has been brought to the Court's attention. The Government did not identify any threat to the public interest that will result from restoration of Patel's SEVIS registration. To the contrary, ensuring that SEVIS termination only occurs in accord with applicable law is in the public interest. Based on that and all the foregoing, it is the Court's assessment in this matter that all four elements for TRO relief are satisfied here and warrant granting Patel's motion.

## III.  **CONCLUSION**

The Court is satisfied that Defendants will not be harmed in any significant way by the granting of a TRO in this matter. Patel has established all the requirements of Rule 65(b) and is entitled to entry of a TRO under the relevant case law. The TRO will be set to expire in fourteen days on **May 1, 2025**, though such date may be extended for good cause. This Court will not require Patel to give security for the TRO pursuant to Rule 65(c) because there is no indication in the record that Defendants will suffer damages if this TRO was wrongfully entered. *Consol Pennsylvania Coal Co., LLC v. Mahalaxmi Cont'l Ltd.*, No. CV 22-781, 2022 WL 2133563, at *2

---

[3]     While delays in education alone have generally been found not to "amount to irreparable harm," *B.P.C. v. Temple Univ.*, No. CIV.A. 13-7595, 2014 WL 4632462, at *5 (E.D. Pa. Sept. 16, 2014), the circumstances here are unique in that Patel is at risk of accruing days that could accumulate to prevent future reinstatement of F-1 status. *See Jie Fang*, 935 F.3d at 176.

(W.D. Pa. June 14, 2022). The Court intends to set a hearing in this matter by further order, should Patel move for a preliminary injunction.

An appropriate Order follows.

## ORDER OF COURT

AND NOW, this 17th day of April 2025, upon consideration of Plaintiff's Motion for Temporary Restraining Order (Docket No. 2), for the reasons set forth in the Memorandum, *supra*, and having determined that: (1) Plaintiff has established a likelihood of success on the merits; (2) Plaintiff will suffer irreparable harm if the TRO is denied; (3) granting the TRO will not result in irreparable harm to Defendants; and (4) granting the TRO is in the public interest, IT IS HEREBY ORDERED that said Motion is GRANTED.

IT IS FURTHER ORDERED that, for the duration of this TRO:

1. Defendants are enjoined from terminating Plaintiff's F-1 student status records from SEVIS;

2. Defendants are enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action imposing any legal consequences as the result of the decision to terminate Plaintiff's SEVIS records;

3. The Court will set a hearing on any forthcoming preliminary injunction motion by further order of Court;

4. This Order shall remain in effect until **MAY 1, 2025**, at **2:30 p.m.**, unless otherwise extended, modified, or vacated by further Order of Court.

*/s/ W. Scott Hardy*
W. Scott Hardy

United States District Judge

cc/ecf: All counsel of record

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| JOHN DOE, | CASE NO. 2:25-cv-00633-DGE |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) |
| KRISTI NOEM et al., | |
| Defendant. | |

## I      INTRODUCTION

17        Plaintiff Doe[1] is a doctoral student at the University of Washington, in good academic

18  standing, and scheduled to graduate in December of 2025.  (Dkt. No. 7 at 3.)  On April 7, 2025,

19  the University of Washington informed Plaintiff his record within the Student and Exchange

20  Visitor Information System ("SEVIS") maintained by Immigration and Customs Enforcement

21

22  _____
[1] A motion for Plaintiff to proceed pseudonymously remains pending.  (Dkt. No. 4.)  By referring
    to Plaintiff as Doe at this stage, the Court expresses no view on that motion.  During a TRO
23  hearing held on April 17, 2025, the Parties confirmed that Defendants are aware of Doe's
    identity and that Plaintiff has disclosed that information to them, and as such, referring to him as
24  Doe in the TRO order would not be an obstacle to compliance.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 1

(ICE) had been terminated and was no longer in an active status. (*Id.*)  The purported reason for termination was Plaintiff's alleged failure to maintain his nonimmigrant status based on a "criminal records check" and/or a visa revocation.  (Dkt. No. 7-2 at 1.)

Plaintiff brings claims under the Administrative Procedures Act ("APA") and the Fifth Amendment against the Secretary of Homeland Security and the Department, the ICE Acting Director, and other officials (collectively, "Defendants").  Plaintiff moves for a Temporary Restraining Order ("TRO") requiring Defendants to restore his SEVIS record and status, and to prevent the Defendants from initiating removal proceedings based on the termination of his SEVIS record.  (*See* Dkt. No. 3.)  Because Plaintiff is likely to succeed in his argument that Defendants' actions were arbitrary and capricious, and not in accordance with law, the Court will grant the TRO.  *See* 5 U.S.C. § 706(2)(A).

**II      BACKGROUND**

**A.  The F-1 Visa Program and SEVIS**

Pursuant to the Immigration and Nationality Act ("INA"), a foreign student may enter the United States in a nonimmigrant status to complete a course of study at an approved educational institution.  8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).  If approved, the State Department will issue a visa allowing the student admission to the United States to pursue their course of study.  *See* 22 C.F.R. § 41.61(b)(1).  If admitted, DHS may administratively designate the student as an F-1 nonimmigrant classification.  8 C.F.R. § 214.1(a)(2).  A key component to admission as an F-1 nonimmigrant student is the presentment of Form I-20, which is "issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students."  8 C.F.R. § 214.2(f)(1)(i)(A).  The F-1 student's Form I-20 is endorsed at the time of entry into the United States and the F-1 student is responsible for

"retain[ing] for safekeeping the initial form I-20 or successor form bearing the admission number and any subsequent form I-20 issued to them." 8 C.F.R. § 214.2(f)(1)(ii), (f)(2).

An F-1 student may remain in the United States for the duration of their studies so long as they continue to meet the requirements outlined in the regulations. 8 C.F.R. § 214.2(f)(5)(i) ("Duration of status is defined as the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students"). If a student "fails to maintain a full course of study without the approval of a [Designated School Official ("DSO")] or otherwise fails to maintain status," they must depart the United States immediately or seek reinstatement.[2] 8 C.F.R. § 214.2(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1).

A nonimmigrant student's legal status is governed by the F-1 visa system, which is administered by ICE through its Student and Exchange Visitor Program (SEVP). *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019). In turn, SEVIS is an SEVP-managed internet system that tracks and maintains information on nonimmigrant students. *See* 8 C.F.R. § 214.3(a)(l). To implement the F-1 visa program, SEVP certifies participating educational institutions, allowing those institutions to issue a Form I-20 in the student's name in

---

[2] A student may seek reinstatement by submitting an I-539, Application to Extend/Change Nonimmigrant status to United States Citizenship & Immigration Service ("USCIS") and a Form I-20 or a successor form indicating a DSO's recommendation for reinstatement. 8 C.F.R. § 214.2(f)(16)(i). Pursuant to the regulations, a district director "may consider" reinstatement if: (1) student has not been out of status for more than five months at the time of filing or the failure to seek reinstatement within five months was due to exceptional circumstances; (2) student "[d]oes not have a record of repeated or willful violations of DHS regulations; (3) student is pursuing or intending to pursue a full course of study at the school that issued the Form I-20 or successor form; (4) student has not engaged in unauthorized unemployment; (5) student is not deportable pursuant to § 237 of the INA; and (6) USCIS is satisfied the violation of status was beyond the student's control, or the "violation relates to a reduction in the student's course load that would have been within a DSO's power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student." 8 C.F.R. § 214.2(f)(16)(i)(A)–(F). USCIS's decision to deny reinstatement is unreviewable. *See* 8 C.F.R. § 214.2(f)(16)(ii).

SEVIS.[3]  SEVP regulations also govern the termination of F-1 student status in SEVIS.  8 C.F.R. § 214.2(f).  A student may fall out of F-1 status by: (1) failing to meet the regulatory requirements for F-1 student status or (2) via an agency related termination of status.  8 C.F.R. §§ 214.1(d), 214.2(f)(5)(iv).[4]  DHS can terminate an F-1 student's status in three ways: 1) by revoking a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or §1182(d)(4); 2) through the introduction of a private bill in Congress to confer permanent resident status; or 3) if DHS publishes a notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.  8 C.F.R. § 214.1(d).  DHS's ability to terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d).  *See Jie Fang*, 935 F.3d at 185 n.100.

**B. Defendants Terminate Plaintiff's Record in SEVIS**

Plaintiff is a Chinese national who entered the United States lawfully on an F-1 visa on May 22, 2021.  (Dkt. No. 7 at 3.)  Plaintiff has been continuously enrolled in his doctoral program.  (*Id.*)  Although Plaintiff's F-1 visa expired on May 9, 2022, the most recent Form I-20 issued on his behalf by the University of Washington was valid through December 12, 2025.  (*Id.*; Dkt. No. 1 at 5.)

In September 2023, Plaintiff was arrested and charged with, but not convicted of, driving under the influence (DUI) under Washington Revised Code § 46.61.502,a misdemeanor.  (Dkt. Nos. 1 at 5; 7 at 4.)  Plaintiff's criminal defense lawyer, Robert J. Ault, submitted a declaration attesting that Doe was charged under § 46.61.502 in October 2023 and entered a plea of Not Guilty at an arraignment that month.  (Dkt. No. 5 at 1.)  Further, "[a]s of today's date [April 10,

---

[3] *Study in the States*, Dep't of Homeland Sec. (last accessed Apr. 16, 2025), https://studyinthestates.dhs.gov/site/about-sevis; 8 C.F.R. § 214.2(f)(1)(i)–(iii).

[4] The regulations detail circumstances under which the visa holder may be considered to fail to maintain status, including unauthorized employment, willful failure to provide truthful information to DHS, or certain qualifying criminal convictions.  8 C.F.R § 214.1(e)–(g).

2025], [Doe's] case is still pending and he has not been convicted of any offense." (*Id.*) The maximum penalty for a misdemeanor DUI under that section is 364 days imprisonment, plus fines. *See* Wash. Rev. Code §§ 46.61.502(5); 46.61.5055. Under DHS regulations, "[a] nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status." 8 C.F.R. § 214.1(g).

Plaintiff learned via email from the University of Washington that his "SEVIS record and I-20 were marked as 'terminated'" by SEVP as of April 7, 2025. (Dkt. No. 7-2 at 1.) The only information provided regarding the termination was that it related to: "Otherwise failing to maintain status - individual identified in criminal records check and/or has had their VISA revoked." (*Id.*) He has not received any notice or contact from Defendants directly regarding his termination, nor any opportunity to contest the determination. (*See* Dkt. No. 7 at 3.) Plaintiff fears that termination of his SEVIS record will cause him reputational damage, because "[m]y academic peers, colleagues, and future employers will inevitably suspect me of having committed a crime of violence, well beyond my pending misdemeanor DUI charge." (*Id.* at 4.)

Plaintiff initiated this action on April 9, 2025, arguing that "[t]his arbitrary termination abruptly stripped Doe of his lawful immigration status, endangers his ability to complete his doctoral program at the University of Washington, and subjects him to immediate risk of detention and removal." (Dkt. No. 1 at 2.) He alleges three causes of action under the APA: arbitrary and capricious agency action, action in excess of statutory and regulatory authority, and action without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A), 706(2)(C), 706(2)(D). (Dkt. No. 1 at 6–7.) He further alleges a Fifth Amendment Procedural Due Process violation. (*Id.* at 8.) He seeks a TRO and subsequently a Preliminary Injunction (PI) "requiring

Defendants to restore and maintain Plaintiff's SEVIS record in active status pending final resolution of this case" and "enjoining Defendants DHS and ICE from initiating removal proceedings, detaining Plaintiff, or otherwise interfering with Plaintiff's lawful presence and ability to pursue his academic program, solely based on the claims raised in this Complaint." (*Id.* at 9.)  He seeks declaratory relief, vacatur of the termination of the SEVIS record, damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and costs.  (*Id.*)

### III      LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO.  "The legal standard for a TRO is substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).  To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Generally, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.  The moving party has the burden of persuasion.  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker showing on the merits, combined with a stronger demonstration on the balancing test, might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are

met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011).

Under this "sliding scale" method, the movant need only raise "serious questions going to the

merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132;

*see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

## IV    JURISDICTION

"Section 704 of the APA provides for judicial review of '[a]gency action made

reviewable by statute and final agency action for which there is no other adequate remedy in a

court.'" *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017)

(quoting 5 U.S.C. § 704). As no statute authorizes judicial review over the termination of SEVIS

records, the singular issue here is whether Defendants' termination of Plaintiff's SEVIS record

was "final" agency action for which there was no other "adequate remedy." 5 U.S.C. § 704. *C.f.*

*Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010). For

agency action to be deemed final, it must "mark the consummation of the agency's decision-

making process" and "the action must be one by which rights or obligations have been

determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–

178 (1997) (internal quotation marks omitted).

As an initial matter, it is apparent that the termination of Plaintiff's SEVIS record is an

agency action that implicates "rights and obligations" and may well result in "legal

consequences." *Id.*; *see also Jie Fang*, 935 F.3d at 180. Next, the action appears to constitute

the consummation of the agency's decimating process for two reasons. First, "there is no

statutory or regulatory requirement that a student seek reinstatement" of student status in SEVIS,

and even if a student attempts to pursue the administrative procedure for SEVIS reinstatement,

there is no "mechanism to review the propriety" of the original termination. *Jie Fang*, 935 F.3d

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 7

at 182; *see* 8 C.F.R § 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS' decision. If USCIS does not reinstate the student, the student may not appeal the decision.").  Second, since neither immigration judges nor the BIA have the authority to review SEVIS termination or a USCIS denial of reinstatement, there is no proceeding in which a student can contest the agency action at issue here.  *Jie Fang*, 935 F.3d at 185.; *Ghorbani v. I.N.S.*, 686 F.2d 784, 791 (9th Cir.1982); *Tooloee v. I.N.S.*, 722 F.2d 1434, 1438–1439 (9th Cir. 1983). Thus, the termination of Plaintiff's F-1 student status in SEVIS was not "of a merely tentative or interlocutory nature," but rather a unilateral determination with immediate legal consequences over which Plaintiff has no ability to seek administrative review.  *Bennett*, 520 U.S. at 177–178. Accordingly, the Court finds it has jurisdiction to proceed.  *C.f. Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order").

## V      ANALYSIS

### A.  Plaintiff is Likely to Succeed in the Argument that Termination of His SEVIS Record was Unlawful

Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Here, based on the limited record before the Court, Plaintiff has demonstrated a likelihood of success on two independent grounds under § 706(2)(A): that Defendants' termination of his SEVIS record was not in accordance with law, and that it was arbitrary and capricious.[5]

### 1.  Not In Accordance with Law

---

[5] Because the Court finds that Plaintiff has established likelihood of success on his APA claim, the Court does not reach his Fifth Amendment Due Process claim at this time.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 8

i. *Agencies Must Follow Their Own Regulations*

It is contrary to law for an agency to disregard its own regulations and policies. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986) (an agency is "bound by its own regulations so long as they remain in force."). As the District of Columbia Circuit has explained:

> In a series of decisions, the Supreme Court has entertained challenges to agency actions that failed to conform to agency regulations. In *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), the Court held that an agency is bound to the standards by which it professes its action to be judged. In *Accardi,* a case involving a habeas challenge to the denial of suspension of deportation, the Court objected to the agency's 'alleged failure to exercise its own discretion contrary to existing valid regulations.'

*Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 246 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, (1954)) (parallel citation omitted). Moreover, "'a court's duty to enforce an agency regulation, while most evident when compliance with the regulation is mandated by the Constitution or federal law,' embraces as well agency regulations that are not so required." *Id.* at 247 (alterations omitted) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)).

The Ninth Circuit has affirmed that "[p]ursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *see also United States v. Nixon*, 418 U.S. 683, 696 (1974)*; Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co*., 284 U.S. 370, 389 (1932). Courts have framed the obligation for an agency to follow its own regulations as deriving from § 706(2)(A) or other APA provisions. *See, e.g., Suncor Energy (U.S.A.), Inc. v. United States Env't Prot. Agency*, 50 F.4th 1339, 1352 (10th Cir. 2022) (holding that EPA action violated § 706(2)(A) because it ignored the agency's regulatory definition of "facility"); *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 983–984 (C.D. Cal. 2024) (ICE policy of warrantless "knock

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 9

and talk" violated agency's regulations and thus § 706(2)(A)).  Agencies must also adhere to internal procedures designed to provide protections to individuals.  *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *see also Lopez*, 318 F.3d at 247; *Beshir v. Holder*, 853 F.Supp.2d 1, 11 (D.D.C. 2011) (DHS Secretary's discretion to issue procedural rule pausing processing of adjustment of status applications limited by regulation requiring adjudication in certain timeframe).

Accordingly, Defendants are bound to follow their own rules and regulations governing the proper termination of an F-1 student's record in SEVIS.

ii.    *Defendants Failed to Follow Their Own Regulations and Procedures*

On April 17, 2025, the Court held a hearing on the pending TRO motion, during which counsel for Defendants confirmed that Plaintiff's DUI arrest was the sole reason for his SEVIS record termination.  That confirmed action was likely unlawful.  As discussed *supra*, a student's record in the SEVIS system can be terminated either because the student fails to maintain status, or when the agency initiates a termination of status.  8 CFR §§ 214.1(d); 214.2(f).  In this instance, Plaintiff states that he maintains full-time enrollment in his doctoral program at the University of Washington (Dkt. No. 1 at 5), and Defendants have introduced no evidence to the contrary.  Agency-initiated termination is governed by 8 CFR § 214.1(d), which enumerates circumstances that result in termination:

> Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

Defendants do not argue that any of these criteria are present here.

Additionally, Plaintiff's DUI arrest is not a qualifying crime that could lawfully result in SEVIS termination.  DHS's regulations specifically explain what criminal activity results in failure to maintain status for a nonimmigrant:

> A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act.

8 CFR § 214.1(g).  Plaintiff's DUI arrest fails to meet these criteria in at least two ways.  One, Plaintiff has not been convicted of any crime, he has only an arrest and charge.  (Dkt. No. 1 at 5.)  Two, the maximum penalty for a misdemeanor DUI in Washington is 364 days, which is just short of a year imprisonment.  *See* Wash. Rev. Code §§ 46.61.502(5); 46.61.5055.  Additionally, the DUI likely does not qualify as a "crime of violence."  *See Leocal v. Ashcroft*, 543 U.S. 1, 11–13 (2004) (holding that a Florida DUI was not a "crime of violence" under 18 USC § 16, because it does not involve a "substantial risk" of "using physical force against another person.").  To the extent that Defendants terminated Plaintiff's SEVIS record merely because his name appeared in a criminal records check, that is inconsistent with their own regulation, which renders the decision invalid under § 706(2)(A).  *See supra*.

During the April 17 hearing, counsel for Defendants stated that the Government was not relying on 8 CFR § 214.1(d) as granting authority for the termination but rather invoked 8 U.S.C. § 1372.  That statute confers authority to *create* the SEVIS system but says nothing about termination of a student's record in the system.  Contrastingly, 8 C.F.R. § 214.1(d) enumerates the sole grounds under which DHS may initiate the termination of F-1 student's record in SEVIS.  *See Jie Fang*, 935 F.3d at 185 n.100.  When one section of a statutory scheme passes

1  specifically upon the question at hand and the other section is silent, Courts understand the

2  specific to govern the general.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566

3  U.S. 639, 645 (2012). Here, 8 CFR § 214.1(d) speaks specifically to when a SEVIS record may

4  be terminated, 8 U.S.C. § 1372 does not.[6]

5          Accordingly, termination of the SEVIS record because of the DUI arrest is inconsistent

6  with agency regulations, which renders the decision invalid.  *Nat'l Ass'n of Home Builders*, 340

7  F.3d at 852; *Wallace*, 802 F.2d at 1552 n.8.  Because Defendants' termination of Plaintiff's

8  SEVIS record was—based on the limited information currently available—not authorized by and

9  violated their own regulations, Plaintiff is likely to succeed in the argument that the agency

10  action is not in accordance with law under § 706(2)(A).

          2. <u>Arbitrary and Capricious for Lack of Explanation</u>

11

12          Agency action is considered arbitrary and capricious if "the agency has relied on factors

13  which Congress has not intended it to consider, entirely failed to consider an important aspect of

14  the problem, offered an explanation for its decision that runs counter to the evidence before the

15  agency, or is so implausible that it could not be ascribed to a difference in view or the product of

16  agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

17  463 U.S. 29, 43 (1983).  As the Ninth Circuit has explained, the "critical factor in *Motor Vehicle*

18  was that the agency 'submitted no reasons at all' for its decision."  *McFarland v. Kempthorne*,

19  545 F.3d 1106, 1113 (9th Cir. 2008) (citing *Motor Vehicle*, 463 U.S. at 50).  The *Motor Vehicle*

20  standard has been applied to review individualized agency decisions as well as agency rules.

21

22

23  [6] When asked during the hearing if there is a specific provision in 8 U.S.C. § 1372 that provides authority for the termination of a student's SEVIS record, Defendants were unable to provide one.

24

1    *See, e.g.*, *Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir.

2    2021); *McNeely v. United States Dep't of Lab.*, 720 F. App'x 825, 827 (9th Cir. 2017).

3          In this instance, Defendant has failed to meet "the general administrative-law requirement

4    that an agency 'articulate a satisfactory explanation for its action.'" *Hernandez v. Garland*, 52

5    F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43). Indeed, Defendant has

6    failed to suggest any lawful grounds as to why its action here is lawful under the APA. *Motor*

7    *Vehicle*, 463 U.S. at 50. Defendants' submission that they "do not concede that Doe has

8    demonstrated a likelihood of success on the merits on his APA claim" but cannot defend it

9    because "DHS and from the Department of State, and Defendants have not completed

10   [factfinding] efforts in time to respond to Doe's motion" is inadequate under governing law.

11   (Dkt. No. 12 at 9.) *C.f. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1,

12   30 (2020).[7] The Court declines to "deny Doe's motion even in the absence of this factual

13   information related to the APA claim." (Dkt. No. 12 at 9.) Indeed, Defendant's failure to

14   provide a single plausibly lawful explanation for its action—an explanation reasonably grounded

15   somewhere in the statutory scheme—is the exact circumstance contemplated by the arbitrary and

16   capricious standard. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir.

17   2015) (en banc) ("[*Motor Vehicle*] teaches that even when reversing a policy after an election, an

18   agency may not simply [change courses] without a reasoned explanation.").

19          Accordingly, Plaintiff is also likely to prevail on the claim that the agency action is

20   arbitrary and capricious for failing to "articulate a satisfactory explanation for its action

21

22   ────────────────

     [7] An agency need not consider every conceivable alternative, but when it is "not writing on a

23   blank slate" it must consider the impact of its actions on vested reliance interests, especially in
     the immigration context, where individuals make "time-bounded commitment[s], to allow them

24   to, say, graduate from their course of study." *Regents*, 591 U.S. at 32–33.

including a rational connection between the facts found and the choice made." *Motor Vehicle*,
463 U.S. at 43.

**B. Remaining TRO Factors Favor Plaintiff**

As discussed *supra*, Plaintiff has established likelihood of success on the merits of his
APA claim.  The other injunctive relief factors favor Plaintiff as well.  He faces multiple forms
of irreparable harm as a result of termination of his SEVIS record, and the balance of equities
weigh in his favor.

1.  Plaintiff Faces Irreparable Harm

Plaintiff faces several forms of irreparable harm as a result of the termination of his
SEVIS record.  First, he cannot carry out research on his grant-funded doctoral program without
an active SEVIS record.  (Dkt. No. 3 at 5.)  Accordingly, his research is stalled.  Ultimately, if he
is unable to complete the research and his doctoral program, he will lose four years' worth of
full-time work, face diminished career prospects, and suffer reputational harm.  (*Id.* at 12.)
Second, while Defendants have not yet placed Plaintiff in removal proceedings, he faces the
prospect of detention, removal proceedings, and ultimately deportation because termination of
his SEVIS record indicates that he is not maintaining status in his program.  *See* 8 U.S.C.
§ 1227(a)(1)(B) (a person who is not lawfully present is removable).  And so long as Plaintiff is
out of status, he may be accruing unlawful presence time, which acts as a future bar to admission
and reentry to the United States.  *See* 8 U.S.C. § 1182(a)(9)(B).  Plaintiff's fears are not
speculative, as DHS's own public-facing guidance states that a person whose SEVIS record is
terminated faces the following consequences:

- Student loses all on- and/or off-campus employment authorization.

- Student cannot re-enter the United States on the terminated SEVIS record.

Case 2:25-cv-00633-DGE   Document 16-2   Filed 04/07/25   Page 101 of 122
Case 2:25-cv-00633-DGE   Document 17-2   Filed 04/14/25   Page 51 of 183
Page ID #:276

- Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.

- Any associated F-2 or M-2 dependent records are terminated. [8]

Turning now to examine each irreparable harm in more detail, the Court begins by considering the matter of employment authorization.  Multiple courts have held that loss of or delay in obtaining employment authorization is an irreparable harm.  *See Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968 (D. Md. 2020), *order dissolved sub nom. Casa de Maryland, Inc. v. Mayorkas*, No. 8:20-CV-2118-PX, 2023 WL 3547497 (D. Md. May 18, 2023) (a delay in an asylum seeker obtaining work authorization is an irreparable harm because "every additional day these individuals wait will visit[] on them crippling dependence on the charity and good will of others"); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018), *vacated and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (finding that if the DACA program were terminated, resulting loss of work authorization for DACA recipients would be an irreparable harm).  Under these unique circumstances where Plaintiff's continued work and lawful immigration status are interlinked, the prospect of Plaintiff losing his grant-funded work as a doctoral candidate is likewise irreparable.  *See e.g., Karakozova v. Univ. of Pittsburgh*, No. 09CV0458, 2009 WL 1652469, at *4 (W.D. Pa. June 11, 2009) (holding that plaintiff, a research assistant who alleged her position was terminated on a discriminatory basis, could show irreparable harm from loss of position because she could lose her H-1B visa and have to leave the country voluntarily or by removal, with no certainty of alternative relief).

---

[8] *See* Dep't Homeland Security*, SEVIS Help Hub: Terminate A Student* (Nov. 7, 2024.) https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

1      Likewise, courts have held that interruption of educational programs or progress can be

2  an irreparable harm.  For instance, in *Tully v. Orr*, the court held that disenrolling a cadet from

3  the United States Air Force Academy "just prior to his examinations and graduation" would be

4  an irreparable harm where the cadet would face the prospect of having to repeat courses, "delay[]

5  in both his graduation and commissioning," and a "deleterious effect" on his future in the force.

6  608 F. Supp. 1222, 1225, 1226 (E.D.N.Y. 1985).  Some courts have specifically held that loss of

7  opportunity to participate in post-secondary education programs is an irreparable harm.  *See*

8  *Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, No. 24 C 1698, 2025 WL 96482, at *8

9  (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency

10  is an irreparable harm, though denying injunction on other grounds); *Lujan v. United States*

11  *Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even

12  one point on Fulbright scholarship application grading would be an irreparable harm, due to loss

13  of opportunity to obtain scholarship).  Here, as discussed, Plaintiff is currently unable to continue

14  in his academic work,[9] and should that condition persist, he faces loss of grants and an inability

15  to complete his degree—which is especially harmful where Plaintiff is just months away from

16  graduation.

17      Next, the Court considers the threat of removal.  Removal is not by itself an irreparable

18  harm, in part because removal is (in at least some instances) reversible.  *See Nken*, 556 U.S. at

19  430.  However, in this case, the ordinary harms of removal would compound the other harms

20  Plaintiff faces by effectively eliminating his ability to complete his degree program, causing him

21

22  _____

[9] At the hearing, Plaintiff's counsel identified Plaintiff's grant is federally funded, which
presumably means Plaintiff must maintain lawful status and that termination of Plaintiff's work

23  authorization prevents Plaintiff from engaging in the grant funded work.  The record though is
not complete on this issue.  Nonetheless, the Court concludes irreparable harm has been

24  established based on the other harms identified.

economic and reputational loss wherever he ultimately resides.  Even if a removal order could be reversed and Plaintiff ultimately repatriated to the United States if he were wrongfully removed, it is unclear if Plaintiff's educational loss could be reversed (e.g., needing to reapply for admission, repeating incomplete coursework, and/or competing for funding to replace lost grants).  *See e.g.*, *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (in case challenging removal conditions during pandemic, finding that deportation was an irreparable harm because plaintiffs could not challenge deportation conditions and get effective relief after removal).  As counsel for Plaintiff explained at the April 17 hearing, doctoral programs typically involve supervision of the doctoral candidate by an adviser with specialized knowledge and reputation in the field, so the inability to complete a doctoral program due to status termination and removal cannot necessarily be remedied with re-starting another program at a different time and place.

Finally, as Plaintiff points out, he may also be accruing unlawful presence as a result of the SEVIS revocation, which other courts have held is irreparable.  In *Guilford College v. McAleenan*, the court set aside a USCIS policy memorandum purporting to redefine how accrual of unlawful presence is calculated for students deemed to be out-of-status on F or J visas.  389 F. Supp. 3d 377, 384 (M.D.N.C. 2019).  With respect to injunctive relief, the Court found that unlawful or unknowing accrual of unlawful presence would be irreparable because it could expose plaintiffs to three- or ten-year reentry bars, which are not judicially reviewable.  *Id.* at 394.  Other courts, including in this district, are in accord.  *See Garcia v. United States Customs & Border Prot.*, No. CV215468DMGJEMX, 2021 WL 4815945, at *4 (C.D. Cal. Aug. 20, 2021) (granting motion for preliminary injunction to prevent accrual of unlawful presence, and rejecting arguments that discretionary waiver or possibility of voluntary removal would render the harm not irreparable); *Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 WL 3928016, at

*2 (W.D. Wash. Aug. 21, 2008) ("The Court finds that halting the accrual of unlawful presence time and/or unauthorized employment for all class members during the pendency of this litigation will continue the *status quo ante litem,* will prevent irreparable harm to class members and their families, and will not cause defendants any undue hardship.").  During the April 17 hearing, Defendants could not confirm or deny if they consider Plaintiff to currently be out of status.  This places Plaintiff in a Catch-22: the University has advised him not to engage in any employment for risk of making him ineligible for reinstatement (*see* Dkt. No. 7-2 at 2), but Defendants suggest his failure to continue his grant-funded research may make him ineligible going forward.

      2.  <u>There is a Public Interest in Enforcement of Valid Regulations, and Balance of Equities Favor Plaintiff</u>

      "When the government is a party, the balance of equities and the public interest factors merge."  *Nken*, 556 U.S. at 435.  The public has a vested interest in a federal government that follows its own regulations.  As one court framed it: "the public has a strong interest in having a [government] that conducts itself fairly and according to its stated regulations and policies."  *Cooney v. Dalton*, 877 F. Supp. 508, 515 (D. Haw. 1995); *see also Eight N. Indian Pueblos Council, Inc. v. Kempthorne*, No. CV 06-745 WJ/ACT, 2006 WL 8443876, *5 (D.N.M. Sept. 15, 2006) ("It is in the public interest that federal agencies comply with their own policies and with federal statutes.").  Here, Defendants assert that the public interest factors tip in their favor because the "public interest lies in the Executive's ability to enforce U.S. immigration laws." (Dkt. No. 12 at 9.)  However, Defendants have provided *no indication* that they complied with the relevant statutory scheme in "enforcing immigration laws" in this case.  (Dkt. No. 12 at 9.) Accordingly, this is a set of circumstances where the government and its decision-making processes will be best served by judicial review of a decision—and maintenance of the status quo

during that review—that appears both unlawful and likely to cause Plaintiff irreparable harm.

Moreover, Defendants have not put forth evidence of how a TRO would cause them injury or

harm.  For these reasons, the Court determines that the balance of the equities and public interest

factors tip sharply in Plaintiff's favor.

Finally, the Court addresses Defendant's argument that Plaintiff is "not only seeking to

preserve the status quo on a temporary basis" but is rather requesting "an order compelling the

defendants to change the status quo" because "he seeks emergency restoration of a record that

has already been marked as terminated." (Dkt. No. 12 at 6.)  Courts have long held that the

"status quo ante litem" for the purposes of considering a temporary restraining order or

preliminary injunction "refers not simply to any situation before the filing of a lawsuit, but

instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com,*

*Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd.*

*v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963).  An interpretation of "status quo as the moment

before filing a lawsuit but after alleged misconduct began "would lead to absurd situations, in

which plaintiffs could never bring suit once infringing conduct had begun." *Id.*

This standard has been applied to government action as well as private disputes.  *See,*

*e.g., Doe #1 v. Trump*, 957 F.3d 1050, 1068–1069 (9th Cir. 2020); *S.A. v. Trump*, No. 18-CV-

03539-LB, 2019 WL 990680, *13 (N.D. Cal. Mar. 1, 2019).  For example, in *S.A.*, the court

concluded that the status quo ante litem was the point before DHS stopped processing

conditionally approved beneficiaries under a dual refugee/parole program.  *See S.A.,* 2019 WL

990680, at *13.  Accordingly, the court vacated DHS's decision to mass-rescind conditional

approvals for 2,714 beneficiaries pending a final determination on the merits because that

maintained the status quo ante litem.  *Id*. at *17.  Similarly, in this case, the "legally relevant

relationship between the parties before the controversy arose," describes the state of affairs *prior*

to the termination of Plaintiff's SEVIS record.  *Ariz. Dream Act Coalition v. Brewer*, 757 F. 3d

1053, 1060–1061 (9th Cir. 2014).  Accordingly, Defendant's argument that "the relief Doe seeks

is not a prohibitory injunction to maintain the status quo" is frustrated by decades of Ninth

Circuit caselaw.  (Dkt. No. 12 at 2.)

Finally, Defendant advances a confused argument that posits Plaintiff seeks "a final

judgement on the merits" because a TRO is part of the final relief outlined in his complaint.

(Dkt. No. 12 at 2.)  Defendants are correct that "it is generally inappropriate for a federal court at

the preliminary-injunction stage to give a final judgment on the merits."  *University of Texas v.*

*Camenisch*, 451 U.S. 390, 395 (1981).  But what the *Camenisch* court was communicating was

that findings of fact and conclusions of law made by a court in a preliminary injunction or TRO

posture are preliminary and do not bind the court at the trial on the merits.  *Id*. at 395–398.  Thus,

it is not appropriate to enter a *final judgement* at a TRO stage.  *Id*.  That is not what the Court is

doing here.  As the *S.A*. court emphasized, "nothing in *Camenisch* holds that the scope of a

preliminary injunction cannot overlap with the relief requested for an eventual final judgment."

S.*A*, 2019 WL 990680, at *16 n.59.  Here, as in *S.A*., the order makes no final findings on the

merits and merely returns the parties to the status quo ante litem.

## C.  The Court Will Not Require a Bond

Under Federal Rule of Civil Procedure 65(c), in granting a PI or TRO, the court must

require a movant to pay security "in an amount that the court considers proper to pay the costs

and damages sustained by any party found to have been wrongfully enjoined or restrained."  The

Ninth Circuit has held that "[d]espite the seemingly mandatory language, Rule 65(c) invests the

district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*,

572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (cleaned up). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen,* 320 F.3d at 919). Here, Defendants request that the Court impose a bond "in an amount the Court determines to be appropriate." (Dkt. No. 12 at 10.) Defendants do not account for any costs they allege they will face if the TRO is issued erroneously, and the Court perceives none. Here, Defendants will face no cost from Plaintiff continuing his studies as he did before his SEVIS was terminated, and negligible or zero cost from restoring his SEVIS status to active. Plaintiff's only criminal history is the misdemeanor DUI for which he has been charged but not convicted, and he poses little if any risk to the public. The Court therefore exercises its discretion to waive the bond requirement.

## VI    CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion for a Temporary Restraining Order (Dkt. No. 3) is GRANTED. Defendants are ENJOINED for a period of fourteen days from the date of this order, as follows:

1) Defendants shall restore Plaintiff's F-1 student record and I-20 in the Student and Exchange Visitor Information System (SEVIS);

2) Defendants shall set aside the April 7, 2025 F-1 student record and I-20 termination as to Plaintiff;

3) Defendants shall not terminate Plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f).

4) Defendants are prohibited from detaining or transferring Plaintiff out of this Court's jurisdiction, or ordering the detention or transfer of Plaintiff out of this

1   Court's jurisdiction, as a result of the termination of his F-1 student record or I-

2   20 in SEVIS on April 7, 2025; and

3   5) Defendants are prohibited from initiating removal proceedings against or

4   deporting Plaintiff on the basis of the April 7, 2025 termination of his F-1 student

5   record or I-20 in SEVIS.

6

7   It is furthered ORDERED that the security requirement of Rule 65(c) is waived.

8

9   Dated this 17th day of April, 2025.



David G. Estudillo
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JANE DOE 1, et al.,

     Plaintiffs,

v.

PAM BONDI, in her official capacity
as Attorney General of the United
States, et al.,

     Defendants.

Civil Action No.
1:25-cv-01998-VMC

## ORDER

This matter is before the Court on Plaintiffs' Amended Motion for a
Temporary Restraining Order (TRO) against Defendants Pam Bondi, in her official
capacity as Attorney General of the United States, Kristi Noem, in her official
capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd
Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs
Enforcement ("ICE"), (collectively, "Defendants"). (Doc. 19). Plaintiffs, who are
proceeding pseudonymously, request that this Court enter a TRO to: (1) enjoin
Defendants from terminating their F-1 student status under the Student and
Exchange Visitor (SEVIS) system, and (2) require Defendants to set aside their
SEVIS Registration termination determination, restore Plaintiffs F-1 nonimmigrant
student status, and restore Plaintiffs' Optional Practical Training (OPT) and

Curricular Practical Training (CPT) work authorizations. Upon careful consideration of the parties' submissions, and with the benefit of a hearing, the Court grants Plaintiffs' motion.

## I.      Background

Congress has authorized nonimmigrant F-1 visas for nonimmigrant students, such as Plaintiffs, who enroll in Government-approved academic institutions and engage in a full course of study. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with an F-1 visa, an international student is granted permission to remain in the United States for the duration of status (noted as D/S on the relevant document) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. 8 C.F.R. §§ 214.2(f)(6). Students who complete that course of study are entitled to apply for OPT, which if approved, enables them to remain for an additional year, or in cases of STEM degrees up to three years, working in their field of study.[1] 8 C.F.R. § 214.2(f)(10).

Congress required that DHS "develop and conduct a program to collect from approved institutions of higher education . . . in the United States [certain

---

[1] Additionally, some degree programs also allow students to work in their field of study during their course of study under CPT.

2

information] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). As a result, the Department of Homeland Security's Student and Exchange Visitor Program (SEVP) created an online database known as SEVIS. SEVIS is a centralized database maintained by the SEVP and it is used to manage information on nonimmigrant students and exchange visitors to track their compliance with the terms of their status. Under 8 C.F.R. § 214.2(g)(2), Designated School Officials (DSOs) must report through SEVIS to the SEVP when a student fails to maintain status as described in the Code of Federal Regulations. SEVIS termination is governed by SEVP policies and regulations, which indicate that termination of SEVIS registration can be done in one of a few ways. 8 C.F.R. § 214.1(d). Students can fail to maintain status in violation of their status requirements outlined in 8 C.F.R. § 214.2(f). Additionally, 8 C.F.R. § 214.2(e)–(g) delineates the specific circumstances under which certain conduct by any nonimmigrant visa holder "constitutes a failure to maintain status," such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year.

A termination of status initiated by DHS is governed by 8 C.F.R. § 214.1(d), and permits DHS to terminate status when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent

3

residence is introduced in Congress; or (3) DHS published a notification in the Federal register identifying national security, diplomatic, or public safety reasons for termination.

Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status pursuant to the relevant regulations and does not provide a basis to terminate F-1 student status under the SEVIS registration system.[2] Instead, if the visa is revoked, the student is permitted to continue to pursue her course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 — VISA REVOCATION (Sept. 12, 2016). Put differently, F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country.

Here, Plaintiffs are all F-1 student visa holders actively enrolled in colleges and universities throughout the United States, or who have obtained lawful OPT to resume working under the terms of their lawful student status. (Doc. 15 ¶¶ 6,

---

[2] *See* ICE Policy Guidance 1004-04 — Visa Revocations (June 7, 2010) ("[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

9–27). Between April 1, 2025 and April 14, 2025, Plaintiffs received notification from their schools' DSOs informing them that SEVP terminated their SEVIS record and marked Plaintiffs as either "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" or, "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under 8 U.S.C. § 1227(a)(1)(C), for failure to maintain status, and 8 U.S.C. § 1227(a)(4)(C)(i), for foreign policy grounds. (Doc. 1 ¶ 2). However, Plaintiffs do not have any criminal history that would warrant their SEVIS records being terminated. Nonetheless, many of the emails from the schools direct Plaintiffs to leave the United States with little notice to prepare to do so.[3]

In some, but not all of these cases, the State Department has revoked the student's visa. But as the Court previously explained, the revocation of a visa does not necessarily impact the person's lawful presence in the country. As such, Plaintiffs allege that it is the SEVIS registration termination that has rendered them vulnerable to devastating immigration outcomes such as detention and deportation, as well as irreparable harm.

On April 11, 2025, seventeen Plaintiffs filed this action. (Doc. 1). Four days later, Plaintiffs amended their Complaint to add 116 Plaintiffs, bringing the total

---

[3] For example, in the email directed to Plaintiff John Doe 49, he was informed that he must depart the United States within 15 days. (Doc. 77 at 32).

5

number of Plaintiffs to 133. (Doc. 11). In their four-count Complaint, Plaintiffs seek

declaratory and injunctive relief that Defendants violated the Administrative

Procedure Act ("APA") when they terminated their records on improper grounds,

without prior notice, without an articulated basis for their decision, and without

providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 180-182). Plaintiffs contend

that Defendants acted in an arbitrary and capricious manner, inconsistent with the

intent and plain language of the Immigration & Nationality Act and its associated

regulations, as well as in violation of the Due Process Clause of the Fifth

Amendment to the United States Constitution. (*Id.* ¶¶ 183-195). The original 17

Plaintiffs moved for a TRO to temporarily enjoin Defendants from terminating

their student status in the SEVIS system and to require Defendants to set aside

their termination decisions. (Doc. 4).

On April 14, 2025, the Court scheduled an in-person hearing for Thursday,

April 17, 2025 at 9:30 a.m. to address whether to issue a temporary restraining

order. (*See* Doc. 9). The Court also ordered that Plaintiffs provide notice to

Defendants, as well as supplemental briefing addressing the Court's jurisdiction

over nonresident Plaintiffs.[4] (*Id.*). Further, Defendants were given until April 16,

---

[4] Defendants oppose the Court's jurisdiction over the nonresident Plaintiffs and
were ordered to file their response in opposition by midnight on April 18, 2025.
Nevertheless, given the emergency nature of a TRO, as well as its limited duration,
the Court finds it more prudent to issue relief as to all Plaintiffs. If Defendants'

2025 at 5:00 p.m. to respond to Plaintiffs' request for a temporary restraining order. (*Id.*). At the end of the hearing, the Court ordered Plaintiffs to amend their TRO to include all of the Plaintiffs and the Parties agreed that an additional hearing on the amended TRO was unnecessary. Plaintiffs have amended their TRO and therefore this matter is ripe for consideration as to all Plaintiffs. (Doc. 19).

## II.    Discussion

The standard for obtaining a TRO is identical to that of obtaining a preliminary injunction. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010)). To obtain a TRO or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

---

response convinces the Court that it does not have jurisdiction over certain Plaintiffs, the Court will dissolve the TRO as to them.

A.      **Plaintiffs Have Met the Factors for Issuance of a TRO**

1.  **Plaintiffs' Likelihood of Success on the Merits**

The Eleventh Circuit instructs district courts to consider the question of whether a plaintiff has a substantial likelihood of success on the merits as "generally the most important" factor in the analysis. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* Plaintiffs claim that Defendants' termination of their F-1 student status under the SEVIS system was unlawful for multiple reasons. First, it constitutes agency action not in accordance with law and in excess of statutory authority under the Administrative Procedure Act (Count 1); second, it violates the Due Process Clause of the Fifth Amendment to the Constitution (Count 2); third, it violates the APA by infringing upon constitutional rights protected by the Fifth Amendment (Count 3); and fourth, it is arbitrary and capricious under administrative law (Count 4). (*See* Doc. 19-1 at 67).

The Court finds that based on the allegations in the Amended Complaint and the specific facts in the Plaintiffs' 133 declarations, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim in Counts 1 and 4: that Defendants' termination of the SEVIS registration exceeds the bounds of statutory and regulatory authority and is therefore unlawful under 5

8

U.S.C. § 706(2)(A), (C), and (D). Termination of the SEVIS registration constitutes a final decision reviewable under the APA.[5] *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").[6] And, pursuant to the record currently before the Court at this time, the Court concludes that Plaintiffs are likely to show that DHS's authority to terminate F-1 student status is narrowly circumscribed by regulation. *See* 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 (explaining that the ability to terminate F-1 status is limited by § 214.1(d) which states: "Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."). Since none of those conditions are applicable here, Plaintiffs are likely to show that Defendants' termination of their F-1 status was not in compliance

---

[5] Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[6] Plaintiffs' evidence showed that Plaintiffs' schools and/or employers took adverse action against Plaintiffs, further demonstrating that the termination of the SEVIS records is a final agency action from which rights and liabilities occur.

with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

In their opposition, Defendants argue that although the APA generally waives the government's immunity, that waiver is not applicable here. (Doc. 16 at 6). Specifically, Defendants point to APA section 702, which "preserves other limitations on judicial review and does not confer authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought." (Doc. 16 at 6–7 (citing *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011))). Although Plaintiffs have not asserted a claim under the Privacy Act, Defendants contend that Plaintiffs' claims "clearly" implicate the Privacy Act, and that the Privacy Act provides an alternative, adequate remedy to the APA. (*Id.*). However, courts have held that the "availability of a Privacy Act suit . . . does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims. *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025).

Moreover, Plaintiffs do not have the ability to seek relief under the Privacy Act. (*Id.*). The Privacy Act provides that an "individual" is "a citizen of the United States or an alien lawfully admitted for permanent residence." (*Id.* at 8 (citing 5

10

U.S.C. § 552a(a)(2))), but Plaintiffs are neither U.S. citizens nor lawful permanent residents, and therefore fall outside of the purview of the Privacy Act.

Further, the relief available under the Privacy Act is actual damages. *Williams v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-61124, 2023 WL 8079947, at *6 (S.D. Fla. Nov. 21, 2023) (quoting *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022)); *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Plaintiffs' Complaint seeks only declaratory and injunctive relief. (Doc. 11 at 67–68). As such, Defendants' argument fails.

### 2. Substantial Threat of Irreparable Injury

Plaintiffs must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

Given the number of Plaintiffs, the Court will not include a description of each harm described by Plaintiffs in the Amended Complaint and the declarations accompanying the Amended TRO Motion. (*See* Docs. 11, 19). Nonetheless, Plaintiffs have demonstrated that they face irreparable harm in the absence of temporary relief. Plaintiffs declare that as a result of the SEVIS terminations, they will lose scholarships, career opportunities, access to education, and the ability to apply for OPT. (*See* Doc. 4-2). Plaintiffs fear that they will abruptly have to leave

11

behind family, cancel marriage plans, and abandon their communities in order to avoid detention or being labeled a national security or foreign policy threat. Many Plaintiffs are mere weeks away from attaining their degrees. (Doc. 4-2 at 34, 40). The loss of timely academic progress alone is sufficient to establish irreparable harm. Additionally, all Plaintiffs report high levels of stress and anxiety resulting from the uncertainty around their futures. If Plaintiffs cannot work or study, they cannot remain in the United States legally and will therefore be subjected to removal proceedings or forced to return to their native countries on their own. These harms could not be sufficiently compensated with monetary damages or avoided by a later decision on the merits. *See Liu v. Noem*, No. 25-cv-133-SE-TSM, slip op. at 3 (D.N.H. Apr. 10, 2025), ECF No. 13 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS); *Isserdani, et al. v. Noem*, No. 25-cv-00283-WMC, 2025 WL 118626, at *10 (W.D. Wis. Apr. 15, 2025) (same); *John Roe, et al v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) (same); *Rantsantiboom v. Noem, et al.*, No. 25-cv-01315 (D. Minn. Apr. 15, 2025) (same); *Hinge v. Lyons*, No. 1:25-cv-01097-RBW, slip op. at 12 (D.D.C. Apr. 15, 2025), ECF No. 11 (same).

### 3. Balance of Harms and Public Interest

The third and fourth TRO requirements—that the threatened injury to the movant outweighs any harm to the non-movant and that an injunction is not adverse to the public interest—merge when, as here, the government is the party opposing the motion. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1358 (N.D. Ga. 2023) (citing *Swain*, 958 F.3d at 1091). "The third element" of that analysis "looks to the competing claims of injury, requiring the court to consider the effect on each party of the granting or the withholding of the requested relief." *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1249 (M.D. Ala. 2016) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)) (internal quotations omitted).

For the reasons set forth above, Plaintiffs have satisfied both factors. First, the balance of harms weighs in Plaintiffs' favor. Plaintiffs stand to lose their lawful status, access to education, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. Defendants assert that SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. (Doc. 16 at 2). If that is so, then restoring Plaintiffs to the status quo before their SEVIS records were terminated has no effect on the Executive's "control over immigration," Defendants' only stated harm. (*Id.* at 16 (citing *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742 (9th Cir. 1992)). Considering the record evidence as discussed in the previous sections

13

of this order, the Court determines that the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweigh any harm the government will experience from the TRO.

Lastly, the Court concludes that there is substantial public interest in ensuring government agencies abide by federal laws. *See Kansas v. U.S. Dep't of Labor*, 749 F. Supp. 3d 1363, 1380 (S.D. Ga. Aug. 26, 2024) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); *see also Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the Court concludes that all relevant factors favor Plaintiffs.

## 4. Security

Finally, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time. *BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 435 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022).

## III.    Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (Docs. 4, 19) are **GRANTED**.

2. The Parties are **DIRECTED** to file a proposed joint protective order regarding the use of Plaintiffs' identifying information by 3:00 p.m. on Monday, April 21, 2025.

3. In the meantime, the Court **ORDERS** the Defendants not to disclose the Plaintiffs' identifying information and not to use it for any purpose outside of this litigation. This aspect of the Court's Order expires at 5:00 p.m. on Monday, April 21, 2025.

4. Defendants shall reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025. By Tuesday, April 22, 2025 at 5:00 p.m., Defendants shall file a notice of compliance with this Order.

5. This Order takes effect immediately and shall continue until its expiration in fourteen (14) days.

**SO ORDERED** this 18th day of April, 2025.

Victoria Marie Calvert
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHAMBERS OF
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 4066
NEWARK, NJ 07101
973-297-4903

April 18, 2025

VIA ECF
All Counsel of Record

## LETTER ORDER

**Re:     Student Doe #1 v. Donald J. Trump, et al.**
**Civil Action No. 25-2825**

Dear Litigants:

Before the Court is Plaintiff Student Doe #1's Motion for a Temporary Restraining Order ("TRO"), ECF No. 4 (the "Motion"). Plaintiff asks this Court to grant the Motion and enter an order (1) restraining Defendants "from taking any enforcement action against Plaintiff arising directly or indirectly" from the termination of Plaintiff's F-1 status under the Student and Exchange Visitor Information System ("SEVIS"), including detaining Plaintiff, transferring them to another jurisdiction, or removing them from the United States pending these proceedings; and (2) restoring the status quo as it existed before Defendants terminated Plaintiff's SEVIS status. See Motion at 2, 25–26. Having carefully reviewed Plaintiff's submissions,[1] this Court **GRANTS** Plaintiff's Motion for a TRO pending further proceedings.

## I.     BACKGROUND

Plaintiff is a citizen of China who currently resides in Jersey City, New Jersey. ECF No. 4.5 ("Doe Decl.") at ¶ 3. Plaintiff successfully completed a Masters degree in Mathematical Statistics and Probability at a university in New York, graduating in December 2022. Id. ¶ 4; see also Motion at 2. After graduation, Plaintiff obtained their Optional Practical Training ("OPT") work authorization pursuant to their F-1 visa and began working at a company in January 2023. Id. ¶ 5. Plaintiff had been continuously employed at that company. Id.

On July 12, 2024, Plaintiff was involved in a dispute with their ex-partner and "was charged with a single municipal disorderly persons offense in the [Hudson County, New Jersey] Municipal Court for simple assault in violation of Disorderly Persons Code 2C:12-1A(1)." Id. ¶ 7; see also

---

[1] The Court acknowledges that Defendants have not yet had the opportunity to weigh in on Plaintiff's Motion. However, in light of Defendants' request for an extended briefing schedule and failure to agree to Plaintiff's proposed stipulation that Defendants refrain from taking enforcement action—including arresting, initiating removal proceedings, detaining, transferring, or deporting the Plaintiff—pending this Court's adjudication of Plaintiff's Motion, see ECF No. 11, this Court deems an ex parte ruling appropriate pursuant to Federal Rule of Civil Procedure 65(b)(1).

Motion at 6.  Plaintiff pleaded not guilty, and the city attorney dismissed the case.  Doe Decl. ¶ 7.  Plaintiff has no other criminal history.  Id.

Just over a week ago, on April 10, Plaintiff received an email from their university stating that "[w]e noticed that SEVIS record was auto-terminated on 4/9/2025 by [the Student Exchange Visitor Program ("SEVP")] with the reason below and we wanted to make sure you were aware of it."  Id. ¶ 8.  According to Plaintiff, the email noted that their SEVIS record was terminated on April 9 with the following justification: "Termination Reason: OTHER – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated."  Id.  Plaintiff independently verified[2] that the Department of State also revoked their F-1 visa on April 9.  Id. ¶ 9; ECF No. 1 ("Compl.") at ¶ 3.

Having learned that Plaintiff's SEVIS status was terminated, Plaintiff's employer terminated their employment as well, and halted any efforts to sponsor Plaintiff's immigration case; Plaintiff previously had plans to enter the H-1B lottery and change their status in the United States.  Doe Decl. ¶¶ 10–11.

By consequence, Plaintiff is now "unable to change status to another valid nonimmigrant status, unable to change employers, unable to apply for enrollment at a different school or doctorate program[,] and unable to pursue other post-graduate opportunities."  Id. ¶ 12.  Plaintiff also lost a lucrative salary, and, in the long run, will suffer harm to their earning potential and career trajectory.  Id. ¶¶ 13–14.

Plaintiff has also experienced, and will continue to experience, severe impacts on their mental health.  Id. ¶¶ 14–16.  Plaintiff lives with "extreme stress and anxiety" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT."  Id. ¶ 15.  They are also frightened they will be separated from their current partner, and that they "will be arrested, transferred and deported like so many other students."  Id.  Simply put: Plaintiff "live[s] every day in fear."  Id. ¶ 16.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions.  Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."  Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted).  One purpose of a TRO is to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," pending further proceedings.  See Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 318 (3d Cir. 2015) (citation omitted).  To establish that they are entitled to such relief,[3] Plaintiff must demonstrate:

---

[2] Plaintiff alleges that, to date, the Department of State has not notified Plaintiff that their visa has been revoked.  Compl. ¶ 3.

[3] Plaintiff seeks both a temporary restraining order and a preliminary injunction.  See generally Motion.  For purposes of this Order, the Court's ruling is confined to Plaintiff's request

(1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (citing Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919–20 (3d Cir. 1974) (citations omitted)); see also Ballas v. Tedesco, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). Where, as here, the Government is the opposing party, the last two factors merge for purposes of the Court's TRO analysis. See Nken v. Holder, 556 U.S. 418, 435 (2009).

## III.   DISCUSSION

Both of Plaintiff's arguments in support of their Motion arise under the Administrative Procedure Act ("APA"). First, Plaintiff contends that the Defendants' termination of Plaintiff's SEVIS status violates 5 U.S.C. § 706(2)(A), (C)–(D) of the APA, which establishes that final agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." See Motion at 16–18. Second, Plaintiff argues that the Defendants' actions violate 5 U.S.C. § 706(2)(B) of the APA, which likewise allows Courts to set aside final agency action if it is "contrary to constitutional right, power, privilege, or immunity."[4] Id. Because Plaintiff need only establish a likelihood of success on a single claim to obtain a TRO, the Court limits its review to Plaintiff's first argument. See Pa. Pro. Liab. Joint Underwriting Ass'n v. Wolf, 328 F. Supp. 3d 400, 410 n. 2 (M.D. Pa. 2018).

---

for a temporary restraining order. Nonetheless, it is instructive to note that each mechanism for emergent relief sought essentially requires satisfaction of the same standard, but relief available via temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," whereas injunctive relief seeking beyond maintenance of the status quo must normally be obtained through a motion seeking a preliminary injunction. Hope v. Warden York Cnty. Prison, 956 F.3d 156, 160–62 (3d Cir. 2020).

In addition, "a preliminary injunction must be issued with notice to the adverse party," see id. at 160 (citing Fed. R. Civ. P. 65(a)(1)), but a temporary restraining order "may be issued without notice where it is 'clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,'" see id. (quoting Fed. R. Civ. P. 65(b)(1)(A)). Here, Defendants have received notice of Plaintiff's Motion. See, e.g., ECF Nos. 4.3, 8, 9, 11.

[4] Here, Plaintiff asserts that "[p]rocedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment." Motion at 18.

## A. Likelihood of Success on the Merits

Plaintiff argues that Defendants have violated the APA[5] because they "have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination." Motion at 17. Plaintiff is likely to succeed on this claim.

SEVIS termination may occur under two general circumstances: (1) a student fails to maintain status, or (2) the Department of Homeland Security ("DHS") terminates status. See 8 C.F.R. §§ 214.2(f), 214.1(d); see also Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Isserdasani v. Noem, No. 25-283, 2025 WL 1118626, at *1 (W.D. Wis. Apr. 15, 2025).

As to the first category, a student fails to maintain status when they fall out of compliance with F-1 status requirements, for example, by not maintaining a full course of study. See 8 C.F.R. § 214.2(f) (listing requirements for F-1 status). Students are also prohibited from engaging in particular conduct, including accepting unauthorized employment, providing false information to DHS, or engaging in criminal activity. See id. § 214.1(e)–(g). Criminal activity is defined to include instances where a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." Id. § 214.1(g).

As to the second category, termination of SEVIS status can occur (1) "by revoking a waiver that the Attorney General had previously authorized under [Immigration and Nationality Act] § 212(d)(3) or (4)," (2) "by the introduction of a private bill to confer permanent resident status," or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 176 (3d Cir. 2019) (quoting 8 C.F.R. § 214.1(d)).

On the current record, none of the aforementioned bases for terminating SEVIS status have been satisfied. It is not apparent that Plaintiff has fallen out of compliance with F-1 status requirements. See Compl. ¶ 4 ("Plaintiff has been in full compliance with the terms of their F-1 status . . . ."); Motion at 3 (same). And "[b]ased on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS." Motion at 17.

Indeed, Plaintiff had been charged with simple assault under N.J.S.A. 2C:12-1a(1), see Doe Decl. ¶ 7, but the regulations prohibiting criminal activity define it as involving a "convict[ion]," 8 C.F.R. § 214.1(g). Plaintiff's charges were dropped. Doe Decl. ¶ 7. Cf. Isserdasani, 2025 WL 1118626, at *4 (holding that, even if plaintiff's misdemeanor offense qualified as a crime of violence, the charge was not ultimately pursued and plaintiff was never convicted).

Finally, nowhere in the record can the Court discern that any of 8 C.F.R. § 214.2(f)'s

[5] SEVIS termination is a final agency action reviewable under the APA. See, e.g., Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 185 & n.100 (3d Cir. 2019); Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Student Doe v. Noem, No. 25-1103, 2025 WL 1134977, at *5 (E.D. Ca. Apr. 17, 2025).

requirements have been met. There is no record of waiver revocation, a private bill to confer permanent resident status, or notification in the Federal Register.

Accordingly, this Court concludes that Plaintiff "has shown a substantial, if not overwhelming, likelihood of success on the merits," Isserdasani, 2025 WL 1118626, at *5, based on their claim that Defendants—acting without a lawful or rational basis to terminate Plaintiff's SEVIS status—have acted ultra vires in violation of 5 U.S.C. § 706(2)(A), (C)–(D) of the APA.

## B. Irreparable Harm

Plaintiff next argues that they will suffer irreparable harm if a TRO is not issued because (1) they are at risk of "unlawful enforcement action by Defendants—including arrest, detention, being transferred to another jurisdiction, and deportation," (2) they are suffering and will continue to suffer mental health consequences in the form of "high levels of stress and anxiety," and (3) because of the interruption to their OPT program, which effectively forecloses their ability to "move on to the next step in their education or career" in which they have invested years of hard work and resources. See Motion at 19–22; see generally Doe Decl. The Court agrees that Plaintiff will suffer an irreparable harm that cannot be redressed by a legal or an equitable remedy following a trial if a TRO is not issued. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

Plaintiff rightly notes that "other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained," and refers to a potential "policy and practice" of those individuals being transferred "far from their homes, school, and communities" to detention centers in places like Texas and Louisiana once they are detained. Motion at 19. See also id. at 20 n.20. The Court finds that Plaintiff's fear and concern of similar actions happening to them is not hypothetical or speculative.[6] See Doe Decl. ¶ 15 ("I am . . . terrified that I will be arrested, transferred and deported like so many other students I am hearing about on the news.").

Plaintiff is also stricken by significant stress and anxiety stemming from the uncertainty of "what will happen to them" and the potential consequences of Defendants' unlawful conduct—including their inability to continue their employment, to change status to another visa status based on employment in professional capacity or by display of outstanding ability—ICE detention and incarceration, and potential deportation that will deprive them "the ability to return to their studies, employment, career, or community which, in Plaintiff's case, includes their lawful permanent resident partner." See Mot. at 21; Doe Decl. ¶¶ 14–16.

Plaintiff anticipated entering the H-1B lottery before they were terminated by their employer because of Defendants' conduct. Doe Decl. ¶ 11. Now, Plaintiff's employer is "unwilling to continue with [their] case," and Plaintiff is unable to change status to another valid nonimmigrant status, unable to change employers, or apply for admission to a different school. Id. ¶ 12. Plaintiff's present career outlook is a radical departure from Plaintiff previously earning

---

[6] To underscore this point, and as set forth above, as of the date of this Order, counsel for Defendants was unable to confirm whether Defendants would stipulate to not take any enforcement action against Plaintiff, including arrest, initiation of removal proceedings, detainment, transfer, or deportation. See ECF No. 11 at 2.

more than $100,000 per year with good prospects of continued employment and career growth. Id. ¶¶ 13–14. Plaintiff notes that they "live every day in fear" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT." Doe Decl. ¶¶ 15–16.

Critically, however, Plaintiff argues that the "circumstances of [their] departure strongly indicate the absence of any ability to return," which would be consistent with the experiences of other international students around the United States, including in New Jersey, who departed under similar circumstances. See Motion at 22. Plaintiff fears that they would be unsuccessful in reapplying for any future visas, for they fear that Defendants may justify future termination or revocation using the reasoning applied to the termination and revocation of Plaintiff's prior status. Id.

For these reasons, the Court finds a TRO is necessary to prevent Plaintiff from suffering irreparable harm because of Defendants' termination of their SEVIS record. Cf. Patel, 2025 WL 1134875, at *2 ("[T]he disruption of education and potential accrual of time out of lawful status that could not be regained[,] constitute an immediate and irreparable harm to Plaintiff warranting a TRO."); Doe v. Noem, No. 25-633, 2025 WL 1141279, at *7 (W.D. Wash. Apr. 17, 2025) (loss of employment authorization, interruption of post-secondary educational opportunities, and threat of removal in tandem with economic and reputational loss can constitute irreparable harm); Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015) (holding that "[e]motional distress, anxiety, depression, and other psychological problems can constitute irreparable injury.").

## C. Balancing Test

Finally, Plaintiff contends that the balance of equities and public interest weighs in favor of granting the Motion. See Motion at 22–24. Again, the Court agrees. Although Defendants have not yet had a chance to respond to Plaintiff's Motion, it is unlikely that any harm will come to Defendants because of this TRO.[7] Considering the relatively short time between entry of the TRO and a hearing before this Court, this TRO cannot credibly interfere with Defendants' enforcement priorities.

On the other hand, Plaintiff is allegedly facing significant harm, already discussed at-length above. Since Plaintiff has lawfully resided within the United States, they have worked hard to accomplish impressive goals, earning a Masters degree, securing a well-paying job, and maintaining that employment until the unexpected termination of their SEVIS status. See Doe Decl. ¶¶ 4–5. That termination has seriously impacted Plaintiff's professional path, personal life, and mental health. Id. ¶¶ 14–16. This calculable harm to Plaintiff strongly outweighs any potential harm that may come to Defendant, considering there is no apparent reason why Plaintiff is undeserving of the fruits of their years-long efforts.

Likewise, the public's interest weighs in favor of entering the requested TRO. Ensuring that SEVIS terminations occur in compliance with applicable law is undoubtedly in the public interest. See Doe, 2025 WL 1141279, at *9 ("The public has a vested interest in a federal

---

[7] For this reason, among others, this Court exercises its discretion to waive Rule 65(c)'s bond requirement.

government that follows its own regulations."). <u>Cf.</u> <u>Town of Newton v. Rumery</u>, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring) ("The public has an interest in seeing its laws faithfully executed."); <u>St. John–St. Thomas Hotel & Tourism Ass'n, Inc. v. Government of the Virgin Islands</u>, 41 V.I. 317, 337–38 (D. VI. 1993), rev'd on other grounds, 218 F.3d 232 (3d Cir. 2000) (noting that the public has an interest in the executive branch's compliance with federal law). Moreover, New Jersey and its taxpayers have an interest in ensuring that its residents can pursue higher education and obtain gainful employment resulting therefrom, so long as such pursuit is legally permissible. Therefore, the balance of these remaining factors weigh in favor of granting the requested interim relief.

## IV.  CONCLUSION

Plaintiff's Motion, ECF No. 4, is **GRANTED**. Defendants are temporarily enjoined from the date of this Order until May 6, to accommodate the Easter holiday, as follows:

(1) Defendants shall restore Plaintiff's SEVIS record and status and set aside Defendants' termination of Plaintiff's SEVIS status;

(2) Defendants are enjoined from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of Defendants' decision to terminate Plaintiff's SEVIS records, including arresting, detaining, or removing Plaintiff from this Court's jurisdiction, or ordering the same, without providing adequate notice to this Court and to Plaintiff's counsel, as well as sufficient time to contest any such enforcement action.

**IT IS FURTHER ORDERED** that Plaintiff shall file, under seal, identifying information including full name, address, and date of birth, or any other information required for Defendants to reinstate their F-1 student status in SEVIS.

**IT IS FURTHER ORDERED** that Defendants shall file their response to Plaintiff's Motion on or before April 25, the date they requested in response to the Court's request. Plaintiff shall file their reply brief on or before April 30. Temporary restraints will remain until the Preliminary Injunction hearing on May 6, described below. Should either party have any objections to the foregoing briefing schedule and the duration of restraints, they shall advise the Court immediately, and no later than noon tomorrow, in which case the court will impose a more expedited briefing and hearing schedule.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Motion shall be held on May 6 at 2:00 p.m. at the Martin Luther King Federal Courthouse in Newark, New Jersey.

**IT IS FURTHER ORDERED** that the parties shall file respective notices by 9:00 a.m. on May 2 of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

# Exhibit E

*Student and Exchange Visitor Program*

**U.S. Department of Homeland Security**
SEVP MS 5600
500 12th Street, SW
Washington, DC 20536-5600



U.S. Immigration
and Customs
Enforcement

June 7, 2010

**POLICY GUIDANCE FOR:**     Designated School Officials

**FROM:**     Student and Exchange Visitor Program – Policy Branch

**SUBJECT:**     Policy Guidance 1004-04 –Visa Revocations

**AUTHORITIES:**     *Immigration and Nationality Act, section 244(b)(1)*; *8 CFR 214.2(f)(6) and (9)*; *8 CFR 214.2(m)(9)* and *8 CFR 214.3(g)(2)*

**Comments:**

To comment on this Policy Guidance or suggest a change, please e-mail SEVIS.source@dhs.gov with "Policy Guidance 1004-04 Comment" entered in the subject line within 60 days of the date of this guidance.

**Purpose:**

The Student and Exchange Visitor Program (SEVP) wants to ensure that designated school officials (DSOs) are aware of the visa revocation process, how to record such an action in a Student and Exchange Visitor Information System (SEVIS) record, and how to respond to law enforcement inquiries involving students whose visas have been revoked.[1]

---

[1]  This guidance represents SEVP's current thinking on this topic. It is advisory in nature and informational in content. Its purpose is to provide guidance to the SEVIS user community and to all SEVP personnel involved in the adjudication and review of petitions for SEVP certification and appeals.

It reflects the position on, or interpretation of, the applicable laws or regulations DHS has published as of the date of this publication, which appears on the first page of the policy guidance. This guidance does not, in any way, replace or supersede those laws or regulations. Only the latest official release of the applicable law or regulation is authoritative.

This guidance does not create or confer any rights for or on any person and does not operate to bind SEVP or the public.

SEVP has not provided previous guidance on this issue. This policy remains in effect until specifically superseded by a subsequent SEVP policy guidance or directive, or until SEVP amends the specifically cited authorities, above, with respect to this issue.


**Background:**

Visa revocations are an important tool in maintaining the security of our borders. Since September 11, 2001, the Department of State (DoS) has revoked 1,250 visas based on information suggesting possible terrorist activities or links. DoS receives a continuous stream of information that affects the eligibility of aliens to hold visas. Subsequent to an alien receiving a visa, the DoS uses any information received that calls into question the alien's suitability as a visa holder, such as a potential threat to the security of the United States, to revoke a visa. DoS revokes the visa promptly and relies on the visa application process to resolve identity and other questions at a later time, should the visa holder wish to reapply for a visa.

The revocation process supplements the terrorist watch-listing work of the Terrorist Screening Center (TSC), which provides the vast majority of the derogatory information on specific individuals. The TSC updates the DoS's Consular Lookout and Support System (CLASS) database with the derogatory information about an alien. If it appears that DoS may have issued a visa to a watch-listed alien, TSC forwards the derogatory information to the Visa Office (VO) of the Bureau of Consular Affairs, which manages the visa-revocation process for DoS.

Once it determines a possible link between the alien and the terrorist-related information, DoS formally revokes the visa. As soon as VO receives the derogatory information from TSC or other agencies, it places a revocation lookout (VRVK code) in CLASS, which replicates in real time in the Department of Homeland Security's (DHS) Interagency Border Inspection System, making the lookout available to DHS inspectors at ports of entry into the United States.

The alien does not receive advance notice that DoS is considering revoking the visa. After DoS revokes the visa, the relevant consular post attempts to contact the alien. However, the consular posts are not in a position to determine whether the alien is in the United States or to find the alien and provide him or her with notice that the revocation has occurred.

If the holder of the revoked visa reapplies for a visa at one of the embassies or consulates abroad, a consular officer carefully screens the application and, after consultation with DoS, determines eligibility. DoS might issue a new visa if it determines that the information which led to the revocation does not pertain to the alien or that the alien is in any event eligible.

SEVP Policy Guidance 1004-04
Visa Revocations

**DHS Reaction to DoS Visa Revocation:**

Immigration and Customs Enforcement's Compliance Enforcement Unit (CEU) receives notification from DoS when DoS revokes a nonimmigrant's visa on national security grounds. In turn, CEU gathers additional information to prepare the case for a field investigation, if warranted. If it finds that DoS revoked an F or M visa on national security grounds, and the student is not present in the United States, CEU refers the nonimmigrant student's information to the SEVP liaison assigned to CEU.

**DSO Actions in Response to Visa Revocation Notice:**

The SEVP/CEU liaison provides a DSO with a list of the visa revocations at the DSO's school. A visa revocation may occur after the visa is issued but before the nonimmigrant enters the United States or upon arrival at a port of entry or while the nonimmigrant is in the United States.

If a DSO receives a visa revocation notice, the DSO should take the following actions in the student's SEVIS record:

- If the nonimmigrant was entering on an initial Form I-20, "Cancel" the record upon notification.

- If the nonimmigrant student was re-entering the United States to continue a program of study, enter "Terminated" in the SEVIS record for "No Show."

Some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. Visa revocation is not, in itself, a cause for termination of the student's SEVIS record.

It is possible that neither the student in question nor the DSO has knowledge of the visa's revocation. However, law enforcement authorities may contact the school officials to verify whether the student is maintaining status.

Contact SEVP if you have questions.

# Exhibit F



**U.S. Department of State**
**Bureau of Educational and Cultural Affairs**
**Private Sector Exchange**

**September 2, 2016**

# Guidance Directive 2016-03
**9 FAM 403.11-3 – VISA REVOCATION**

-------------------------------------------

The Department would like to bring to your attention a policy implemented on November 5, 2015, which requires consular officers to prudentially revoke (i.e., without making a determination that the individual is inadmissible) nonimmigrant visas of individuals arrested for, or convicted of, driving under the influence or driving while intoxicated, or similar arrests/convictions, that occurred within the previous five years, as detailed in 9 FAM 403.11-3(A). This requirement does not apply when the arrest/conviction occurred prior to the date of the visa application and has already been assessed within the context of a visa application.

Driving under the influence indicates a possible visa ineligibility under INA 212(a)(1)(A)(iii) for a physical or mental disorder with associated harmful behavior that is likely to pose a threat to the property, safety, or welfare of the applicant or others in the future. Consular officers refer any nonimmigrant visa applicant with one alcohol related arrest in the last five years, two or more arrests in the last 10 years, or where other evidence suggesting an alcohol problems exists, to a panel physician for a medical examination prior to visa issuance in order to determine whether this type of ineligibility may apply to the applicant.  See INA 212(d); 22 CFR 41.108; 9 FAM 302.2-7(B)(3)(b).

The Department's prudential revocations reflect that, after visa issuance, new or additional information calls into question the subject's continued eligibility for a visa. In cases of a DUI arrest/conviction, consular officers may prudentially revoke the visa of an individual even if he or she is physically present in the United States.  If a J-1's visa is revoked, the Department will usually revoke any J-2 dependents' visas as well.

What does this mean for exchange visitors?  If an exchange visitor is in the United States, the revocation of their visa does not override the J-1 status granted by Customs

and Border Protection ("CBP") at the time of their entry or their ability to stay in the United States (except in extremely rare instances). However, the visa is no longer valid for future travel to the United States. An individual whose visa has been revoked and who departs the United States must receive a new visa (i.e., reapply for a visa and demonstrate eligibility) before seeking to reenter the United States. Therefore, after the individual's departure from the United States, sponsors should terminate his or her program status in SEVIS.

On March 14, 2016, all unclassified 9 FAM content was made public, except for redacted portions that contain sensitive but unclassified language. The publicly available subchapters can be found at:
https://fam.state.gov/Fam/FAM.aspx?ID=09FAM.

We thank you for your continued commitment to international exchanges and to the Department's public diplomacy mission. Your contribution is vital, and we value your partnership.

Keri M. Lowry
Deputy Assistant Secretary
 for Private Sector Exchange

# Exhibit G

## DECLARATION OF DECLARATION OF
## R. LINUS CHAN

1. My name is R. Linus Chan.

2. I am over eighteen years of age and am competent to testify regarding the matters described below.

3. I have been a licensed attorney since 2002, and I am currently licensed, and in good standing, in Illinois and Minnesota. I been practicing immigration law since 2004.

4. I am the James H. Binger Clinical Professor of Law and the Director of the Detainee Rights Clinic at the University of Minnesota Law School.

5. In the last month, I have been very involved with personally representing and coordinating the representation of international students whose student visas have been revoked, and whose SEVIS records have been terminated.

6. In recent weeks, I have also communicated on a daily basis with dozens of other immigration lawyers around the United States who have also been working with international students whose visas have been revoked and SEVIS records have been terminated. I am aware, from my personal involvement with this subject matter, and from tracking reporting on this issue, that there have been thousands of students to whom this has happened in recent weeks.

7. Based on the cases I have reviewed, it is typical in recent weeks for students to receive notice from their academic institutions that their SEVIS records have been terminated and, either before or after, students may separately receive notice of their visa revocations from the U.S. consulates that issued their visas.

8. However, I am aware that some students received notices of the termination of their SEVIS records but did not receive visa revocation notices at all. In fact, in a case involving my student, I have documentation which indicated that the revocation was "silent" and would not be provided to the student before their detention.

9. There can be no doubt, in my opinion, that the U.S. government's actions in these students' cases is the result of a closely coordinated policy and protocol that is executed by the Department of State (which revokes the students' visas), and the Department of Homeland Security (through Immigration and Customs Enforcement (ICE), which terminates the students' SEVIS records).

10. My work with international students in recent weeks has been most intensely concentrated on representing and coordinating with other attorneys representing international students who, after having their visas revoked and their SEVIS records

Declaration of Linus Chan

terminated, were detained by ICE and placed into removal proceedings with an immigration court in Minnesota.

11. I am personally aware of a total of four international students in Minnesota who, after having their student visas revoked and their SEVIS records terminated, have been detained and placed in removal proceedings. All of them remain in immigration detention.

12. In my client's case, school officials provided  screenshots of my client's SEVIS accounts around the time that those accounts were terminated. The screenshots of my client's SEVIS accounts list a citation to INA § 237(a)(1)(C)(i).

13. As part of a group of attorneys representing my client in their removal and bond proceedings, I am in possession of the Notices to Appear—the charging documents—that ICE filed to initiate the deportation cases against him. The NTA charges him with being removable under INA § 237(a)(1)(C)(i).

14. Upon information and belief, after conferring with, Hannah Brown, another detained student's attorney, that student is similarly situated to my client, and the majority of students described above in ¶¶ 6-9. I have also been in contact with attorneys representing two other detained students in Minnesota. They were all similarly situated. All of our clients were detained by ICE between March 25, 2025, and March 28, 2025. All four of them had bond hearings with immigration judges within the last week. All four of them were found by immigration judges to be neither a danger to the community, nor a flight risk, and all four were granted a bond.

15. However, ICE secured administrative stays that have effectively blocked all four students' ability to either post the bond, or to be released on bond.  For that reason, the students will remain detained for the foreseeable future.

I declare under penalty of perjury that the foregoing is true and correct. (U.S. Code, Title 28, USC § 1746.)

April 17, 2025
Dated

Linus R. Chan

Declaration of Linus Chan

# Exhibit H

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF MATTHEW GREEN**

1.  My name is Matthew H. Green.

2.  My date of birth is March 17, 1975.

3.  I am an attorney, licensed by the Supreme Court of Arizona, and authorized to practice law in the State of Arizona, the U.S. District Court for the District of Arizona, and the U.S. Court of Appeals for the Ninth Circuit.

4.  My residence and principal place of business are in Tucson, Arizona. I am the managing partner of Green Evans-Schroeder, an immigration and criminal defense law firm. Over the past four weeks, our firm has been overwhelmed with providing consultations to international students at Arizona State University (ASU), the University of Arizona (U of A), and other colleges and universities in Arizona, and around the United States, whose student visas have suddenly been revoked, and whose SEVIS records have been suddenly terminated.

5.  Our law firm has provided consultations to approximately thirty (30) international students whose visas have been revoked and whose SEVIS records have been terminated. The fact patterns are nearly identical in each case in that nearly all the students have had contact with law enforcement for minor criminal conduct. Some of the students have misdemeanor convictions. Many of the students were initially charged with misdemeanors but their criminal cases were later dismissed. None of the students with whom we have consulted thus far have any criminal convictions that would give rise to criminal grounds of removability under 8 U.S.C. § 1227(a)(2).

6.  As part of the consultation process with these students, I have reviewed different documents and information pertaining to their cases. For example, I have reviewed the consular email notifications that the students receive, notifying them that their visas have been revoked. I have also reviewed screen shot images of their SEVIS accounts after their SEVIS records have been revoked. The screenshot images have been provided to us, or to the students, by school officials who have access to the students' SEVIS accounts.

7.  As to the screenshot images of students' SEVIS accounts, I can confirm that I am aware of four students whose SEVIS accounts, post-termination, state the following: "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Student is terminated pursuant to INA 237(a)(1)(C)(i) and 237(a)(4)(C)(i)." I can also avow that, after attorneys in our law firm consulted with these four students, it was determined with a very high degree of certainty that those students had no involvement with any kind of activities or speech that would subject them to being removable under INA § 237(a)(4)(C)(i).

Declaration of Matthew H. Green

8. As to the consular email messages that at least five of the students received, the format and language are identical, and each email message reads as follows:

We are writing about an important and serious matter in reference to your nonimmigrant student (F-1) visa.

On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued.  As a result, your F-1 visa with expiration date [Day-Month-Year] was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act, as amended.

The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, with manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.

Remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation.  It may also make you ineligible for a future U.S. visa.  Please not that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the Untied States.  Persons being deported may be sent to countries other than their countries of origin.

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome.

As soon as you depart the United States, you must personally present your passport to the U.S. embassy or consulate which issued your visa so your visa can be physically cancelled.

You must not attempt to use your visa as it has been revoked.  If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

9. I am the attorney of record in two cases in the U.S. District Court, District of Arizona, wherein I represent two Arizona-based students whose visas have been revoked. Those cases are *Arizona Student Doe #1 v. Trump, et al.*, 4:25-cv-00174-JGZ, and *Arizona Student Doe #2 v. Trump, et al.*, 4:25-cv-00175-AMM.

Declaration of Matthew H. Green

10. In addition, I also represent an international student who was detained and placed into removal proceedings in Florence, Arizona on March 28, 2025. His SEVIS account was terminated within 24 hours of his detention, and to my knowledge, he still has not been notified by the Department of State as to whether his visa was revoked, although the Department of Homeland Security informed a school representative that it had been.

11. My client had minor criminal history that did not subject him to any criminal grounds of removal under 8 U.S.C. § 1227(a)(2). Moreover, his criminal history was 7-10 years old, and was well-known to the U.S. government, which issued him two additional F-1 visas after he disclosed all relevant information to consular officials who adjudicated his nonimmigrant visa applications.

I declare under penalty of perjury that the foregoing is true and correct. (U.S. Code, Title 28, USC § 1746.)

April 18, 2025
Dated

*Matthew H. Green*

Matthew H. Green
AZSB No. 020827
Green Evans-Schroeder
130 W. Cushing Street
Tucson, AZ 85701
Tel: (520) 639-7288

Declaration of Matthew H. Green

# Exhibit I

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| OSNY SORTO-VASQUEZ KIDD, et al., | No. 2:20-cv-03512-ODW (JPRx) |
|---|---|
| Plaintiffs, | |
| v. | **STIPULATED PROTECTIVE ORDER** |
| ALEJANDRO MAYORKAS,[1] Secretary, U.S. Department of Homeland Security, in his official capacity; TAE D. JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; DAVID MARIN, Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement, in his official capacity; JOSEPH MACIAS, Los Angeles Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcements, in his official capacity; UNITED STATES OF AMERICA; O.M.; C.C.; J.H.; and J.N., | Honorable Jean P. Rosenbluth United States Magistrate Judge  Complaint Filed: April 16, 2020 |
| Defendants. | |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Defendants Mayorkas and Johnson are automatically substituted for their predecessors

# STIPULATED PROTECTIVE ORDER

1.    A. <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, herein, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

B. <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve law enforcement practices, financial, private, and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information may consist of training materials for Immigration and Customs Enforcement ("ICE") agents/officers, documents reflecting tactics and techniques ICE agents utilize when serving arrest warrants and making arrests, documents related to immigrants and detainees' immigration proceedings (including but not limited to their "A-files") as well as private information regarding others in their household, information regarding confidential business practices, organizational membership and/or operational information, information regarding the income and personal finances of Plaintiffs and various current and former ICE agents/officers, the identities of current and former ICE employees (including but not

necessarily limited to rank and file ICE employees),[2] confidential agency practices, and other information generally unavailable to the public that may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, is not otherwise subject to disclosure under applicable public records laws, and there is good cause why it should not be part of the public record of this case.

2.     DEFINITIONS

2.1     Action: the lawsuit styled *Kidd, et al. v. Mayorkas, et al.*, Case No.: CV 20-3512-ODW (JPRx).

2.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c) and other governing law, and as specified above in the Good Cause Statement.

2.4     "CONFIDENTIAL–ATTORNEYS' EYES ONLY" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things

---

[2] In light of the Court's October 5, 2020 Order regarding the Individual Defendants (see ECF No. 37), Plaintiffs agree that such officers' identities may be initially designated confidential. Consistent with that Order, Plaintiffs reserve the right to revisit this issue with the Court at a later stage of the case or to challenge the confidentiality designation if it impedes Plaintiffs' ability to prosecute their claims.

that qualify for protection under Federal Rule of Civil Procedure 26(c) and other governing law, and as specified above in the Good Cause Statement, for which heightened protection is appropriate. A CONFIDENTIAL–ATTORNEYS' EYES ONLY designation shall apply only to extremely sensitive "CONFIDENTIAL" Information or Items, the disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

      2.5    Counsel: Outside Counsel of Record and House/Agency Counsel.

      2.6    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY."

      2.7    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

      2.8    Expert: a person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its counsel to serve as an expert witness, consultant, or investigator in this Action (as well as their support staff).

      2.9    House/Agency Counsel: attorneys who are employees of a party to this Action. House/Agency Counsel does not include Outside Counsel of Record or any other outside counsel.

      2.10   Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

      2.11   Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and who have appeared in this Action on behalf of that party.

      2.12   Party: any party to this Action, including all of its officers, directors, staff, consultants (not employed by Counsel of Record or any student at UC Irvine School of Law), retained experts (not employed by Counsel of Record or any student at UC Irvine

3

1    School of Law), and Outside Counsel of Record.

2       2.13    Producing Party: a Party or Non-Party that produces Disclosure or

3    Discovery Material in this Action.

4       2.14    Professional Vendors: persons or entities that provide litigation support

5    services (e.g., photocopying, videotaping, translating, preparing exhibits or

6    demonstrations, and organizing, storing, or retrieving data in any form or medium) and

7    their employees and subcontractors.

8       2.15    Protected Material: any Disclosure or Discovery Material that is designated

9    as "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY."

10      2.16    Receiving Party: a Party that receives Disclosure or Discovery Material

11   from a Producing Party.

12   3.   SCOPE

13      The protections conferred by this Stipulation and Order cover not only Protected

14   Material (as defined herein), but also (1) any information copied or extracted from

15   Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

16   Material; and (3) any testimony, conversations, or presentations by Parties or their

17   Counsel that might reveal Protected Material.

18      Any use of Protected Material at trial shall be governed by the orders of the

19   trial judge. This Order does not govern the use of Protected Material at trial.

20   4.   DURATION

21      Even after final disposition of this Action, the confidentiality obligations imposed

22   by this Order shall remain in effect until a Designating Party agrees otherwise in writing

23   or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

24   dismissal of all claims and defenses in this Action, with or without prejudice; and (2)

25   final judgment herein after the completion and exhaustion of all appeals, rehearings,

26   remands, trials, or reviews of this Action, including the time limits for filing any motions

27   or applications for extension of time pursuant to applicable law.

28   5.   DESIGNATING PROTECTED MATERIAL

5.1   <u>Exercise of Restraint and Care in Designating Material for Protection</u>.

Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2   <u>Manner and Timing of Designations</u>.

Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) herein), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend") or "CONFIDENTIAL–ATTORNEYS' EYES ONLY" (hereinafter "CONFIDENTIAL–ATTORNEYS' EYES ONLY legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected

5

portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" or "CONFIDENTIAL– ATTORNEYS' EYES ONLY legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that involves information subject to CONFIDENTIAL or CONFIDENTIAL–ATTORNEYS' EYES ONLY designations, the Parties must identify such protected testimony on the record before the close of the deposition.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate Protected Material does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material

6

is treated in accordance with the provisions of this Order.

6.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

    6.1  <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

    6.2  <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

    6.3  The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY" designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.  ACCESS TO AND USE OF PROTECTED MATERIAL

    7.1  <u>Basic Principles</u>.

    A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. No one subject to this Protective Order shall use CONFIDENTIAL information or CONFIDENTIAL–ATTORNEYS' EYES ONLY information obtained from a Party or Non-Party for any other purpose or in any other proceeding. CONFIDENTIAL information or CONFIDENTIAL–ATTORNEYS' EYES ONLY information obtained in this litigation also shall not be used to retaliate against, discriminate against, or harass any party, any witness, any relative or domestic partner of any Party or witness, or any individual associated with the Parties.

    Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

    When the Action has been terminated, a Receiving Party must comply with the

provisions of section 13 below herein (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, and support staff of said Outside Counsel of Record, including law students, to whom disclosure is reasonably necessary for this Action. In light of the sensitive nature of "CONFIDENTIAL" information, it is the Parties' intent that access to "CONFIDENTIAL" information shall be highly circumscribed and not made broadly available to the staff and/or law students of Outside Counsel of Record. With the exception of the attorneys who entered appearances in this litigation, each individual identified under section 7.2(a) must execute the "Acknowledgment and Agreement to be Bound" (Exhibit A) prior to obtaining access to any information designated as "CONFIDENTIAL";

(b) the Receiving Party, including officers, directors, agents, and staff (including House/Agency Counsel) and/or law students to whom to the extent disclosure is reasonably necessary for this Action. Each individual identified under section 7.2(b) must execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A) prior to obtaining access to any information designated as "CONFIDENTIAL." In light of the sensitive nature of "CONFIDENTIAL" information, it is the Parties' intent that access to "CONFIDENTIAL" information shall be highly circumscribed and not made broadly available to the staff of the Receiving Party;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

1  (d) the court and its personnel;

2  (e) court reporters and their staff;

3  (f) interpreters;

4  (g) professional jury or trial consultants, mock jurors, and Professional Vendors to

5 whom disclosure is reasonably necessary for this Action. Each individual identified

6 under section 7.2(f) must execute the "Acknowledgment and Agreement to Be Bound"

7 (Exhibit A) prior to obtaining access to any information designated as

8 CONFIDENTIAL;

9  (h) the author or recipient of a document containing the information or a custodian

10 or other person who otherwise possessed or knew the information;

11  (i) deposition witnesses and their attorneys for depositions conducted in the

12 Action to whom disclosure of Protected Material is reasonably necessary, provided: (1)

13 the deposing party obtains an executed copy of the "Acknowledgment and Agreement to

14 Be Bound" (Exhibit A) from the witness and any outside attorney(s); and (2) the witness

15 and his or her attorney(s) refrain from taking any documents from the deposition that

16 include any information designated CONFIDENTIAL, including, but not limited to,

17 deposition exhibits, documents shown to the witness, but not marked as exhibits, and any

18 notes generated during the deposition. Only Counsel of Record in the Action shall retain

19 an original or copy of any deposition transcript. Deposition witnesses and their attorneys

20 may temporarily retain an original or copy of a transcript of their own deposition to

21 review it for accuracy, or to prepare to testify. Neither the witness nor their counsel shall

22 make copies of the transcripts, or any portion thereof. The deposition witnesses and their

23 attorneys must return the deposition transcripts to Counsel of Record within 10 days

24 after testifying or completing review of the transcript. Pages of transcribed deposition

25 testimony or exhibits to depositions that reveal Protected Material may be separately

26 bound by the court reporter and may not be disclosed to anyone except as permitted

27 under this Stipulated Protective Order; and

28  (j) any mediator or settlement officer, and their supporting personnel, mutually

agreed upon by any of the parties engaged in settlement discussions or appointed by the Court. Each nonjudicial individual identified under section 7.2(j) must execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A) prior to obtaining access to any information designated as CONFIDENTIAL.

   7.3    Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" only to:

   (a)  the Receiving Party's Outside Counsel of Record in this Action, and support staff of said Outside Counsel of Record, including law students, to whom disclosure is reasonably necessary for this Action. In light of the highly sensitive nature of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" information, it is the Parties' intent that access to "CONFIDENTIAL–ATTORNEYS' EYES ONLY" information shall be highly circumscribed and not made broadly available to the staff and/or law students of Outside Counsel of Record. With the exception of the attorneys who entered appearances in this litigation, each individual identified under section 7.3(a) must execute the "Acknowledgment and Agreement to be Bound" (Exhibit A) prior to obtaining access to any information designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY"]];

   (b)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

   (c)  the court and its personnel;

   (d)  court reporters and their staff;

   (e)  interpreters;

   (f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action. Each individual identified under this subsection must execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A) prior to obtaining access to any information designated as

10

1    CONFIDENTIAL–ATTORNEYS' EYES ONLY;

2         (g)  the author or recipient of a document containing the information or a

3    custodian or other person who otherwise possessed or knew the information;

4         (h)  deposition witnesses and their attorneys for depositions conducted in the

5    Action to whom disclosure of Protected Material is reasonably necessary, provided: (1)

6    the deposing party obtains an executed copy of the "Acknowledgment and Agreement to

7    Be Bound" (Exhibit A) from the witness and his or her attorney(s); and (2) the witness

8    and his or her attorney(s) refrain from retaining any documents that include any

9    information designated CONFIDENTIAL–ATTORNEYS' EYES ONLY, including, but

10   not limited to, deposition exhibits, documents shown to the witness, but not marked as

11   exhibits, and any notes generated during the deposition. Only Counsel of Record in the

12   Action shall retain an original or copy of any deposition transcript. Deposition witnesses

13   and their attorneys may temporarily retain an original or copy of a transcript of their own

14   deposition to review it for accuracy, or to prepare to testify. Neither the witness nor their

15   counsel shall make copies of the transcripts, or any portion thereof. The deposition

16   witnesses and their attorneys must return the deposition transcripts to Counsel of Record

17   within 10 days after testifying or completing review of the transcript. Pages of

18   transcribed deposition testimony or exhibits to depositions that reveal Protected Material

19   may be separately bound by the court reporter and may not be disclosed to anyone

20   except as permitted under this Stipulated Protective Order; and

21        (i)  any mediator or settlement officer, and their supporting personnel, mutually

22   agreed upon by any of the parties engaged in settlement discussions or appointed by the

23   Court. Each individual identified under this subsection must execute the

24   "Acknowledgment and Agreement to Be Bound" (Exhibit A) prior to obtaining access to

25   any information designated as CONFIDENTIAL–ATTORNEYS' EYES ONLY.

26        7.4    Disclosure of the Identities of Individual Capacity Defendants. In

27   accordance with this Court's October 5, 2020 Order (see ECF No. 37), the identities of

28   the ICE employees sued in their individual capacity shall be disclosed only to Plaintiffs'

11

Outside Counsel of Record, including support staff to whom disclosure is reasonably necessary for this Action. Plaintiffs' counsel may share the identities of the ICE employees involved in the alleged incidents that gave rise to this Action with Plaintiffs only after Plaintiffs have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

7.5     Retention of Executed Copies of "Acknowledgement and Agreement to Be Bound." Counsel shall retain all executed copies of the "Acknowledgment and Agreement to Be Bound" (Exhibit A) from individuals who have been granted access to any Protected Material by such Counsel.

8.     <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order unless prohibited by law;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the

burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement

13

1    with the Non-Party before a determination by the court.

2         Absent a court order to the contrary, the Non-Party shall bear the burden and

3    expense of seeking protection in this court of its Protected Material.

4    10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

5         If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed

6    Protected Material to any person or in any circumstance not authorized under this

7    Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing

8    the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve

9    all unauthorized copies of the Protected Material, (c) inform the person or persons to

10   whom unauthorized disclosures were made of all the terms of this Order, and (d) request

11   such person or persons to execute the "Acknowledgment and Agreement to Be Bound"

12   that is attached hereto as Exhibit A.

13   11.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE

14         PROTECTED MATERIAL

15        When a Producing Party gives notice to Receiving Parties that certain

16   inadvertently produced material is subject to a claim of privilege or other protection, the

17   obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure

18   26(b)(5)(B). This provision is not intended to modify whatever procedure may be

19   established in an e-discovery order that provides for production without prior privilege

20   review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach

21   an agreement on the effect of disclosure of a communication or information covered by

22   the attorney-client privilege or work product protection, the parties may incorporate their

23   agreement in the stipulated protective order submitted to the court provided the Court so

24   allows.

25   12.   MISCELLANEOUS

26        12.1  Right to Further Relief. Nothing in this Order abridges the right of any

27   person to seek its modification by the Court in the future.

28        12.2  Right to Assert Other Objections. By stipulating to the entry of this

14

1  Protective Order no Party waives any right it otherwise would have to object to

2  disclosing or producing any information or item on any ground not addressed in this

3  Stipulated Protective Order. Similarly, no Party waives any right to object on any ground

4  to use in evidence of any of the material covered by this Protective Order.

5      12.3   <u>Filing Protected Material</u>. A Party that seeks to file under seal any Protected

6  Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

7  under seal pursuant to a court order authorizing the sealing of the specific Protected

8  Material at issue. If a Party's request to file Protected Material under seal is denied by

9  the court, then the Receiving Party may file the information in the public record unless

10  (a) the Receiving Party is otherwise instructed by the court or (b) the information is

11  already recognized as protected under the Local Rules or Federal Rules, such as social

12  security numbers.

13  13.   <u>FINAL DISPOSITION</u>

14      After the final disposition of this Action, as defined in paragraph 4, within 60 days

15  of a written request by the Designating Party, each Receiving Party must return all

16  Protected Material to the Producing Party or destroy such material. As used in this

17  subdivision, "all Protected Material" includes all copies, abstracts, compilations,

18  summaries, and any other format reproducing or capturing any of the Protected Material.

19  Whether the Protected Material is returned or destroyed, the Receiving Party must

20  submit a written certification to the Producing Party (and, if not the same person or

21  entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category,

22  where appropriate) all the Protected Material that was returned or destroyed and (2)

23  affirms that the Receiving Party has not retained any copies, abstracts, compilations,

24  summaries or any other format reproducing or capturing any of the Protected Material.

25  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

26  pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

27  correspondence, deposition and trial exhibits, expert reports, attorney work product, and

28  consultant and expert work product, even if such materials contain Protected Material.

1  Any such archival copies that contain or constitute Protected Material remain subject to
2  this Protective Order as set forth in Section 4 (DURATION).

3  14.  Any violation of this Order may be punished by any and all appropriate measures
4  including, without limitation, contempt proceedings and/or monetary sanctions.

6  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

9  DATED: August 4, 2021

   By:  ___/s/ Michael Kaufman___
        Attorney for Plaintiffs

12 DATED: August 4, 2021

   By:  ___/s/ Aaron Kollitz___
        Attorneys for Defendants

17 FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

19 DATED: August 6, 2021

   _____
        Honorable Jean P. Rosenbluth
        United States Magistrate Judge

16

# **EXHIBIT A**

## **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____

[print or type full address], declare under penalty of perjury that I have read in its

entirety and understand the Stipulated Protective Order that was issued by the United

States District Court for the Central District of California on _____ [date] in the

case of Kidd et al., v. Mayorkas, et al., CV 20-3512-ODW (JPRx). I agree to comply

with and to be bound by all the terms of this Stipulated Protective Order and I

understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt. I solemnly promise that I will not disclose in any

manner any information or item that is subject to this Stipulated Protective Order to any

person or entity except in strict compliance with the provisions of this Order.

      I further agree to submit to the jurisdiction of the United States District Court for

the Central District of California for the purpose of enforcing the terms of this Stipulated

Protective Order, even if such enforcement proceedings occur after termination of this

action. I hereby appoint _____ [print or type full name] of

_____ [print or type full address and

telephone number] as my California agent for service of process in connection with this

action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

# Exhibit J

Case 8:25-cv-00706-DOC-DFM Document 17-2 Filed 04/21/25 Page 166 of 183
Case 5:18-cv-02604-JGB-SHK Document 101 Filed 06/02/20 Page 1 of 189 Page ID #:1738
Page ID #:341

1   NICOLA T. HANNA
    United States Attorney
2   DAVID M. HARRIS
    Assistant United States Attorney
3   Chief, Civil Division
    JOANNE S. OSINOFF
4   Assistant United States Attorney
    Chief, General Civil Section
5   AARON KOLLITZ (Cal. Bar No. 238580)
    Assistant United States Attorney
6   JOSEPH A. DARROW
    Assistant United States Attorney
7        Federal Building, Suite 7516
         300 North Los Angeles Street
8        Los Angeles, California 90012
         Telephone: (213) 894-2083 / 0436
9        E-mail: Aaron.Kollitz@usdoj.gov
         Joseph.Darrow@usdoj.gov
10
    Attorneys for Defendants: Federal Defendants
11
                    UNITED STATES DISTRICT COURT
12              FOR THE CENTRAL DISTRICT OF CALIFORNIA
                          EASTERN DIVISION
13

14   ERNESTO TORRES, et al.,                  No. EDCV 18-02604-JGB (SHK)

15            Plaintiffs,                     **STIPULATED PROTECTIVE
                                              ORDER**
16            v.

17   UNITED STATES DEPARTMENT OF
     HOMELAND SECURITY; CHAD WOLF[1],
18   Acting Secretary of Homeland Security;
     UNITED STATES IMMIGRATION AND
19   CUSTOMS ENFORCEMENT; MATTHEW
     ALBENCE[2], Acting Director, Immigration and
20   Customs Enforcement; DAVID MARIN, Field
     Office Director, Los Angeles Field Office of
21   ICE; ORANGE COUNTY SHERRIF'S
     DEPARTMENT; GEO GROUP, INC., a
22   Florida corporation,

23            Defendants.

24

25 ─────────────────────────

26      [1] Chad Wolf, Acting Secretary of Homeland Security, is automatically substituted
     for his predecessor, pursuant to Federal Rule of Civil Procedure 25(d).

27      [2] Matthew Albence, Acting Secretary of Immigration and Customs Enforcement,
     is automatically substituted for his predecessor, pursuant to Federal Rule of Civil
28   Procedure 25(d).

                                   1

1.    A. <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, herein, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

B. <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve law enforcement and detention practices, financial, private, proprietary and/or personally identifiable information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted.  Such confidential and proprietary materials and information may consist of certain contracts with third-party vendors, documents related to immigrants and detainees' immigration proceedings (including but not limited to their "A-files"), information regarding confidential business practices, confidential agency practices, or information otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law.  Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address the handling of such

ACTIVE 255133009

material at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

2.  <u>DEFINITIONS</u>

2.1  Action: The lawsuit styled *Torres, et al. v. United States Dep't of Homeland Sec., et al.*, Case No.: EDCV 18-02604-JGB (SHK).

2.2  Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3  "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.4  Counsel: Outside Counsel of Record and House/Agency Counsel (as well as their support staff).

2.5  Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6  Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7  Expert: a person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8  House/Agency Counsel: attorneys who are employees of a party to this

1   Action.  House/Agency Counsel does not include Outside Counsel of Record or any

2   other outside counsel.

3          2.9    Non-Party: any natural person, partnership, corporation, association, or

4   other legal entity not named as a Party to this Action.

5          2.10   Outside Counsel of Record: attorneys who are not employees of a party to

6   this Action but are retained to represent or advise a party to this Action and have

7   appeared in this Action on behalf of that party or are affiliated with a law firm which has

8   appeared on behalf of that party, and includes support staff.

9          2.11   Party: any party to this Action, including all of its officers, directors,

10  employees, consultants, retained experts, and Outside Counsel of Record (and their

11  support staffs).

12         2.12   Producing Party: a Party or Non-Party that produces Disclosure or

13  Discovery Material in this Action.

14         2.13   Professional Vendors: persons or entities that provide litigation support

15  services (e.g., photocopying, videotaping, translating, preparing exhibits or

16  demonstrations, and organizing, storing, or retrieving data in any form or medium) and

17  their employees and subcontractors.

18         2.14   Protected Material: any Disclosure or Discovery Material that is designated

19  as "CONFIDENTIAL."

20         2.15   Receiving Party: a Party that receives Disclosure or Discovery Material

21  from a Producing Party.

22  3.    <u>SCOPE</u>

23         The protections conferred by this Stipulation and Order cover not only Protected

24  Material (as defined herein), but also (1) any information copied or extracted from

25  Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

26  Material; and (3) any testimony, conversations, or presentations by Parties or their

27  Counsel that might reveal Protected Material.

28

4

Case 8:18-cv-02604-GSB-SHK    Document 101    Filed 06/02/20    Page 5 of 39    Page ID #:1742

Any use of Protected Material at trial shall be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

## 4.    DURATION

Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## 5.    DESIGNATING PROTECTED MATERIAL

### 5.1    Exercise of Restraint and Care in Designating Material for Protection.

Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

### 5.2    Manner and Timing of Designations.

Except as otherwise provided in this Order (see, e.g., second paragraph of section

ACTIVE 255133009

Case 8:25-cv-00706-DOC-DFM    Document 17-3    Filed 04/21/25    Page 171 of 183
Case 8:18-cv-02604-JGB-SHK    Document 101    Filed 06/02/20    Page 6 of 18    Page ID #:1743
Page ID #:346

5.2(a) herein), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material.

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL."

5.3    <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon

timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

    6.1   Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

    6.2   Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

    6.3   The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.   ACCESS TO AND USE OF PROTECTED MATERIAL

    7.1   Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action.  No one subject to this Protective Order shall use Confidential Information obtained from an opposing party in this litigation in any other proceedings, including in removal proceedings and enforcement actions. Confidential Information obtained in this litigation also may not be used to retaliate against, discriminate against, or harass any party, any witness, any relative or domestic partner of any Party or witness, or any individuals associated with the Parties. It also may not be used to report or refer any individual to any governmental authorities absent a legal obligation, in which case prior written notice must be provided to all Parties in this litigation.  Nothing in this provision shall prevent any party from using independently obtained information for legitimate law enforcement purposes.

7

ACTIVE 255133009

Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 herein (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record (including attorneys, paralegals, clerks, secretaries, interns and other staff) to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House/Agency Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) and consultants of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action

8

ACTIVE 255133009

Case 8:25-cv-00706-DOC-DFM   Document 17-2   Filed 04/21/25   Page 174 of 183
Case 8:18-cv-02604-JGB-SHK   Document 101   Filed 06/02/20   Page 9 of 18   Page ID #:1746
Page ID #:349

to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.3    This Order shall not preclude Plaintiffs' Counsel from using the information obtained through discovery production to contact current or former class members, their attorneys or family members. Nothing in this Order shall be construed to permit Defendants to withhold names or contact information from current or former class members.

7.4    Nothing in this Order shall preclude the disclosure of "Confidential" information to the class member to whom the information pertains.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party.  Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Stipulated

9

ACTIVE 255133009

Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably

Case 8:25-cv-00746-DOC-DFM Document 17-2 Filed 04/21/25 Page 176 of 183
Case 5:18-cv-02006-JGB-SHK Document 161-1 Filed 06/02/20 Page 116 of 176 Page ID
Page ID #:8351

specific description of the information requested; and

(3) make the information requested available for inspection by the Non-
Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days
of receiving the notice and accompanying information, the Receiving Party may produce
the Non-Party's confidential information responsive to the discovery request.  If the
Non-Party timely seeks a protective order, the Receiving Party shall not produce any
information in its possession or control that is subject to the confidentiality agreement
with the Non-Party before a determination by the court.

Absent a court order to the contrary, the Non-Party shall bear the burden and
expense of seeking protection in this court of its Protected Material.

10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed
Protected Material to any person or in any circumstance not authorized under this
Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing
the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve
all unauthorized copies of the Protected Material, (c) inform the person or persons to
whom unauthorized disclosures were made of all the terms of this Order, and (d) request
such person or persons to execute the "Acknowledgment and Agreement to Be Bound"
that is attached hereto as Exhibit A.

11.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE
PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain
inadvertently produced material is subject to a claim of privilege or other protection, the
obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure
26(b)(5)(B).  This provision is not intended to modify whatever procedure may be
established in an e-discovery order that provides for production without prior privilege

review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.    MISCELLANEOUS

12.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2    Right to Assert Other Objections.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Filing Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party shall file an unsealed copy of the information in the public record within seven (7) business days.  This unsealed copy shall redact any reference to an individual's social security number, taxpayer-identification number, or birthdate, the name of an individual known to be a minor, financial account numbers, or other similarly sensitive personal or financial information.

13.    FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.

1  Whether the Protected Material is returned or destroyed, the Receiving Party must

2  submit a written certification to the Producing Party (and, if not the same person or

3  entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category,

4  where appropriate) all the Protected Material that was returned or destroyed and (2)

5  affirms that the Receiving Party has not retained any copies, abstracts, compilations,

6  summaries or any other format reproducing or capturing any of the Protected Material.

7  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

8  pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

9  correspondence, deposition and trial exhibits, expert reports, attorney work product, and

10  consultant and expert work product, even if such materials contain Protected Material.

11  Any such archival copies that contain or constitute Protected Material remain subject to

12  this Protective Order as set forth in Section 4 (DURATION).

13  14.     Any violation of this Order may be punished by any and all appropriate measures

14  including, without limitation, contempt proceedings and/or monetary sanctions.

15

16  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

17

18  DATED:  __June 2, 2020_____

19  __s/ Christopher M. Griffin_____

20  Attorneys for Plaintiffs

21

22  DATED:_June 2, 2020_____

23  __s/ David T. Van Pelt_____

24  Attorneys for Defendant GEO Group, Inc.

25

26  DATED:_June 2, 2020_____

27  __s/ Joseph A. Darrow_____

28
                                    13

ACTIVE 255133009

Case 8:25-cv-00706-DOC-DFM   Document 17-2   Filed 04/21/25   Page 179 of 183
Page ID #:1354
Case 5:18-cv-02086-JGB-SHK   Document 161   Filed 06/02/20   Page 14 of 15   Page ID
#:751

1  Attorneys for Defendants United States Department of Homeland Security, Chad Wolf,

2  United States Immigration and Customs Enforcement, Ronald D. Vitiello, and David

3  Marin

4

5  FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

6

7  DATED:_____

8  _____

9  Honorable Shashi H. Kewalramani

10  United States Magistrate Judge

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on _____ [date] in the case of *Torres et al., v. United States Dep't of Homeland Sec., et al.*, EDCV 18-02604-JGB (SHK). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

      I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

ACTIVE 255133009

15

# Exhibit K

Case 8:25-cv-06706-0202-DHRB    Document 179-2    Filed 08/23/25    Page 182 of 183
Page ID #:357
Case 1:25-cv-02412-NRB    Document 6-1    Filed 03/24/25    Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Yunseo CHUNG,

    *Plaintiff-Petitioner,*

v.

Donald J. TRUMP, in his official capacity as
President of the United States of America; Marco
RUBIO, in his official capacity as Secretary of
State, U.S. Department of State; Pamela BONDI,
in her official capacity as Attorney General, U.S.
Department of Justice; Kristi NOEM, in her
official capacity as Secretary of Homeland
Security, U.S. Department of Homeland Security;
Todd M. LYONS, in his official capacity as
Acting Director, U.S. Immigration and Customs
Enforcement; and William P. JOYCE, in his
official capacity as Acting Field Office Director of
the New York Immigration and Customs
Enforcement Office,

    *Defendants-Respondents.*

Case No. 25-cv-2412

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Pursuant to Fed. R. Civ. P. 65, and having reviewed Plaintiff-Petitioner's Proposed Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction, Plaintiff-Petitioner's supporting Memorandum of Law with attached declarations and exhibits, and any response thereto, the Court HEREBY ORDERS that:

1) Plaintiff-Petitioner's Motion for a Temporary Restraining Order ~~and/or Preliminary Injunction~~ is granted ~~because Plaintiff-Petitioner has demonstrated that she will suffer irreparable harm if this Court does not issue relief; that she is substantially likely to prevail on her claims that Defendants-Respondents' actions to arrest, detain, and transfer Plaintiff-Petitioner violate the First Amendment, the Due Process Clause of the~~ *NRB*

Case 8:25-cv-06706-020-12-DNB   Document 17-2   Filed 03/25/25   Page 2 183 of 183
Case 1:25-cv-02412-NRB   Document 6-1   Filed 03/24/25   Page 2 of 2
Page ID #:358

~~Fifth Amendment, and the INA; that the balance of equities and public interest tip in~~ ~~favor of a temporary restraining order; and that a~~ preliminary injunction is an ~~appropriate and necessary remedy~~;

2) Defendants-Respondents are enjoined from detaining the Plaintiff-Petitioner pending further order of this Court;

3) Defendants-Respondents are enjoined from transferring the Plaintiff-Petitioner from the jurisdiction of this District pending further order of this Court;

4) Should Defendants-Respondents seek to detain Plaintiff-Petitioner on any asserted basis other than pursuing her removal under 8 U.S.C. § 1227(a)(4)(C) pending the Court's decision on a preliminary injunction, Defendants-Respondents are ordered to provide sufficient advance notice to the Court and counsel, in order to enable Plaintiff-Petitioner an opportunity to be heard regarding whether any such asserted basis for detention constitutes a pretext for First Amendment retaliation; and

5) The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

IT IS SO ORDERED.

Dated: _March 25_, 2025
New York, New York

_Naomi Reice Buchwald_
United States District Judge